**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE LANIGAN GROUP, INC., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> PLAINTIFF, <br><br> v. <br><br> LI-CYCLE HOLDINGS CORP. F/K/A PERIDOT ACQUISITION CORP., AJAY KOCHHAR, TIM JOHNSTON, BRUCE MACINNIS, SCOTT PROCHAZKA, ALAN LEVANDE, MARKUS SPECKS, PRESTON POWELL, JONATHAN SILVER, AND JUNE YEARWOOD, <br><br> DEFENDANTS. | Case No. 1:22-cv-02222-HG-RML |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT FOR <u>VIOLATIONS OF THE FEDERAL SECURITIES LAWS</u>

Mary Eaton
Peter J. Linken
Adam Rosenfeld
Freshfields Bruckhaus Deringer US LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 277-4000
Mary.Eaton@freshfields.com
Peter.Linken@freshfields.com
Adam.Rosenfeld@freshfields.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF ABBREVIATIONS ................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................... iv

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 3

    A.   Li-Cycle Emerges As An Operational and Environmentally Conscious Company .......... 3

    B.   The F-4 and Proxy Disclosed All Material Facts .............................................................. 4

    C.   A Self-Interested Short-Seller Report Purports to "Reveal the Truth" .............................. 8

    D.   Plaintiff Files Suit ............................................................................................................ 8

LEGAL STANDARD ............................................................................................................... 9

ARGUMENT ........................................................................................................................... 10

    I.   Plaintiff Engages In Impermissible Puzzle Pleading ...................................................... 11

    II.   The Complaint Fails to State A Section 14 Claim
Against the Peridot Defendants ...................................................................................... 12

        A.   Plaintiff Fails to Plead An Actionable Misstatement or Omission ......................... 12

            (1)   Plaintiff's Section 14(a) claim sounds in fraud ............................................ 12

            (2)   None of the Challenged Statements are adequately alleged to be false ........ 13

            (3)   The Challenged Statements are inactionable statements of opinion ............. 18

        B.   Plaintiff Fails to Allege Scienter or Negligence ....................................................... 19

        C.   Plaintiff Fails to Plead Loss Causation .................................................................... 21

    III.   The Complaint Fails to State A Section 11 Claim Against the Li-Cycle Defendants ..... 25

    IV.   The Complaint Fails to State A Claim For Control Person Liability .............................. 25

CONCLUSION ........................................................................................................................ 25

**TABLE OF ABBREVIATIONS**

| Term | Definition |
| --- | --- |
| Blue Orca | Blue Orca Capital |
| BMO Capital Markets | BMO Financial Group, a subsidiary of the Bank of Montreal |
| Business Combination | August 10, 2021, amalgamation of Peridot Acquisition Corp. and Li-Cycle Holdings Corp. as described in the Registration Statement and the Proxy |
| Challenged Statements | The statements, collectively, which Plaintiff alleges are false and/or materially misleading at Paragraphs 48-75 of the Complaint |
| Deloitte | Deloitte LLP, an independent registered public accounting firm |
| Company | Li-Cycle Holdings Corp. |
| Complaint | Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF 36) |
| Ex. | Exhibit to the Linken Declaration |
| Exchange Act | Securities Exchange Act of 1934, as amended |
| F-4 | The Registration Statement on Form F-4 of Li-Cycle Holdings Corp., filed with the SEC on March 29, 2021 |
| Glencore | Glencore plc |
| LICY | Li-Cycle Holdings Corp. |
| Li-Cycle | Li-Cycle Holdings Corp. |
| Linken Declaration | Declaration of Peter J. Linken, dated December 19, 2022 |
| GAAP | Generally Accepted Accounting Principles |
| IFRS | International Financial Reporting Standards |

| **Term** | **Definition** |
| --- | --- |
| NYSE | New York Stock Exchange |
| Offering Documents | Collectively, the F-4 and the Proxy |
| Old Li-Cycle | Li-Cycle Corp. |
| PCAOB | Public Company Accounting Oversight Board |
| Peridot | Peridot Acquisition Corp. |
| PIPE Financing | Li-Cycle's $315,000,000 Private Investment in Public Equity transaction |
| Plaintiff | The Lanigan Group, Inc. |
| Proxy | Proxy Statement and Prospectus of Peridot Acquisition Corp., filed with the SEC on July 15, 2021 |
| PSLRA | Private Securities Litigation Reform Act of 1995 |
| Registration Statement | The Registration Statement on Form F-4 of Li-Cycle Holdings Corp., filed with the SEC on March 29, 2021 |
| Report | Blue Orca Capital, *Li-Cycle Holdings Corp.*, published on March 24, 2022 |
| Rule 8 | Fed. R. Civ. P. 8 |
| Rule 9(b) | Fed. R. Civ. P. 9(b) |
| SEC | Securities and Exchange Commission |
| Securities Act | Securities Act of 1933, as amended |
| Traxys | Traxys North America LLC |
| Traxys Contract | The Black Mass—Marketing, Logistics and Working Capital Agreement, dated September 24, 2020, between Traxys North America LLC and Li-Cycle Corp. |

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Abdin v. CBS Broadcasting Inc.*,
    971 F.3d 57 (2d Cir. 2020)........................................................................................8, 23

*Acito v. IMCERA Grp., Inc.*,
    47 F.3d 47 (2d Cir. 1995)..............................................................................................20

*Amorosa v. Ernst & Young LLP*,
    672 F. Supp. 2d 493 (S.D.N.Y. 2009)..........................................................................21

*In re Alcatel Sec. Litig.*,
    672 F. Supp. 2d 513 (S.D.N.Y. 2019)..........................................................................12

*In re AmTrust Fin. Services, Inc. Sec. Litig.*,
    2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019)........................................................ 18-19

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
    28 F.4th 343 (2d Cir. 2022) ........................................................................................8, 23

*Ashcroft v. Iqbal*,
    556 U.S. 678 (2009)......................................................................................................20

*In re AstraZeneca plc Sec. Litig.*,
    2022 WL 4133258 (S.D.N.Y. Sept. 12, 2022)........................................................11, 12

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
    2022 WL 151302 (2d Cir. Jan. 18, 2022) ...................................................................24

*In re Bemis Co. Sec. Litig.*,
    512 F. Supp. 3d 518 ..............................................................................................15, 19

*Bisel v. Acasti Pharma, Inc.*,
    2022 WL 4538173 (S.D.N.Y. Sept. 28, 2022)...............................................10, 12, 15

*Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*,
    2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) ...............................................................25

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
    506 F. App'x 32 (2d Cir. 2012) ...................................................................................12

*Bond Opportunity Fund v. Unilab Corp.*,
    2003 WL 21058251 (S.D.N.Y. May 9, 2003) ...............................................12, 20, 21

*Bond Opportunity Fund v. Unilab Corp.*,
    87 F. App'x 772 (2d Cir. 2004) ...............................................................................12, 20

*In re Britannia Bulk Holdings Inc. Sec. Litig.*,
    665 F. Supp. 2d 404 (S.D.N.Y. 2009)................................................................15

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
    543 F. App'x 72 (2d Cir. 2013) ................................................................22, 23

*Coronel v. Quanta Cap. Holdings Ltd.*,
    2009 WL 174656 (S.D.N.Y. Jan. 26, 2009) ............................................20

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)................................................................25

*In re CRM Holdings, Ltd. Sec. Litig.*,
    2012 WL 1646888 (S.D.N.Y. May 10, 2012) ............................................24

*Fila v. Pingtan Marine Enterprise Ltd.*,
    195 F. Supp. 3d 489 (S.D.N.Y. 2016) ................................................................23

*Furlong Fund LLC v. VBI Vaccines, Inc.*,
    2016 WL 1181710 (S.D.N.Y. Mar. 25, 2016) ............................................10, 12, 20

*In re Gen. Elec. Co. Sec. Litig.*,
    856 F. Supp. 2d 645 (S.D.N.Y. 2012)................................................................19

*In re Glob. Crossing, Ltd. Sec. Litig.*,
    313 F. Supp. 2d 189 (S.D.N.Y. 2003)................................................................25

*Grigsby v. BofI Holding, Inc.*,
    979 F.3d 1198 (9th Cir. 2020) ................................................................22-23

*Harris v. AmTrust Fin. Svcs., Inc.*,
    135 F. Supp. 3d 155 (S.D.N.Y. 2015)................................................................18, 24

*In re Hertz Global Holdings, Inc. Sec. Litig.*,
    2017 WL 1536223 (D.N.J. Apr. 27, 2017) ............................................18

*IBEW Local 98 Pension Fund v. Central Vermont Public Service Corp.*,
    2012 WL 12985689 (D. Vt. Aug. 23, 2012)................................................................10

*In re ITT Educ. Servs., Inc. Sec. & S'holder Deriv. Litig.*,
    859 F. Supp. 2d 572 (S.D.N.Y. 2012)................................................................12

*Janbay v. Canadian Solar, Inc.*,
    2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ............................................22

*In re JP Morgan Chae Sec. Litig.*,
    2007 WL 950132 (S.D.N.Y. Mar. 29, 2007) ................................................................21

*In re JP Morgan Chase Sec. Litig.*,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005)......................................................................11, 13

*Katyle v. Penn Nat'l Gaming Inc.*,
    637 F.3d 462 (4th Cir. 2011) ...........................................................................................23

*In re Lehman Bros. Sec. & ERISA Litig.*,
    2013 WL 5730020 (S.D.N.Y. Oct. 22, 2013) .................................................................14

*In re Lehman Bros. Sec. and ERISA Litig.*,
    799 F. Supp. 2d 258 (S.D.N.Y. 2011)............................................................................19

*In re Liberty Tax, Inc. Sec. Litig.*,
    435 F. Supp. 3d 457 (E.D.N.Y. 2020) ...........................................................................24

*In re Longtop Fin. Tech. Ltd. Sec. Litig.*,
    910 F. Supp. 2d 561 (S.D.N.Y. 2012)............................................................................24

*In re Merck & Co., Inc. Sec. Litig.*,
    432 F.3d 261 (3d Cir. 2005)............................................................................................23

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) ..........................................................................22, 23, 24

*In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*,
    586 F. Supp. 2d 349 (S.D.N.Y. 2008)..............................................................................3

*In re Morgan Stanley Info. Fund. Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010)............................................................................................25

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002)..........................................................................................16

*In re Nektar Therapeutics Sec. Lit.*,
    34 F.4th 828 (9th Cir. 2022) ...........................................................................................23

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016).............................................................................................3

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
    300 F. Supp. 3d 551 (S.D.N.Y. 2018).............................................................................15

*Olkey v. Hyperion 1999 Term. Tr., Inc.*,
    98 F.3d 2 (2d Cir. 1996)..................................................................................................12

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)....................................................................................................2, 19

*In re Omnicom Grp., Inc. Sec. Litig.*,
   597 F.3d 501 (2d Cir. 2010)......................................................................22, 23

*Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*,
   11 F.4th 90 (2d Cir. 2021) ..................................................................................15

*Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.*,
   645 F. Supp. 2d 210 (S.D.N.Y. 2009)...............................................................13

*In re ProShares Tr. Sec. Litig.*,
   728 F.3d 96 (2d Cir. 2013)..................................................................................25

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)....................................................................10, 12, 13

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000)....................................................................................3

*Schwab v. E\*TRADE Fin. Corp.*,
   752 F. App'x 56 (2d Cir. 2018) ..........................................................................14

*In re Sibanye Gold Ltd. Sec. Litig.*,
   2020 WL 6582326 (E.D.N.Y. Nov. 10, 2020)..................................................12

*Shalala v. Guernsey Mem. Hosp.*,
   514 U.S. 87 (1995).................................................................................................16

*Thor Power Tool Co. v. Commissioner*,
   439 U.S. 522 (1979)...............................................................................................17

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016).................................................................................19

*In re UBS AG Sec. Litig.*,
   2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)...........................................18, 21

*Waggoner v. Barclays PLC*,
   875 F.3d 79 (2d Cir. 2017)...................................................................................14

*In re XP Inc. Sec. Litig.*,
   524 F. Supp. 3d 23 (E.D.N.Y. 2021) ............................................................16, 17

*Zhong Zheng v. Pingtan Marine Enter. Ltd.*,
   379 F. Supp. 3d 164 (E.D.N.Y. 2019) ..........................................................22, 23

**Statutes, Rules and Regulations**

15 U.S.C. 78u-4(b)(4) ................................................................................................21

15 U.S.C. § 77k(a) ...............................................................................................15, 25

15 U.S.C. § 78u-4(b)(1)(B)........................................................................................10

17 C.F.R. § 240.14a-9.........................................................................................11, 15

Fed. R. Civ. P. 8 ...........................................................................................................1

Fed. R. Civ. P. 9(b) ............................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)...............................................................................................1

Defendants respectfully submit this Memorandum of Law In Support of Defendants' Motion to Dismiss the Amended Class Action Complaint for Violations of the Federal Securities Laws pursuant to Rules 8, 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995.

## PRELIMINARY STATEMENT

Plaintiff's claims under Section 14(a) of the Exchange Act and Section 11 of the Securities Act rest almost entirely upon the biased and unfounded opinions of a professed short-seller, Blue Orca Capital. Blue Orca's Report on Li-Cycle—an award-winning green company backed by large, sophisticated investors—baselessly accused the Company of engaging in "Enron-like" accounting "gimmicks." But that Report was based on the Defendants' previously disclosed public information, admittedly reflected Blue Orca's own financially-motivated self-interested views, and was dismissed by market analysts who closely followed Li-Cycle's stock. Plaintiff nevertheless invokes these short-seller opinions to concoct a fanciful theory that Li-Cycle made materially false and misleading statements regarding its compliance with IFRS and its revenue recognition practices. That theory is patently insufficient to state a claim.

*First*, Plaintiff's use of impermissible puzzle pleading cannot mask its inability to plead a claim. The Complaint is littered with long, cherry picked passages and screen shots of financial statements that Plaintiff copies and pastes whole cloth, without identifying which specific statements in this "kitchen sink" approach are alleged to be false or why. The Complaint should be dismissed on this basis alone.

*Second*, even if one were able to decipher which particular statements Plaintiff challenges, the Complaint does not adequately plead what is false about them or why, as the PSLRA and Rule 9(b)—both of which apply here—require. Plaintiff points to no facts, whether from internal

1

corporate records, confidential witnesses or otherwise, that contradict the Challenged Statements. That is hardly surprising since not only do the Offering Documents include robust disclosures identifying each fact that Plaintiff alleges was withheld from investors, but the Company's independent auditors issued unqualified audit opinions respecting Li-Cycle's financial statements and no restatement was ever made. Plaintiff instead points to Blue Orca's post-hoc analysis of how Li-Cycle purportedly accounted for revenue in the financial reporting periods *after* the F-4 and Proxy were effective, which—even if credited on this Motion—cannot establish that the Challenged Statements were false at the time they were actually made. Moreover, statements that Li-Cycle's accounting practices conformed with applicable accounting guidelines are classic statements of opinion that are not actionable absent allegations satisfying the exacting requirements of *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015),[1] which Plaintiff does not and cannot meet.

*Third*, because the Complaint sounds in fraud, it was incumbent upon Plaintiff to allege facts sufficient to support an inference that Defendants intentionally sought to mislead investors or were reckless with respect to same, as Rule 9(b) requires. The Complaint is devoid of any factual allegations to support such an inference. Indeed, even leaving Rule 9(b) aside, Plaintiff does not come close to pleading that Defendants were negligent in issuing the Challenged Statements, the bare minimum for pleading a Section 14(a) claim.

*Finally*, Plaintiff does not allege a plausible theory of loss causation, resting instead upon Blue Orca's short-seller opinions (not facts) set forth in its Report. Those opinions are predicated entirely upon public information, reflect analysis that Blue Orca admits could have been done by

---

[1]      Unless otherwise indicated, all citations and internal quotations are omitted.

anyone, and did not reveal any truth. Plaintiff also fails to address the more plausible conclusion that it was the disclosure of Blue Orca's short position that caused Li-Cycle's stock price to drop.

For these reasons and more, the Complaint should be dismissed in its entirety.

**FACTUAL BACKGROUND[2]**

A.    Li-Cycle Emerges As An Operational and Environmentally Conscious Company

Li-Cycle is part of the growing movement to commercialize environmentally friendly practices and procedures for the betterment of society. It is an industry leader in lithium-ion battery recycling (Compl. ¶ 40) and recovers critical materials from lithium-ion batteries to reintroduce them back into the supply chain, thereby avoiding the toxic pollution associated with incineration or throwing such batteries into landfills. Li-Cycle does this by converting battery scrap and end-of-life batteries into "black mass," a powder-like substance that contains several valuable metals, including lithium, cobalt and nickel. F-4 (Ex. A) at 177. Its "vision is to be the world's most sustainable, vertically integrated and globally pre-eminent lithium-ion battery resource recovery company." F-4 (Ex. A) at 186; Proxy (Ex. B) at 204. "By supporting the lithium-ion battery materials supply chain with an innovative recycling solution, Li-Cycle is contributing to the global 'green energy' transition and the movement toward a zero-carbon economy." *Id.*

The company's efforts in this space have been recognized repeatedly, including winning the 2021 Big Innovation Award presented by Business Intelligence Group, being named to the

---

[2]    This section is drawn from: the non-conclusory allegations of the Complaint, which are accepted as true solely for purposes of this Motion; the F-4; the Proxy; other documents that are incorporated by reference in and/or integral to the Complaint; public disclosure documents filed with the SEC; and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016); *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 568 F. Supp. 2d 349, 352 n.1 (S.D.N.Y. 2008). Defendants vigorously deny the claims asserted in the Complaint and specifically reserve the right to challenge the Complaint's allegations in the event the Court denies this Motion.

World Circular Economy Forum's list of Circular Economy Solutions Inspiring the World, being named a 2020 and 2021 Global Cleantech 100 Company, and qualifying as a finalist in the 10th Annual Business Green Leaders Awards. *See* F-4 (Ex. A) at 179. Additionally, Fortune Magazine named Li-Cycle to its "Change the World" list for 2022 based on its measurable social impact, its ability to effectively drive shareholder value, and its innovation in relation to other companies in its industry.[3] Sophisticated investors have invested over \$350 million in Li-Cycle since the Business Combination closed.[4]

Prior to August 2021, Li-Cycle's operations were conducted through its predecessor entity, Li-Cycle Corp., a privately-held company organized and existing under the laws of Ontario, Canada. Compl. ¶ 21. Li-Cycle Corp. "opened its first pilot facility in Canada in 2017, which had a recycling capacity of 50 tonnes per year." Compl. ¶ 41. Since that time, Li-Cycle has continued to open additional facilities, increasing its recycling capacity exponentially. *Id.*

Through a combination with Peridot that was announced on February 16, 2021, Li-Cycle became a publicly traded company, and its shares began to trade on the NYSE as of August 10, 2021. *See* Compl. ¶¶ 2, 62.

### B.   The Offering Documents Disclosed All Material Facts

The terms of the Business Combination—and the corresponding risks of investing—were disclosed to investors in the Offering Documents. *See* Compl. ¶¶ 3, 49, 54. Both documents included robust disclosures regarding each fact that Plaintiff claims was withheld, as well as the

---

[3]     *See https://li-cycle.com/press-releases/li-cycle-named-to-fortune-change-the-world-list/.*

[4]     *See https://li-cycle.com/in-the-news/koch-invests-koch-charges-up-with-lithium-ion-battery-recycling-company/; https://investors.li-cycle.com/news/news-details/2022/Li-Cycle-Announces-Completion-of-50-Million-Investment-from-LG-Energy-Solution-and-LG-Chem/default.aspx; https://investors.li-cycle.com/news/news-details/2022/Li-Cycle-and-Glencore-Enter-into-Long-Term-Commercial-Agreements-and-Close-Glencore-200-Million-Investment-in-Li-Cycle/default.aspx.*

substantial risks of investing in Li-Cycle, a development stage company with a history of losses and no guarantee of future profitability.

The Offering Documents devoted substantial attention to Li-Cycle's accounting practices and their conformance with IFRS, the applicable financial reporting standards. Li-Cycle explained its practice of estimating and subsequently readjusting its revenue based on fluctuating market prices for the metals (*e.g.*, nickel and cobalt) contained in its products:

> Li-Cycle *estimates all amounts of consideration* to which it expects to be entitled and *updates those estimates* at the end [of] each reporting period based on market prices. The final settlement amount for the sale of products is typically *determined several months after* delivery and customer processing of the products *and may result in an adjustment to the previously recognized revenue* based on commodity prices on the final settlement date.

F-4 (Ex. A) at 191-92; Proxy (Ex. B) at 210 (emphasis added).[5] The financial statement notes similarly warned that "[r]evenue is measured based on the consideration to which the Company *expects to be entitled to* in a contract with a customer" and that

> [t]he Company *estimates* the amount of consideration to which it *expects to be entitled* to under provisional pricing arrangements. The amount of consideration is based on market prices at the date of settlement, weight and assay, subject to customer confirmation. Revenue and the related accounts receivables are measured at fair value at initial recognition *and are re-estimated* by reference to current market prices at each reporting period end and changes in fair value are *recognized as an adjustment* to profit and loss and the related accounts receivable.

F-4 (Ex. A) at F-33-34; Proxy (Ex. B) at F-58 (emphasis added). Investors were further informed that "the determination of the revenue recognition policy with regards to transaction price" was among the "[c]ritical judgments" having "the most significant effect on the amounts recognized in the financial statements." F-4 (Ex. A) at F-34; Proxy (Ex. B) at F-59.[6]

---

[5]    Plaintiff omits this language from its cherry-picked excerpts of the F-4 and Proxy. *Compare* F-4 (Ex. A) at 191-92, *and* Proxy (Ex. B) at 210, *with* Compl. ¶¶134-36.

[6]    Investors were also told that "[t]he unaudited pro forma condensed combined financial information in this proxy statement/prospectus is presented for illustrative purposes only and is not necessarily indicative of what Peridot and Li-Cycle's actual financial position or results of

The Offering Documents also included statements from Li-Cycle's independent auditor, Deloitte, that the financial statements for periods ending October 31, 2019, October 31, 2020, and February 12, 2021, were prepared "in conformity with International Financial Reporting Standards." F-4 (Ex. A) at F-21, F-58; Proxy (Ex. B) at F-45, F-99. Deloitte applied "the standards of the" PCAOB and "evaluat[ed] the accounting principles used and significant estimates made by management, as well as . . . the overall presentation of the financial statements." *Id.* Deloitte has not withdrawn its opinion, Plaintiff has not challenged it, and the Company has not restated its audited financial statements.

In addition, the Offering Documents described in detail how Li-Cycle operated its business and intended to generate revenue through the creation and sale of "black mass," a powder-like substance that contains a number of valuable metals, including lithium, cobalt and nickel. F-4 (Ex. A) at 177. In particular, the Offering Documents explained how Li-Cycle intended to operate a "two-part 'Spoke and Hub' process" to effectuate its recycling processes. F-4 (Ex. A) at 177-80. But because Li-Cycle had not yet developed its "Hub" facilities at the time of the Business Combination, the "black mass" intermediate product was sold—via off-take agreements—to third parties for additional processing. *Id.*[7] One such third-party, Glencore, had an off-take agreement with Li-Cycle under which nearly all of Li-Cycle's products were sold when the Offering

---

operations would have been had the Business Combination been completed on the dates indicated." F-4 (Ex. A) at 63; Proxy (Ex. B) at 68; *cf.* Compl. ¶ 54.

[7]     The Offering Documents explained in detail the "Spoke and Hub" model, whereby "end-of-life batteries and battery-related waste are first shipped to Spoke locations" to be processed into intermediate products such as "black mass." F-4 (Ex. A) at 177. The black mass is then shipped to "a Hub location, where it is put through a hydrometallurgical (or 'wet chemistry') process to produce end products, such as lithium carbonate, nickel sulphate and cobalt sulphate." *Id.* Because Li-Cycle's first commercial-scale Hub facility in Rochester, New York was still in development when the F-4 was published, Li-Cycle sold "black mass from its Spokes" to third parties "pending completion of" its Rochester Hub. *Id.* at 179-80.

Documents were declared effective. *See* F-4 (Ex. A) at 180; Proxy (Ex. B) at 197 ("Li-Cycle has a current off-take agreement with Glencore . . . pertaining to the sale of black mass produced at Li-Cycle's spokes."); Compl. ¶ 82. Glencore's black mass contract with Li-Cycle was not a working capital agreement and nothing in the Offering Documents suggests otherwise. Plaintiff does not challenge the way in which the Company accounted for revenues generated pursuant to the Glencore off-take agreement. *See* Compl. ¶ 76.

The Offering Documents accurately described the contours of the Company's relationship with Traxys, which was quite different from its contractual arrangements with Glencore. As the Offering Documents explained, Li-Cycle had "entered into a strategic ***global marketing relationship***" pursuant to "***marketing, logistics and working capital agreements*** with Traxys, covering (i) 100% of its production of black mass . . . ." F-4 (Ex. A) at 45; Proxy (Ex. B) at 49 (emphasis added). Elsewhere, the F-4 indicated that "Li-Cycle's ***marketing, logistics and working capital agreement*** with Traxys (which is also an investor in the PIPE Financing) represents an attractive partnership with the largest independent global ***marketer*** of cobalt." F-4 (Ex. A) at 92 (emphasis added). A nearly full-page discussion of the Traxys relationship provided:

> Li-Cycle has entered into ***a strategic global marketing relationship*** with Traxys, a company that provides financial and logistics solutions to the metals, mining and energy industries. . . . ***Traxys may earn marketing fees*** under these agreements, based on the final sales price of products ***sold by Traxys to its third-party customers***, ***as well as interest*** on provisional payments made from Traxys to Li-Cycle. . . . Commercial terms between Traxys ***and its third-party customers*** are arranged in advance, transparent to Li-Cycle and based on the commodity prices for the metals contained in the Li-Cycle products. Sales of Li-Cycle products ***through Traxys*** are expected to represent the significant majority of Li-Cycle's revenues. . . . ***Estimates of future revenues*** are based on commodity price assumptions for the metals contained in the applicable end products, ***and actual revenues will vary***.

F-4 (Ex. A) at 180; Proxy (Ex. B) at 198 (emphasis added); *cf., e.g.*, Compl. ¶¶ 6, 10, 76, 78, 96.

Any reasonable investor would have understood the material details of how the Traxys relationship was to function based on these disclosures, as well as market commentary by stock

7

analysts regarding the Traxys/Li-Cycle contracts.  Stock analysts at BMO Capital Markets, for example, observed that "[a]s is common with this type of marketing/WC-support relationship, LICY incurs revenue upon delivery of (black mass) material to Traxys, and based on underlying metal composition and spot-linked pricing.  Any delta between eventual sale price (between Traxys and end-customer) is then readjusted with LICY."  BMO Cap. Markets Rpt. (Ex. D) at 1.[8]

> C.      A Self-Interested Short-Seller Report Purports to "Reveal the Truth"

On March 24, 2022, recidivist short-seller Blue Orca Capital published a Report that Plaintiff claims was a corrective disclosure.  *See* Compl. ¶¶ 10-11, 77.[9]  The Report acknowledged Blue Orca's motivation to drive down Li-Cycle's stock price by any means—"[w]e have a short interest in Li-Cycle's stock and therefore stand to realize significant gains in the event that the price of such instrument declines"—and repeatedly emphasized that its "RESEARCH REPORT EXPRESSES SOLELY OUR OPINIONS."  Blue Orca Report (Ex. C) at 1.  Blue Orca's disclaimers went even further, acknowledging that all statements in the Report "are not statements of fact," were based entirely "upon publicly available evidence," and reflected analysis "that any person could have done if they had been interested in doing so."  *Id.* at 27.  And Blue Orca was careful to note that it was "biased" and "ma[de] no representation, express or implied, as to the accuracy, timeliness, or completeness of any such information" in its Report.  *Id.*

The analysts following Li-Cycle's stock ignored the report; only BMO Capital Markets

---

[8]      The Court may take judicial notice of the BMO analyst report as indicative of the information known to the market.  *See, e.g.*, *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 (2d Cir. 2022) (approving district court's judicial notice of "investment analyst reports from Goldman Sachs and Alliance Bernstein" in connection with motion to dismiss); *Abdin v. CBS Broadcasting Inc.*, 971 F.3d 57, 60 n.2 (2d Cir. 2020) ("The district court properly took judicial notice of the publications . . . for the publication of such information and relevant discussion in the scientific community" in connection with motion to dismiss.).

[9]      The Blue Orca report is quoted extensively by Plaintiff (Compl. ¶¶ 10, 77-81), is integral to its allegations, and may be considered on this motion.  *See* note 2, *supra*.

even mentioned it.  BMO upheld its "buy" recommendation because the Report lacked "a 'smoking gun,'" and viewed the situation as a buying opportunity.  BMO Cap. Markets Rpt. (Ex. D) at 1.

D.     Plaintiff Files Suit

On April 19, 2022, The Rosen Law Firm filed a complaint on behalf of plaintiff Alexandra Barnish against Li-Cycle, its co-founder and CEO Ajay Kochhar, and its former CFO Bruce MacInnis, alleging two claims pursuant to Sections 10(b) and 20(a) of the Exchange Act.

On July 22, 2022, the Court appointed The Lanigan Group as Lead Plaintiff and The Rosen Law Firm as Lead Counsel and, on October 11, 2022, Plaintiff filed the Amended Complaint.

The Amended Complaint jettisoned the Section 10(b) and 20(a) claims in favor of claims brought pursuant to Section 14(a) of the Exchange Act and Sections 11 and 15 of the Securities Act.  It added as Defendants:  (i) Li-Cycle's other co-founder, Tim Johnston; (ii) two current Li-Cycle directors (and former Peridot directors), Scott Prochazka and Alan Levande; (iii) three former Peridot directors, Preston Powell, Jonathan Silver, and June Yearwood; and (iv) former Peridot CFO Markus Specks.

Plaintiff's Section 14(a) claim is alleged against Li-Cycle, Messrs. Levande, Specks, Prochazka, Silver, and Ms. Yearwood (defined in the Complaint as the "Peridot Defendants").  The Section 11 claim is alleged against Li-Cycle, and Messrs. Kochar, Johnston, MacInnis, Prochazka, and Levande (defined in the Complaint as the "Li-Cycle Defendants"), and the Section 15 claim is alleged against Messrs. Kochar, Johnston, MacInnis, Prochazka, and Levande (defined in the Complaint as the "Individual Li-Cycle Defendants").[10]  Both the Exchange Act claim and

---

[10]     The Complaint does not allege *anything* regarding Mr. Powell; he is omitted from the defined terms "Peridot Individual Defendants," "Peridot Defendants," "Li-Cycle Individual Defendants," and "Li-Cycle Defendants."  *See* Compl. ¶¶ 33, 36-37, 39, 145-47, 149 and 158.

the Securities Act claims attack the same alleged misstatements in the Offering Documents and beyond.[11]

## LEGAL STANDARD

Section 14(a) claims are subject to the PSLRA, which requires Plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation is made on information and belief, . . . with particularity all facts on which that belief is formed."[12] *Bisel v. Acasti Pharma, Inc.*, 2022 WL 4538173, at *6 (S.D.N.Y. Sept. 28, 2022); 15 U.S.C. § 78u-4(b)(1)(B). These requirements apply even if a plaintiff claims to proceed solely on a negligence theory. *See* Compl. ¶¶ 145-46; *Furlong Fund LLC v. VBI Vaccines, Inc.*, 2016 WL 1181710, at *3 (S.D.N.Y. Mar. 25, 2016) ("The PSLRA's pleading requirements as to misleading statements and omissions apply to Section 14(a) claims sounding in negligence, such as those here.").

Where, as here, a plaintiff alleges a violation of the securities laws that is grounded in fraud (*see* Section II.A, *infra*), the heightened pleading requirements of Rule 9(b) apply "even if they disclaim reliance on a fraud theory." *Bisel*, 2022 WL 4538173, at *7 (applying Rule 9(b) pleading standard to Section 14(a) claims); *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) ("We hold that the heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2)

---

[11]     A chart itemizing the Challenged Statements is annexed hereto as Annex A.

[12]     Plaintiff does not comply with the requirement to plead with particularity all facts upon which its information and belief is formed. The opening paragraph of the Complaint indicates that all facts (other than those concerning "Plaintiff and Plaintiff's own acts") reflect information and belief based on "the investigation conducted by and through Plaintiff's attorneys." "Such a prefatory statement not only fails to specify which particular allegations are made on information and belief, but fails to provide sufficient information in the form of underlying facts to satisfy 'the threshold issue of whether a particular allegation has been properly based on information and belief.'" *IBEW Loc. 98 Pension Fund v. Cent. Vt. Pub. Serv. Corp.*, 2012 WL 12985689, at *9 (D. Vt. Aug. 23, 2012).

claims insofar as the claims are premised on allegations of fraud."); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) ("Plaintiffs cannot evade the Rule 9(b) strictures by summarily disclaiming any reliance on a theory of fraud or recklessness.").  Rule 9(b) requires Plaintiff to set forth "with particularity the circumstances constituting [the] fraud."

## ARGUMENT

### I.     Plaintiff Engages in Impermissible Puzzle Pleading

The Complaint does not actually identify the allegedly misleading statement(s) in the Offering Documents that Plaintiff purports to challenge.  Rather, the Complaint cobbles together entire sections of various publicly-available documents—spanning twelve pages and twenty-eight numbered paragraphs (*see* Compl. ¶¶ 48-75)—including screen shots of financial statements. Plaintiff then applies bolding and italics to certain passages, presumably in an effort to identify the allegedly misleading text.  *Id.*  The effort culminates in a conclusory paragraph that alleges **all** of the statements in the preceding twenty-eight paragraphs were "false and materially misleading" because they omitted four facts (*see* Compl. ¶ 76), leaving the Court to make sense of it all.[13]

Plaintiff's puzzle-pled Complaint thus fails at the threshold because it does not identify which particular statement(s) in the F-4, the Proxy, and "Li-Cycle's Subsequent Filings and Disclosures" (*see* Compl. ¶¶ 63-75)[14] are rendered false by the omissions alleged at Paragraph 76. *See In re AstraZeneca plc Sec. Litig.*, 2022 WL 4133258, at *6 (S.D.N.Y. Sept. 12, 2022) (dismissing complaint for failure to comply with the PSLRA's "particularity threshold").  The

---

[13]     The only statement that charitably may be construed as being identified is that Li-Cycle's financial statements conformed with IFRS.  Compl. ¶ 50; F-4 (Ex. A) at 191; Proxy (Ex. B) at 209.

[14]     Paragraphs 63-75 of the Complaint refer to statements published in the months after the date of the Proxy, but Section 14(a) concerns only statements made in the Proxy.  *See, e.g.*, 17 C.F.R. § 240.14a-9(a).  The post-Business Combination statements excerpted by Plaintiff cannot give rise to a Section 14(a) claim.

Complaint "must do more than identify statements and then provide a bullet-point list . . . of true facts," because such allegations "do not specify what understanding each statement left investors, and how that understanding was inconsistent with alleged omissions." *Id.* This defect alone warrants a complete dismissal. *Id.*; *see also Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 37-38 (2d Cir. 2012) (dismissing complaint as puzzle-pled); *In re Sibanye Gold Ltd. Sec. Litig.*, 2020 WL 6582326, at *14 (E.D.N.Y. Nov. 10, 2020) (same); *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 534 (S.D.N.Y. 2019) (same); *In re ITT Educ. Servs., Inc. Sec. & S'holder Deriv. Litig.*, 859 F. Supp. 2d 572, 577-78 (S.D.N.Y. 2012) (same).

II.    **The Complaint Fails to State A Section 14 Claim Against the Peridot Defendants**

A.    **Plaintiff Fails to Plead An Actionable Misstatement or Omission**

The Section 14(a) claim against the Peridot Defendants should be dismissed for failure to plead an actionable misstatement or omission of material fact. *See Bond Opportunity Fund v. Unilab Corp.*, 87 F. App'x 772, 773 (2d Cir. 2004) (Section 14(a) claims require a "material misrepresentation or omission"). No claim under Section 14 will lie when the Proxy, when read as a whole and in context, "was complete and accurate enough to allow a shareholder to make an informed decision." *Bond Opportunity Fund v. Unilab Corp.*, 2003 WL 21058251, at *5 (S.D.N.Y. May 9, 2003). "The 'central issue is not whether the particular statements, taken separately, were literally true, but whether defendants' representations, taken together and in context, would have misled a reasonable investor about the nature of the securities.'" *Furlong*, 2016 WL 1181710, at *3 (quoting *Olkey v. Hyperion 1999 Term Tr., Inc.*, 98 F.3d 2, 5 (2d Cir. 1996)).

(1)    *Plaintiff's Section 14(a) claim sounds in fraud*

Section 14(a) claims that sound in, or are "premised on allegations of fraud," must comply with the heightened pleading requirements of Rule 9(b). *Rombach*, 355 F.3d at 171; *Bisel*, 2022 WL 4538173, at *7. Whether a claim is premised on allegations of fraud depends on "the conduct

12

alleged," and Rule 9(b)'s stringent requirements are "not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Rombach*, 355 F.3d at 171. Where the allegations utilize words and phrases associated with fraud, courts routinely apply Rule 9(b) even where a plaintiff purports to disclaim fraud and/or invoke only a negligence theory. *See, e.g.*, *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 226 (S.D.N.Y. 2009) (Rule 9(b) applies "even if [the plaintiff] disclaim[s] reliance on a fraud theory"); *In re JP Morgan*, 363 F. Supp. 2d at 635 ("Plaintiffs cannot evade the Rule 9(b) strictures by summarily disclaiming any reliance on a theory of fraud or recklessness.").

Plaintiff's allegations plainly incorporate "wording and imputations . . . classically associated with fraud." *Rombach*, 355 F.3d at 172. The Complaint is replete with allegations that Li-Cycle's statements were "false and materially misleading," "false and/or misleading," and "materially overstated." *See* Compl. ¶¶ 76, 124, 139, 142-43, 146-47, 150. The Complaint further alleges that Li-Cycle manipulated its financial statements through improper revenue recognition to "juice its revenues" and "hid[e] negative gross margins." Compl. ¶¶ 80-81. Rule 9(b)'s heightened pleading standard therefore applies, which the Complaint fails to satisfy.

(2)     *None of the Challenged Statements are adequately alleged to be false*

The Complaint does not point to a single fact that actually was withheld or hidden from investors, let alone explain with the requisite particularity why the Challenged Statements are false. Nor could it. The robust, detailed and pervasive disclosures set forth in the Offering Documents explained the contours of Li-Cycle's relationships with Glencore and with Traxys and the manner in which Li-Cycle would estimate (and then re-estimate) revenue attributable to sales through third-party intermediaries, which are the only bases upon which Plaintiff challenges Li-Cycle's revenue practices. *See* Compl. ¶ 76.

13

With regard to Traxys, the Complaint alleges that Li-Cycle misled investors into thinking that Traxys was the end-customer and failed to disclose that Traxys provided working capital to the Company.  Compl. ¶ 76.  Even a cursory review of the Offering Documents, however, confirms these facts were disclosed in exceptional detail, including that the Traxys relationship was governed by a "*marketing*, logistics and *working capital* agreement," that Li-Cycle's products were "sold by Traxys *to its third-party customers*," that "Traxys *may earn . . . interest* on provisional payments made from Traxys to Li-Cycle," and that a substantial amount of revenue was to be realized on "[s]ales of Li-Cycle products *through* Traxys."  F-4 (Ex. A) at 45, 92, 180 (emphasis added); Proxy (Ex. B) at 198; *see also* Section B, *supra*.[15]

The Complaint's allegations regarding Li-Cycle's use of adjustments to its account receivables fare no better.  Plaintiff suggests that Li-Cycle somehow hid the fact that it "continued to 'adjust' its recorded receivables to track its model for the expected future market price of the commodities contained in its products, marking the receivables up based on its projected increases in commodity prices, and recording the purported gains as additional revenue."  Compl. ¶ 7.  But the Offering Documents made clear this was exactly how the Company recorded receivables:

> Li-Cycle *estimates all amounts of consideration* to which it expects to be entitled and *updates those estimates* at the end [of] each reporting period based on market prices.  The final settlement amount for the sale of products is typically determined several months after delivery and customer processing of the products *and may result in an adjustment to the previously recognized revenue* based on commodity prices on the final settlement date.

---

[15]    The purported omissions Plaintiff identifies (Compl. ¶ 76) do not state a claim because they "are directly related to the earlier statements Plaintiffs also claim are false."  *Waggoner v. Barclays PLC*, 875 F.3d 79, 96 (2d Cir. 2017).  As the Second Circuit has made plain, a plaintiff cannot prevail on an omission theory that is "'simply the inverse of the [p]laintiffs' misrepresentation allegations[]' because the only thing they omitted was the 'truth that the statement misrepresents.'"  *Schwab v. E*TRADE Fin. Corp.*, 752 F. App'x 56, 59 (2d Cir. 2018).  Courts consistently reject such attempts because the omissions are "defined in terms of the absence of the information that would correct the misrepresentation."  *In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 5730020, at *3 (S.D.N.Y. Oct. 22, 2013).

F-4 (Ex. A) at 192; Proxy (Ex. B) at 210 (emphasis added). Given these disclosures, Plaintiff's Section 14(a) claim fails as a matter of law. *See In re Bemis Co. Sec. Litig.*, 512 F. Supp. 3d 518, 539 (S.D.N.Y. 2021) (rejecting Section 14(a) claim as "refuted by the plain text of the Proxy, which clearly did provide significant details regarding the roles of the various parties involved in the Transaction"); BMO Cap. Markets Rpt. (Ex. D) (discussing the market's knowledge of the Traxys relationship).

The Complaint is deficient for the additional reason that it fails to plead a single contemporaneous fact explaining *why* the statements regarding Li-Cycle's revenue recognition practices were false. This independently mandates dismissal of the Section 14 claim pursuant to the PSLRA and Rule 9(b). *See, e.g.*, *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 99 (2d Cir. 2021) ("When a securities fraud claim is premised on the defendant's predicate violations of law or accounting standards, the facts of that underlying violation must be pled with particularity."); *Bisel*, 2022 WL 4538173, at *9 ("[A]s a threshold matter, without more, the Court need not credit a barebones assertion that Defendants did, in fact, adjust the Projections upwards."); *Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 564 (S.D.N.Y. 2018) ("[P]laintiffs 'must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so.'").

Plaintiff instead lards the Complaint with allegations regarding "Li-Cycle's consolidated financial statements for the first quarter of *FY 2022*," *i.e.*, November 1, 2021, to January 31, 2022. Compl. ¶¶ 125-32 (emphasis added). But the F-4 became effective on July 15, 2021, the Proxy was issued on that same day, and liability under the federal securities laws depends on whether the Challenged Statements were false *when made*. *See* 17 C.F.R. § 240.14a-9; 15 U.S.C. § 77k(a); *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 418 (S.D.N.Y. 2009) (rejecting

15

claims for lack of allegations that "the Offering Documents were materially misleading 'when made,' which is the relevant time for Section 11 and 12(a)(2) purposes"); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002) (affirming dismissal of Section 14(a) claim because "[t]o be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events"). Defendants dispute that Plaintiff's allegations evidence wrongdoing even during the later period to which they pertain (*see* Compl. ¶¶ 123-32), but the post-hoc allegations are irrelevant to Plaintiff's claims since they in no way support the notion that the earlier statements in the Offering Documents were false and misleading at the time they were made.

Further, to the extent Plaintiff purports to accuse Li-Cycle of violating applicable IFRS, the Complaint comes nowhere near overcoming the substantial barriers to stating such a claim. Unlike GAAP, which follow a "rules-based" approach, IFRS "follow a 'principles-based' approach . . . which consequently requires the accountant to employ greater discretion to comply with a general objective such as fair presentation." *In re XP Inc. Sec. Litig.*, 524 F. Supp. 3d 23, 32 (E.D.N.Y. 2021).[16] "[C]ourts are loath to 'intervene in a business and accounting judgment'" like those called for under IFRS because the standards "are subject to interpretation" and "allow reasonable accountants to reach different conclusions." *Id.*; *cf. Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 100 (1995) ("Financial accounting is not a science. It addresses many questions as to which the answers are uncertain and is a 'process [that] involves continuous judgments and

---

[16]     The Offering Documents disclosed that "[t]he preparation of the financial statements in conformity with IFRS requires management to make judgments, estimates and assumptions that are based on historical experience and various other factors that are believed to be reasonable under the circumstances, the results of which affect the application of accounting policies and the reported amounts of assets, liabilities and expenses." F-4 (Ex. A) at F-34; Proxy (Ex. B) at F-59. This is consistent with IFRS, which "requires management to employ estimates, assumptions, and judgment calls in financial reporting." *In re XP*, 524 F. Supp. 3d at 32.

estimates.'"); *Thor Power Tool Co. v. Comm'r*, 439 U.S. 522, 544 (1979) ("Generally accepted accounting principles rather, tolerate a range of reasonable treatments, leaving the choice among alternatives to management."). Plaintiff "cannot rely on the bare allegation that the defendant violated accounting standards," and must instead "identify 'in what manner those provisions were violated.'" *In re XP*, 524 F. Supp. 3d at 31-32. As in *In re XP*, Plaintiff has not adequately alleged the falsity of the statement that Li-Cycle's "consolidated financial statements were prepared in accordance with IFRS." *Id.* at 33 n.5.

To make matters worse, Plaintiff resorts to distorting and misquoting the applicable IFRS to concoct an alleged accounting violation that never occurred. For example, the Complaint cites IFRS 15.9 in support of the proposition that a company may recognize revenue from a contract only when "it is probable that the entity will collect the consideration." Compl. ¶ 116. The Complaint omits the full text of IFRS 15.9(e), however, which provides that "[i]n evaluating whether collectability of an amount of consideration is probable, an entity shall consider *only* the customer's ability and intention to pay that amount of consideration *when it is due*." (Emphasis added.) Plaintiff ignores the narrow scope of the test under IFRS and fails to allege any facts suggesting that Li-Cycle estimated revenue the receipt of which was not "probable" or took the wrong factors into account in making that assessment.

Similarly, Plaintiff asserts that Li-Cycle wrongly recognized revenue in violation of IFRS 15.12, which sets forth the rules regarding revenues from customer contracts. *See* Compl. ¶ 116. According to Plaintiff, Li-Cycle did not have any existing contracts within the meaning of IFRS 15.12, but omits its key sentence, which provides: "[A] contract does not exist if each party to the contract has the unilateral enforceable right to terminate a wholly unperformed contract without compensating the other party." IFRS 15.12. But the Complaint does not allege (because it cannot

17

allege) that Li-Cycle's contracts were unilaterally terminable by either party or that they were wholly unperformed. *Cf. Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 161 n.9 ("The Court is not required to accept Lead Plaintiff's legal or accounting conclusion regarding the GAAP requirements . . . ."), *aff'd*, 649 F. App'x 7 (2d Cir. 2016). For example, the Traxys Contract (which was publicly filed with the SEC) does not allow for unilateral termination without an unremedied breach, bankruptcy or a force majeure and makes clear that Li-Cycle *was* entitled to receive consideration. *See* Traxys Contract (Ex. E) at 10.12 ¶ 25.[17]

The Court should not credit Plaintiff's mischaracterization of IFRS, particularly because Deloitte opined that Li-Cycle's "financial statements present fairly, in all material respects, the financial position of the Company as of October 31, 2020 and 2019, and its financial performance and its cash flows for each of the three years in the period ended October 31, 2020, in conformity with [IFRS] . . . ." F-4 (Ex. A) at F-21; Proxy (Ex. B.) at F-45

(3)    *The Challenged Statements are inactionable statements of opinion*

Statements about compliance with accounting standards, like GAAP or IFRS, are statements of opinion, as many courts have held. *See In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *11 (D.N.J. Apr. 27, 2017) ("[T]he parties dispute whether statements about GAAP compliance are statements of opinion or fact. They are opinions."), *aff'd sub nom. In re Hertz Glob. Holdings Inc.*, 905 F.3d 106 (3d Cir. 2018); *In re AmTrust Fin. Servs., Inc. Sec. Litig.*,

---

[17]    Plaintiff does not allege that Li-Cycle realized losses on its revenue estimates, that it had to restate its financial statements, or any other facts that might be indicative of wrongful conduct. "In the absence of a restatement or allegations pointing to objective facts that Defendants' accounting methods violated" IFRS, Plaintiff fails to state a claim. *Harris*, 135 F. Supp. 3d at 172; *see also In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *18 (S.D.N.Y. Sept. 28, 2012) (that "Ernst & Young, did not require a restatement of UBS's financials significantly undercuts Plaintiffs' allegations of recklessness as to compliance with IFRS"), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).

18

2019 WL 4257110, at *34 (S.D.N.Y. Sept. 9, 2019) ("Plaintiffs conceded that the representation that AmTrust's financial statements conformed with GAAP is a statement of opinion."); *cf. In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 302 (S.D.N.Y. 2011) ("[S]tatement regarding GAAS compliance inherently was one of opinion.").[18]

As opinions, such statements must be evaluated pursuant to *Omnicare*, 575 U.S. 175. This "is no small task for an investor." *Id.* at 194. To do so, Plaintiff must allege that: (i) the challenged statements of opinion were not genuinely believed when made; or (ii) identify "particular (and material) facts . . . about the inquiry the issuer did or did not conduct or the knowledge it did or did not have." *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016).

Plaintiff does neither. This failing is not surprising because the Complaint expressly disclaims any allegations of fraud. *See* Compl. ¶ 145; *Omicare*, 575 U.S. at 186 ("And the Funds do not contest that Omnicare's opinion was honestly held. Recall that their complaint explicitly 'exclude[s] and disclaim[s]' any allegation sounding in fraud or deception."). Regardless, and as discussed above, the Offering Documents disclosed each of the facts upon which the opinions reasonably were based, including that Li-Cycle's external auditors at Deloitte had opined that the financial statements conformed with IFRS. Plaintiff's failure to adduce a single factual allegation contradicting these reasonable and genuinely held opinions mandates dismissal.

### B.    Plaintiff Fails to Allege Scienter or Negligence

Plaintiff ignores the requirement that it plead more than strict liability to state a claim under Section 14(a). *See Bemis*, 512 F. Supp. 3d at 529 (collecting cases). At a minimum, the Complaint was required to "plead with particularity facts" establishing the negligence of each Peridot

---

[18]    Li-Cycle's valuation of inventory and assets (Compl. ¶ 53) also is a subjective opinion. *See In re Gen. Elec. Co. Sec. Litig.*, 856 F. Supp. 2d 645, 653 (S.D.N.Y. 2012) ("Statements estimating the fair market value of assets are opinions, not matters of objective fact.").

Defendant.  *Bond Opportunity Fund*, 2003 WL 21058251, at \*4; *Furlong*, 2016 WL 1181710, at \*3 ("The complaint must also allege that defendants acted at least with negligence in making the misrepresentation or omission.").  "[M]ere speculation is insufficient to satisfy the PSLRA pleading standard" applicable to a Section 14(a) claim, *Bond Opportunity Fund*, 87 F. App'x at 773, and group pleading is not permitted.  *Bond Opportunity Fund*, 2003 WL 21058251, at \*4 ("Plaintiffs may not impute knowledge to the individual Defendants solely on the basis of the positions they held.").  Because the claim sounds in fraud, even more is required:  Plaintiff must "convey through factual allegations that the defendants made materially false statements, and that they did so with scienter."  *Coronel v. Quanta Cap. Holdings Ltd.*, 2009 WL 174656, at \*16 (S.D.N.Y. Jan. 26, 2009); *see also Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) ("[W]e must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims of fraud on speculation and conclusory allegations.'").

The Complaint does not allege a single fact in support of this critical element of the claim. Plaintiff does not say what any Peridot Defendant did or did not do to ensure the accuracy of the Challenged Statements, does not explain how or why the Peridot Defendants knew or should have known that their statements allegedly were false or misleading, and does not address at all the process by which a decision was reached to include (or exclude) particular information from the Proxy.  Plaintiff's lone allegation—"[e]ach of the Peridot Individual Defendants . . . negligently permitted these false and misleading statements to be issued concerning the Company and the Business Combination" (Compl. ¶ 38(c); *see id.* ¶ 146)—is nothing more than a group pleaded and "[t]hreadbare recital[] of a cause of action's elements."  *Ashcroft v. Iqbal*, 556 U.S. 678, 663 (2009).

That the Complaint is devoid of facts, let alone particularized facts, giving rise to a strong or even plausible inference of scienter or even negligence is not surprising.  The Proxy explains

20

that the Peridot Defendants worked with sophisticated counsel and financial advisors to conduct "business, financial, technical, commercial and other due diligence," including discussions with Old Li-Cycle's customers, a review of Old Li-Cycle's internal data, and a review of Old Li-Cycle's financial statements. *See* Proxy (Ex. B) at 95-98. Old Li-Cycle's independent auditors confirmed that its financial statements conformed with IFRS (*see* Proxy (Ex. B) at F-45), and the Company has not restated its financials. *See In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *18 ("[T]he fact that UBS's outside independent auditor, Ernst & Young, did not require a restatement of UBS's financials significantly undercuts Plaintiffs' allegations of recklessness as to compliance with IFRS."); *In re JP Morgan Chase Sec. Litig.*, 2007 WL 950132, at *13 (S.D.N.Y. Mar. 29, 2007) (rejecting GAAP violations as sufficient to state a claim because "the SAC does not plead . . . that JPM Chase has had to restate its financial statements").

Because Plaintiff nowhere pleads the Peridot Defendants knew or should have known of the alleged misstatements about Li-Cycle's financial statements, the Section 14(a) claim should be dismissed. *See Bond Opportunity Fund*, 2003 WL 21058251, at *10 ("[I]t is difficult to imagine that the directors knew or should have known of the alleged flaws in the financial analysis . . . .").

### C.    Plaintiff Fails to Plead Loss Causation

Plaintiff's Section 14(a) claim fails for the independent reason that it does not allege a plausible theory of loss causation, an essential element of the claim. *See* 15 U.S.C. § 78u-4(b)(4); *Amorosa v. Ernst & Young LLP*, 672 F. Supp. 2d 493, 504 (S.D.N.Y. 2009) ("[T]o state a claim under Section 14(a), the plaintiff bears the burden of pleading and proving loss causation . . . .").

Plaintiff's theory of loss causation is predicated entirely upon the Blue Orca short-seller Report. *See* Compl. ¶¶ 10-11, 77-81. That Report cannot establish loss causation for at least three reasons.

21

*First*, the Report makes plain throughout that it consists of "solely" Blue Orca's "biased" opinion and that "all statements contained herein . . . are not statements of fact." Blue Orca Report (Ex. C) at 1, 27.[19] Blue Orca's opinion is not a corrective disclosure because, as the Second Circuit made clear and many courts have held, corrective disclosures must comprise "facts"—not opinions or conjecture—that reveal the falsity of Defendants' statements. *See In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010) (loss causation not pleaded where the alleged corrective disclosure did not "even purport[] to reveal some then-undisclosed *fact* with regard to the specific misrepresentations alleged") (emphasis added); *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013) (third-party opinions "are not 'corrective' for the purpose of pleading loss causation"); *see also Zhong Zheng v. Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 178 (E.D.N.Y. 2019) (discrediting short-seller report that "merely represented the author's opinion that Pingtan's 'shares are likely worthless' and that 'shareholders are likely to be left with total losses.'"); *Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306, at *16 (S.D.N.Y. Mar. 30, 2012) ("[T]he raising of questions and speculation by analysts and commentators does not reveal any 'truth' about an alleged fraud . . . ."); *Meyer v. Greene*, 710 F.3d 1189, 1199 (11th Cir. 2013) ("[T]he only thing actually disclosed to the market when the opinion is released *is the opinion itself*, and such an opinion, standing alone, cannot 'reveal[] to the market the falsity' of a company's prior factual representations.").

*Second*, the Report expressly disclaimed "the accuracy, timeliness, or completeness" of its opinions and analysis. Blue Orca Report (Ex. C.) at 27. As courts have held, a publication with such disclaimers cannot be "corrective." *See, e.g.*, *Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198,

---

[19]    The report states no less than 25 times that it is nothing more than Blue Orca's opinion. Submitting the entire 27-page report would violate Rule IV.B.5.a of the Court's Individual Practices; Defendants can provide the entire report should the Court find such information helpful.

1208 (9th Cir. 2020) (*Seeking Alpha* article that "included the disclaimer that the author 'makes no representation as to the accuracy or completeness of the information'" did not qualify as a corrective disclosure); *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 840 (9th Cir. 2022) ("[T]he central holding in [*BofI*] was that the character of the report—anonymous and self-interested short-sellers who disavowed any accuracy—rendered it inadequate" to qualify as a corrective disclosure.).

**Third**, the Report did not "reveal" anything new to the market; it merely expressed Blue Orca's admittedly biased opinions about information the Company had **already** disclosed.[20]  *See* Blue Orca Report (Ex. C) at 27 ("Our opinions are . . . based [] upon publicly available evidence . . . in a manner that **any person** could have done if they had been interested in doing so.") (emphasis added).  It is well-settled that such "disclosures" do not establish loss causation because they do not reveal new facts previously unknown to the market that "correct" a prior misstatement.  *See In re Omnicom Grp.*, 597 F.3d at 512 ("A negative journalistic characterization of previously disclosed facts does not constitute a corrective disclosure of anything but the journalists' opinions."); *Cent. States*, 543 F. App'x at 75 (discrediting "third-party articles and reports . . . based on information that was already publicly available").[21]

---

[20]    Significantly, stock analysts did not react negatively to the Blue Orca report.  For instance, BMO Capital Markets characterized the report as being "without a 'smoking gun' and [] not rais[ing] any incremental/legitimate concerns that would alter our bullish thesis."  BMO Cap. Markets Rpt. (Ex. D) at 1.  The analyst further observed that "the accusations that LICY's non-permanent marketing agreement with Traxys has 'Enron-like' accounting treatments is grossly exaggerated/misleading.  As is common with this type of marketing/WC-support relationship, LICY incurs revenue upon delivery of (black mass) material to Traxys, and based on underlying metal composition and spot-linked pricing.  Any delta between eventual final sale price (between Traxys and end-customer) is then readjusted with LICY."  *Id.*  These observations are substantial indicators of what the market understood and refute any suggestion that the Blue Orca report was a corrective disclosure.  *See Ark. Pub. Emps. Ret. Sys.*, 28 F.4th at 352; *Abdin*, 971 F.3d at 60 n.2.

[21]    *Accord Grigsby*, 979 F.3d at 1208; *Meyer*, 710 F.3d at 1199; *Katyle v. Penn Nat'l Gaming Inc.*, 637 F.3d 462, 473 (4th Cir. 2011) (same); *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261,

But those are not the only reasons the Complaint's loss causation allegations fail as a matter of law.

For one thing, as set forth above (Section II.A.2, *supra*), the Offering Documents disclosed each risk that Plaintiff claims was withheld, which independently refutes Plaintiff's loss causation theory. *See, e.g.*, *In re CRM Holdings, Ltd. Sec. Litig.*, 2012 WL 1646888, at *30-31 (S.D.N.Y. May 10, 2012) (rejecting loss causation theory where IPO prospectus disclosed all challenged risks because "these risks were simply not concealed").

For another, Plaintiff fails to plead that the decline in Li-Cycle's stock price was due to disclosure of the alleged fraud and not other factors. *See, e.g.*, *In re Liberty Tax, Inc. Sec. Litig.*, 435 F. Supp. 3d 457, 471 (E.D.N.Y. 2020) ("'[L]oss causation is not adequately pled simply by allegations of a drop in stock price following an announcement of bad news if the news did not disclose the fraud.' . . . Plaintiff must 'disaggregate those losses caused by changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, from disclosures of the truth behind the alleged misstatements.'"); *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 2022 WL 151302, at *2 (2d Cir. Jan. 18, 2022) (summary order) (same). This requirement is particularly important because "short sellers . . . have an obvious motive to exaggerate the infirmities of the securities in which they speculate." *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 577 (S.D.N.Y. 2012); *see also Harris*, 135 F. Supp. 3d at 163 (observing that the "market reacted as [short-seller] GeoInvesting no-doubt hoped" when a stock price dropped 12% in response to its report). The revelation that Blue Orca was shorting Li-Cycle likely caused the stock drop; not the

---

270-71 (3d Cir. 2005); *Zhong Zheng*, 379 F. Supp. 3d at 178; *Fila v. Pingtan Marine Enter. Ltd.*, 195 F. Supp. 3d 489, 496 (S.D.N.Y. 2016) (Nathan, J.).

revelation of any "truth."  *See Meyer*, 70 F.3d at 1199, 1201 n.13 (short-seller report is "exactly the type of confounding information" that "does not qualify as a corrective disclosure" and must be disaggregated).  Plaintiff's failure to plead a plausible theory of loss causation and failure to disaggregate competing causes for the stock drop requires dismissal.[22]

**III.    The Complaint Fails to State A Section 11 Claim Against the Li-Cycle Defendants**

Plaintiff's Section 11 claim should be dismissed for lack of an alleged false statement or omission of material fact.  *See* Section II.A, *supra*.  The law is clear that falsity and materiality are analyzed in the same manner under Section 14 of the Exchange Act and Section 11 of the Securities Act.  *See In re Morgan Stanley Info. Fund. Sec. Litig.*, 592 F.3d 347, 358-60 (2d Cir. 2010).  And "[w]hen a registration statement warns of the exact risk that later materialized, a [s]ection 11 claim will not lie as a matter of law."  *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013).[23]

**IV.    The Complaint Fails to State A Claim For Control Person Liability**

Absent a primary violation, Plaintiff's Section 15 claim also fails.  *See ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 207 (2d Cir. 2009).  Therefore, the Section 15 claim should be dismissed.

**CONCLUSION**

Each of Plaintiff's claims should be dismissed with prejudice.

---

[22]    For these same reasons, Defendants have shown negative causation under Section 11, which is an independent basis for dismissal.  *See, e.g.*, *Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*, 2010 WL 148617, at *11 (S.D.N.Y. Jan. 14, 2010).

[23]    As with Section 14(a) (*see* note 14, *supra*) certain Challenged Statements (Compl. ¶¶ 63-75) post-date the F-4 and are beyond the reach of Section 11.  15 U.S.C. § 77k(a).  Plaintiff also cannot sue upon Li-Cycle's FY21 Annual Report (Compl. ¶¶ 67-71) because that document was included in the February 16, 2022 "Post-Effective Amendment No. 1," which concerned only "the registration of 11,021,923 of [Li-Cycle] common shares issuable . . . to the selling shareholder named in this prospectus."  Compl. ¶ 74.  Plaintiff does not (and cannot) trace its shares to this subset of Li-Cycle common stock, and it does not have standing to challenge these after-the-fact statements.  *See In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 206-07 (S.D.N.Y. 2003) ("[T]o have standing to assert a section 11 claim, plaintiffs must be able to trace their shares to an allegedly misleading registration statement.").

25

Dated: December 19, 2022          Respectfully submitted,
      New York, New York

**Freshfields Bruckhaus Deringer US LLP**

/*s*/ Mary Eaton
Mary Eaton
Peter J. Linken
Adam Rosenfeld
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 277-4000
Mary.Eaton@freshfields.com
Peter.Linken@freshfields.com
Adam.Rosenfeld@freshfields.com

*Attorneys for Defendants*

26