**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com
Email: blapointe@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE LANIGAN GROUP, INC., Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LI-CYCLE HOLDINGS CORP. F/K/A PERIDOT ACQUISITION CORP., AJAY KOCHHAR, TIM JOHNSTON, BRUCE MACINNIS, DEBBIE SIMPSON, SCOTT PROCHAZKA, ALAN LEVANDE, MARKUS SPECKS, PRESTON POWELL, JONATHAN SILVER, and JUNE YEARWOOD; <br><br> Defendants. | Case No. 1:22-cv-02222-HG-RML <br><br> **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>JURY TRIAL DEMANDED</u> <br><br> <u>CLASS ACTION</u> |

i

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................... 1

II.  SUMMARY OF RELEVANT FACTS .................................................................... 5

   A.   The Business Combination ................................................................................ 5

   B.   The Offering Documents Materially Overstated Revenue and Accounts Receivable by Mischaracterizing Shipments to Li-Cycle's "Strategic Partner", Traxys, as "Sales" and Recording Loan Proceeds from Traxys as Revenue ................................................... 6

   C.   The Offering Documents Omitted Material Internal Control Weakness Related to Revenue Recognition and Accounts Receivable ................................................. 8

   D.   Li-Cycle Revealed Additional Information About its Accounting for Revenue, Receivables, and Inventory Only After the Business Combination Closed ..................... 9

   E.   On the Back of These Statements, Li-Cycle Raised Millions from Investors in Connection with the Business Combination ...................................................... 10

III. ARGUMENT ........................................................................................................... 11

   A.   Standard of Review on Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) .................... 11

   B.   Defendants' Suggestion that the Amended Complaint is "Puzzle Pleading" Is Unfounded ..................................................................................................... 11

   C.   Defendants' Material Misrepresentations and Omissions Rendered the Registration Statement Misleading Under §11 of the Securities Act .................................... 12

     1.   Materially Overstated Net Revenues and Accounts Receivable ................................. 13

     2.   Omitted Material Internal Control Weaknesses ....................................................... 14

   D.   Plaintiff Pleads §14 Claims Against the Peridot Defendants ....................................... 16

     1.   Plaintiff's Claims under Section 14(a) Do Not "Sound in Fraud" ............................. 18

     2.   The Peridot Defendants' Statements Were False and Misleading .............................. 20

     3.   The Peridot Defendants' Statements Were Not Opinions ......................................... 21

   E.   The Amended Complaint Alleges Loss Causation under §14(a) ................................... 22

   F.   The Complaint Adequately Alleges Control Person Liability ....................................... 25

IV.  CONCLUSION ........................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdin v. CBS Broadcasting Inc.*,
   971 F.3d 57 (2d Cir. 2020) .................................................................................................. 4

*Acito v. IMCERA Grp., Inc.*,
   47 F.3d 47 (2d Cir. 1995) .................................................................................................. 25

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
   28 F.4th 343 (2d Cir. 2022) ................................................................................................ 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................................... 11

*Beck v. Dobrowski*,
   559 F.3d 680 (7th Cir. 2009) ......................................................................................... 5, 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................................... 11

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
   506 F. App'x 32 (2d Cir. 2012) ........................................................................................ 11

*Bond Opportunity Fund v. Unilab Corp.*,
   2003 WL 21058251 (S.D.N.Y. May 9, 2003) ................................................................... 22

*Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
   866 F. Supp. 2d 223 (S.D.N.Y. 2012) .......................................................................... 23, 24

*Caiola v. Citibank, N.A.*,
   295 F.3d 312 (2d Cir. 2002) .............................................................................................. 15

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
   450 F. Supp. 3d 379 (S.D.N.Y. 2020) ............................................................................... 14

*CompuDyne Corp. v. Shane*,
   453 F. Supp. 2d 807 (S.D.N.Y. 2006) ............................................................................... 25

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) ................................................ 25

*Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*,
343 F.3d 189 (2d Cir. 2003) ................................................................................. 25

*Enzo Biochem, Inc. v. Harbert Discovery Fund,*
2021 WL 4443258 (S.D.N.Y., Sept. 21, 2021) ...................................................... 5

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*,
902 F. Supp. 2d 476 (S.D.N.Y. 2012) ................................................................. 19

*Fresno Cty. Empl. Ret. Ass'n. v. ComScore, Inc.,*
268 F. Supp. 3d 526 (S.D.N.Y. 2017) ................................................................... 5

*Garcia v. Hetong Guo,*
2016 WL 102213 (C.D. Cal., Jan. 7, 2016)………………..…………………………………….24

*Gerstle v. Gamble-Skogmo, Inc.*,
478 F.2d 1281 (2d Cir. 1973) .............................................................................. 17

*Gray v. Wesco Aircraft Holdings, Inc.*,
454 F. Supp.3d 366 (S.D.N.Y 2020) ................................................................... 22

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*,
422 F. Supp. 3d 821 (S.D.N.Y. 2019) ................................................................. 16

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983) ................................................................................. 12, 13, 16

*Ho v. Duoyuan Glob. Water, Inc.*,
887 F. Supp. 2d 547 (S.D.N.Y. 2012) ................................................................. 22

*In re Alcatel Sec. Litig.*,
382 F. Supp. 2d 513 (S.D.N.Y. 2005) ................................................................. 11

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
741 F. Supp. 2d 511 (S.D.N.Y. 2010) ................................................................. 24

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
381 F. Supp. 2d 192 (S.D.N.Y. 2004) ................................................................. 25

*In re Bank of America Sec. Litig.,*
757 F. Supp. 2d 260 (S.D.N.Y. 2010) ............................................................ 18, 21

*In re BioScrip, Inc. Sec. Litig.*,
95 F. Supp. 3d 711 (S.D.N.Y. 2015) ................................................................... 14

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
No. 17-CV-4846 (WFK), 2020 WL 1950783 (E.D.N.Y. Apr. 22, 2020) .................................. 16

*In re Bristol Myers Squibb Co. Sec. Litig.*,
586 F. Supp. 2d 148 (S.D.N.Y. 2008) .................................................................................. 23

*In re CINAR Corp. Sec. Litig.*,
186 F. Supp. 2d 279 (E.D.N.Y. 2002) .................................................................................. 18

*In re CitiGroup Inc. Bond Litig.*,
723 F. Supp. 2d 568 (S.D.N.Y. 2010) .................................................................................. 20

*In re Countrywide Fin. Corp. Derivative Litig.*,
554 F. Supp. 2d 1044 (C.D. Cal. 2008) ................................................................................ 20

*In re IAC/InterActiveCorp Sec. Litig.*,
478 F. Supp. 2d 574 (S.D.N.Y. 2007) .................................................................................. 13

*In re ITT Educ. Svcs., Inc., Sec. Litig.*,
859 F. Supp. 2d 572 (S.D.N.Y. 2012) .................................................................................. 11

*In re JP Morgan Chase Sec. Litig.*,
363 F. Supp. 2d 595 (S.D.N.Y. 2005) .................................................................................. 17

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
650 F.3d 167 (2d Cir. 2011) ................................................................................................. 25

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
2014 WL 285103 (S.D.N.Y. Jan. 27, 2014) ......................................................................... 22

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
536 F. Supp. 2d 313 (S.D.N.Y. 2007) .............................................................................. 16, 17

*In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*,
2008 WL 2324111 (S.D.N.Y. June 4, 2008) ......................................................................... 23

*In re Moody's Corp. Sec. Litig.*,
2013 WL 4516788 (S.D.N.Y. Aug. 23, 2013) ....................................................................... 13

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010) ................................................................................................. 12

*In re NTL, Inc. Sec. Litig.*,
347 F. Supp. 2d 15 (S.D.N.Y. 2004) .................................................................................... 12

*In re OSG Sec. Litig.*,
   971 F. Supp. 2d 387 (S.D.N.Y. 2013)...................................................................... 18, 19

*In re: Petrobras Sec. Litig.*,
   2016 WL 1533553 (S.D.N.Y., Feb. 16, 2016) ............................................................. 21

*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007)......................................................................... 19

*In re Reliance Sec. Litig.*,
   135 F. Supp. 2d 480 (D. Del. 2001) ............................................................................ 17

*In re Sibanye Gold Ltd. Sec. Litig,*
   2020 WL 6582326 (E.D.N.Y. Nov. 10, 2020)............................................................. 11

*In re SunEdison, Inc. Sec. Litig.*,
   300 F. Supp. 3d 444 (S.D.N.Y. 2018).......................................................................... 13

*In re Trump Hotels S'holder Derivative Litig.*,
   2000 WL 1371317 (S.D.N.Y. Sept. 21, 2000)............................................................. 17

*In re Vivendi, S.A. Sec. Litig.*,
   838 F.3d 223 (2d Cir. 2016)........................................................................................ 15

*In re Wachovia Equity Sec. Litig.*,
   753 F. Supp. 2d 326 (S.D.N.Y. 2011).......................................................................... 20

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   282 F. Supp. 3d 1074 (N.D. Cal. 2017) ...................................................................... 20

*In re Winstar Commc'ns*,
   2006 WL 473885  fn.8 (S.D.N.Y.  Feb. 27, 2006)...................................................... 12

*In re WorldCom, Inc. Sec. Litig.*,
   2004 WL 1435356 (S.D.N.Y. June 28, 2004)............................................................. 19

*Katz v. Pels*,
   774 F. Supp. 121 (S.D.N.Y. 1991).......................................................................... 17, 19

*Kronfeld v. Trans World Airlines, Inc.*,
   832 F.2d 726 (2d Cir. 1987)........................................................................................ 13

*Lapin v. Goldman Sachs Grp., Inc.*,
   506 F. Supp. 2d 221 (S.D.N.Y. 2006)......................................................................... 23

v

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005)...................................................................................... 25

*Lewy v. SkyPeople Fruit Juice, Inc.*,
    2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012) ........................................................ 22

*Litwin v. Blackstone Grp., L.P.*,
    634 F.3d 706 (2d Cir. 2011)............................................................................... 14, 15

*Long Miao v. Fanhua, Inc.*,
    442 F. Supp.3d 774 (S.D.N.Y. 2020)....................................................................... 23

*McIntire v. China MediaExpress Holdings, Inc.*,
    927 F. Supp. 2d 105 (S.D.N.Y. 2013)...................................................................... 22

*Meyer v. Jinkosolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014)............................................................................... 15, 16

*Mills v. Elec. Auto-Lite Company*,
    396 U.S. 375 (1970) .................................................................................................. 16

*Nathel v. Siegal*,
    592 F. Supp. 2d 452 (S.D.N.Y. 2008)...................................................................... 24

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015) .............................................................................................. 17

*Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*,
    595 F.3d 86 (2d Cir. 2010)........................................................................................ 15

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)...................................................................................... 19

*Rombach v. Chang*,
    2002 WL 1396986 (E.D.N.Y. June 7, 2002)............................................................ 19

*S.E.C. v. DCI Telecommunications, Inc.*,
    122 F. Supp. 2d 495 (S.D.N.Y. 2000)...................................................................... 14

*Sec. & Exch. Comm'n v. MiMedx Grp., Inc.*,
    2022 WL 902784 (S.D.N.Y. Mar. 28, 2022) ........................................................... 13

*Seinfeld v. Gray*,
    404 F.3d 645 (2d Cir. 2005)...................................................................................... 16

*Slayton v. Am. Exp. Co.*,
   604 F.3d 758 (2d Cir. 2010) ................................................................................ 15

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
   547 F.3d 406 (2d Cir. 2008) .................................................................................. 4

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ............................................................................................ 11

*TSC Indus., Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976) ............................................................................................ 20

*Wilson v. Great Am. Indus., Inc.*,
   855 F.2d 987 (2d Cir. 1988) .......................................................................... 18, 19

## Statutes

15 U.S.C. § 77k(a) ................................................................................................ 12

15 U.S.C. § 77o ..................................................................................................... 13

## Rules

Fed. R. Civ. P. 8 ................................................................................................. 5, 22

Fed. R. Civ. P. 9 .................................................................................... 5, 18, 19, 23

Fed. R. Civ. P. 12 ............................................................................................... 4, 11

Fed. R. Civ. P. 56 ................................................................................................... 4

## I.    INTRODUCTION

The Complaint sufficiently alleges that  Li-Cycle Holdings Corp.'s ("Li-Cycle" or the "Company") Registration Statement, filed on Form F-4 with the SEC on March 29, 2021 (the "Registration Statement" or "F-4"), as subsequently amended, and the Proxy Statement and Prospectus of Peridot Acquisition Corp. ("Peridot"), dated July 15, 2021 (the "Proxy") (together, the Registration Statement and the Proxy are referred to as the "Offering Documents") in regards to  the August 10, 2021, merger of Peridot and Li-Cycle Corp ("Old Li-Cycle") (the "Business Combination"), contained material misstatements and omissions. Specifically, the Offering Documents are alleged to have contained material misstatements and omissions concerning Old Li-Cycle's premature recognition of revenue and recording of accounts receivable and gains on in-process receivables and inventory. ¶¶49-61.

Defendants' arguments that the alleged misstatements were immaterial or mere statements of "opinion" are pure nonsense. Preliminarily, materiality is a question of fact and as such is not appropriate for resolution on a motion to dismiss. The overstatements in net revenue and assets at issue are quantitively and qualitatively material under SEC regulations, International Financial Reporting Standards "IFRS", and to any reasonable investor. Knowing as much, Defendants fall back on the contention that the generalized disclosures contained in the Offering Documents diminish the materiality of the overstatements. But it is well established that: (a) once it has elected to speak on a given topic, the issuer of a statement is duty-bound not to omit facts necessary to prevent its affirmative statements from being misleading, and (b) cautionary words about future risk cannot insulate liability for misstatements of historical facts or the failure to disclose present facts.

1

Defendants point to the descriptions of their financial reporting for revenue and receivables in the Offering Documents stating that Old Li-Cycle "estimates all amounts of consideration to which it expects] to be entitled and updates those estimates […] based on market prices" and that "final settlement amount for [sales] is typically determined several months after delivery […] and may result in adjustment…" ¶¶50-51, 57. Defendants also repeatedly represented that "revenue is recognized when control of the goods is transferred, meaning when the goods have been shipped to the customer's location (delivery)". *Id.* Further, Defendants represented that receivables are "recognized when the goods are delivered to the customer, as this represents the point at which the right to consideration becomes unconditional" and "only the passage of time is required before payment is due." *Id.* Defendants further represented that there "are no significant financing components associated with the Company's payment terms." *Id.* These statements, taken together, led investors to understand that Old Li-Cycle recognized estimated revenue and receivables ***after*** the goods had been delivered to a customer, which it would then adjust for commodity price fluctuations between delivery and final settlement.

In reality, Old Li-Cycle recorded revenue and receivables not upon delivery to a customer, but upon transferring the goods to its marketing partner, Traxys North America LLC ("Traxys"). Upon receiving the goods, Traxys would ***then*** identify a customer and deliver the goods at an unspecified later date. ¶¶77-99, 133-143. Old Li-Cycle thus recognized revenue on speculative sales before a customer was identified, let alone the goods were delivered. *Id.* Defendants affirmatively represented that sales were recognized only upon delivery—after the terms of the sale (other than final price) were final, and "only the passage of time" stood between Old Li-Cycle and collection of the revenue. ¶¶50-51, 57.

2

In truth, sales remained speculative until Traxys actually identified a buyer, negotiated a sale, and delivered the goods. ¶¶77-99, 133-143. Further, Defendants' representation that there were "no significant financing components" was also flatly misleading, as the Company was obligated to pay interest to Traxys for all "provisional payments" received pursuant to the "working capital" credit facility, until the date of collection from the ultimate customer. *Id.*

Furthermore, the Offering Documents failed to adequately disclose material weaknesses in Old Li-Cycle's internal controls. Similarly, the Offering Documents failed to disclose a lack of financial and accounting personnel competent in IFRS. ¶¶60-61, 70-71. These weaknesses existed at the time of the Business Combination and directly contributed to Old Li-Cycle's material overstatements of revenue and assets. As a result, nearly 45% of the Company's reported revenue was fictitious as of the first quarter of FY 2022. ¶¶77-81. While Defendants warned in the Offering Documents that Old Li-Cycle had not conducted a full review of its internal controls, and that there was a "reasonable possibility" of a material misstatement with respect to "inventory costing and business combinations," ¶¶60-61, it did not warn that its lack of trained accounting personnel might lead to an overstatement of ***revenue*** or ***receivables*** (compare disclosures ***after*** the Business Combination, at ¶¶70-71).

As they discussed internal controls, Defendants were duty-bound to disclose *all* internal control deficiencies. Worse, Defendants' election to warn of potential material misstatements of certain items ("inventory costing and business combinations") falsely implies the absence or reduced estimation of such risks with respect other items (e.g., revenue, receivables). In this case, revenue and receivables were more material to the Company's overall performance, and therefore its valuation in the eyes of investors and the market.

Defendants have also improperly raised before the Court an unproved, affirmative defense of negative causation. Defendants have urged the Court to consider an analyst report issued *after* the March 24, 2022 Blue Orca Capital report (the "Blue Orca Report") revealed the truth to the market regarding Li-Cycle's issues. MTD at 8, fn. 8, and MTD Ex. D ("BMO Cap. Markets Rpt.")[1] These arguments, in particular, must fail on a motion to dismiss. Defendants' contentions fall well short of the heavy burden they will bear at summary judgment or trial to disprove the presumption that all price declines following the issuance of securities under a false and misleading registration statement, and prospectus, are caused by the material false statements and omissions contained therein.

---

[1] The cases Defendants cite to support taking judicial notice of the BMO Capital Mkts. Rpt. each concerned the taking of judicial notice of analyst reports *prior to* the asserted collective disclosures to demonstrate the availability of those facts to the market prior to the disclosure. The BMO Capital Mkts. Rpt., on the other hand, was issued *after* and *in response to* the Blue Orca Report, and therefore cannot demonstrate what the market may have known *before* the alleged corrective disclosure. Rather, Defendants offer the BMO Capital Mkts. Rpt. in an attempt to show the market's subsequent reaction to the Blue Orca Report—in other words, as hearsay evidence, offered for its truth. Judicial notice of the BMO Capital Mkts. Rpt. is thus manifestly improper, even under the authority Defendants themselves cite. *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 (2d Cir. 2022) ("'[I]t is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents[.]'… When the court takes judicial notice of documents, it must rely on such documents only for the fact that the statement was made.") (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)); *Abdin v. CBS Broadcasting Inc.*, 971 F.3d 57, 60 n.2 (2d Cir. 2020) ("The district court properly took judicial notice of the publications… not necessarily for the truth of the matter asserted, but for the publication of such information and relevant discussion in the scientific community."). Under Fed. R. Civ. P. 12(d), consideration of such extrinsic evidence would convert this to a Fed. R. Civ. P. 56 motion for summary judgment. Worse, Plaintiff cannot offer any evidentiary response to the assertions therein without resorting to the introduction of *additional* evidence extrinsic to the Amended Complaint. Therefore, in the event that the Court is inclined to consider the BMO Capital Mkts. Rpt., Plaintiff requests that the Court defer judgment on Defendants' motion and order an appropriate period of fact discovery and re-briefing of all relevant facts, so that "all parties [may] be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

4

The only independent elements of Section 14(a) that Defendants contest are *scienter* and loss causation. But "neither Section 11 nor Section 14(a) requires pleading that a defendant acted with an intent to defraud." *Fresno Cty. Empl. Ret. Ass'n. v. ComScore, Inc.,* 268 F. Supp. 3d 526, 557 (S.D.N.Y. 2017) Where the complaint alleges only negligence, "courts have consistently held that Section 11 and Section 14(a) are subject to notice pleading…" *Id.* at 558. "[N]egligence is not a state of mind; it is a failure… to come up to specified standard of care." *Id.* at 559 (quoting *Beck v. Dobrowski*, 559 F.3d 680 (7th Cir. 2009) (Posner, J.)). Thus, the Amended Complaint needs to plead the Peridot defendants' negligence only to the standard of Fed. R. Civ. P. 8(a)—"a short and plain statement…".

Defendants' argument on loss causation fails because the cases on which they rely all relate to pleading loss causation in a claim under §10(b) of the Exchange Act—in other words, claims requiring the loss causation be pled with particularity under Fed. R. Civ. P. 9(b) and the PSLRA. "To plausibly allege loss causation under Section 14(a), a plaintiff must satisfy 'Rule 8 notice pleading standards,' which requires 'some indication of the loss and the causal connection that the plaintiff has in mind.'... *Enzo Biochem, Inc. v. Harbert Discovery Fund,* 2021 WL 4443258 (S.D.N.Y., Sept. 21, 2021). Plaintiff has certainly cleared that hurdle. ¶¶ 10-11, 77-81.

Finally, because the Complaint adequately alleges a §11 violation, and Defendants do not contest any of the control allegations pled in support of the Complaint's §15 claim, that cause of action must also be sustained.

## II.    SUMMARY OF RELEVANT FACTS

### A.    The Business Combination

The Company recycles lithium-ion batteries (used in, *e.g*., smartphones, portable computers, and electric vehicles) and sells recovered material ("Black Mass", which is distilled material from battery recycling) back into the supply chain. It went public on August 10, 2021

5

after Old Li-Cycle" the Business Combination was completed. ¶21. The Company's principal place of business is in Toronto, Canada, and it is incorporated in Ontario, Canada.

At the time of the Business Combination, Old Li-Cycle touted itself as having, "40+ commercial contracts with blue chip suppliers and off-take agreements through 2030, corresponding to a cumulative forecasted EBITDA between 2021 and 2025 of $985 million.[2] More than $300 million/year of revenue is to be generated from contracted off-take agreements with Traxys, both an investor in the PIPE[3] and an existing strategic partner.." ¶48.

Old Li-Cycle's reported revenues had grown from $64,000.00 in fiscal year 2019, to $1,059,000.00 in fiscal year 2020. ¶49. The last quarter reported in its Offering Documents was the quarter ended January 31, 2021 ("Q1 2021"). During this time Old Li-Cycle reportedly earned $1,017,000 in revenue, a 1,625% increase on the $59,000.00 it reported for the same period in 2020 and nearly as much as the entire preceding fiscal year.¶56, Proxy at 210. Of this amount, reported revenue from product sales (i.e., excluding Li-Cycle's reported revenue from direct recycling services) accounted for a reported $913,000, a 3,539% increase on the $25,000 reportedly earned in the same period in FY2020. *Id.*

> **B.** **The Offering Documents Materially Overstated Revenue and Accounts Receivable by Mischaracterizing Shipments to Li-Cycle's "Strategic Partner", Traxys, as "Sales" and Recording Loan Proceeds from Traxys as Revenue**

In connection with the Business Combination, Old Li-Cycle made inaccurate or misleading statements of material facts concerning compliance with its accounting policies for revenue recognition, accounts receivable, and inventory. ¶¶112-114, 133-143. Old Li-Cycle explained in its Offering Documents that, in conformity with IFRS, it recognizes revenue from the sale of its

---

[2] All amounts are reported in Canadian Dollars ("CAD"), unless otherwise noted.
[3] Private Investment in Public Equity ("PIPE") financing.

6

principal product, Black Mass, upon sale to its customers. ¶¶50-53, 57, 63-64, 67. In actuality, Li-Cycle reported revenue long before sales are consummated—before a customer is ever identified, let alone obligated to pay for the product. ¶¶77-99. Instead, Old Li-Cycle recognized revenue upon delivering Black Mass to Traxys, which then loaned funds to Li-Cycle under an interest-bearing "working capital" facility until Traxys could identify a customer, deliver the goods, and collect payment. *Id.*

Li-Cycle repeatedly and unequivocally represented in the Offering Documents that it recognized revenue "when control of the goods is transferred, meaning ***when the goods have been shipped to the customer's location*** (delivery)", that a receivable is recognized "when the goods are delivered to the customer" or "when it transfers control of a product… to a customer." It purportedly did so because upon delivery "the right to consideration becomes unconditional" and "passage of time is the only condition to payment becoming due." ¶¶50-53, 57, 63-64, 67 (Emphasis added). On the contrary, Old Li-Cycle recognized revenue when it transferred goods to Traxys for subsequent marketing on Old Li-Cycle's account, and not when goods were "shipped to a customer." ¶¶ 77-99. Old Li-Cycle thus generated the appearance of present revenue before any customer was actually obligated to purchase or pay. *Id.* Old Li-Cycle received working-capital disbursements for Traxys—on which it paid Traxys interest—and treated these loan disbursements as revenue from sales. *Id.* Old Li-Cycle booked ***estimated*** revenue and receivables based on prevailing commodity prices at the moment Traxys took possession, before any customer was "irrevocably" committed to take delivery or pay. *Id.*

Further, after revenue and receivables were initially recognized, Old Li-Cycle would "adjust" the carried value of the receivables periodically. In an environment of rising commodity prices, this led to it reporting additional revenue and receivables because the "expected" price Li-

Cycle expected would increase along with rising commodity prices. *Id.* While it represented to investors that it only made such adjustments during the time between ***customer delivery*** and final settlement, it actually carried such estimated receivables from the date of delivery to Traxys, well before any customer was committed. *Id.*

Finally, while Old Li-Cycle represented that it reported its inventory at the lower of cost or net realizable value, the inventory it gave Traxys was actually treated as sold inventory and carried as receivables at these adjusted, estimated ultimate sales prices. This had the effect of systematically inflating the reported value of Old Li-Cycle's assets. *Id.* If Li-Cycle's Black Mass in Traxys' possession were reported as inventory, it would be listed as an asset at ***lower*** of cost or market value. By converting these assets to an estimated receivable immediately upon handing them over to Traxys, Old Li-Cycle was able to list these assets at its estimate of their ultimate sale price. Further, it would adjust them upward as commodity prices rose—not at cost, but at the ***higher*** "estimated" market value. *Id.*

In brief, Old Li-Cycle, contrary to what it told investors, systematically accelerated revenue recognition, and artificially inflated the value of its assets.

> **C.** **The Offering Documents Omitted Material Internal Control Weakness Related to Revenue Recognition and Accounts Receivable**

The Proxy incorporated audited financials for Old Li-Cycle's FY 2020 and 2019, along with unaudited condensed interim financial statements for the first quarter of FY 2021 ("1Q21") and the same quarter in the prior year ("1Q20"). ¶56. Old Li-Cycle Management's Discussion & Analysis ("MD&A") incorporated therein included a disclosure that Old-Li-Cycle had "identified material weaknesses in its internal control over financial reporting." ¶59. The reported material weakness consisted of a "combination of control deficiencies," including lack of "an effective internal control environment with formal processes and procedures or an adequate number of

accounting personnel with the appropriate technical training in and experience with, IFRS to allow for a detailed review of complex accounting transactions that would identify errors in a timely manner, including ***inventory costing and business combinations***" and "***information technology controls***, including end user and privileged access rights and appropriate segregation of duties" *Id*. (emphases added).

The Proxy further disclosed that these weaknesses had resulted in misstatements relating to "incorrect capitalization of certain amounts that should have been expensed" and "underaccrual of certain accounts payable." ¶60 Notably, the MD&A did not discuss any identified or potential material weaknesses or misstatements with respect to Old Li-Cycle's reporting of revenue, accounts receivable, or inventory. ¶61.

**D.     Li-Cycle Revealed Additional Information About its Accounting for Revenue, Receivables, and Inventory Only After the Business Combination Closed**

The day after completion of the Business Combination, the new Li-Cycle filed a Form 6-K attaching a "non-offering prospectus" submitted the previous day to the Ontario Securities Commission ("OSC"). This non-offering prospectus included unaudited interim statements for the second quarters of FY 2021 ("2Q21") and the prior year ("2Q20"). ¶63. These interim statements included new language—not incorporated into any of the Offering Documents issued prior to the consummation of the Business Combination—that the Company's reported accounts receivable were based on "estimates…. under provisional pricing arrangements" and that "payment of receivables may take up to 12 months from the date of shipment" and booked receivables were "re-estimated at each reporting period" based on "market prices… at the respective measurement dates." *Id.*

Nonetheless, Li-Cycle maintained, as stated in its FY2021 Annual Report, that it recognized revenue "when control of the goods has transferred, meaning when the goods have

9

been shipped to the customer's location (delivery)" and recognized receivables only "when the goods are delivered to a customer." ¶67.

The Company adjusted its material weakness disclosure after the Business Combination to warn that it might fail to prevent or detect errors "in areas such as ***revenue recognition, inventory, [and] related party arrangements***..." ¶70 (Emphasis added). Even then, the Company did not disclose or warn of any potential errors or misstatements in its financial reporting on these topics.

**E.      On the Back of These Statements, Li-Cycle Raised Millions from Investors in Connection with the Business Combination**

In the wake of the misstatements and omissions of material fact in the Offering Documents, USD $615 million was raised in the SPAC initial public offering ("IPO") and subsequent transactions, consisting of USD $300 million raised in Peridot's SPAC initial public offering ("IPO"), and an addition USD $315 million in private investment in public equity ("PIPE") financing from a consortium of institutional investors—including its "strategic marketing and global off-take partner", Traxys. [4]

As a result of Defendants' misstatements and omissions concerning Li-Cycle's reported revenue, accounts receivable, and related assets, investors were damaged.  After the release of the Blue Orca Report, the value of Li-Cycle stock fell USD $0.47 per share, or approximately 5.6%, to close at USD $7.93 per share on March 24, 2022(see Initial Complaint, Dkt. #1). While the price

---

[4] Press Release, *Li-Cycle, North America's Largest Lithium-Ion Battery Resource Recycling Company, to list on NYSE through Transaction with peridot Acquisition Co. (*available at https://www.businesswire.com/news/home/20210216005429/en/Li-Cycle-North-America%E2%80%99s-Largest-Lithium-Ion-Battery-Resource-Recycling-Company-to-List-on-NYSE-through-Transaction-with-Peridot-Acquisition-Corp.)

very briefly rebounded between March 30 and April 5, 2022, it has remained depressed since, closing at USD $5.90 on the last full trading day before this writing, March 3, 2023.[5]

## III.    ARGUMENT

### A.    Standard of Review on Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss, a complaint only need to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts accept the facts in the complaint as true and draw all reasonable inferences in plaintiffs' favor. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). The complaint survives if the facts alleged "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### B.    Defendants' Suggestion that the Amended Complaint is "Puzzle Pleading" Is Unfounded

Defendants claim that the Amended Complaint constitutes undecipherable "puzzle pleading" (MTD, 11-12). However, Defendants response itself betrays they were indeed able to easily identify what Plaintiffs allege to be false or misleading and why. Each of the cases Defendants cite asserted claims under §10(b) of the Securities Exchange Act of 1934, and found that the plaintiffs had failed to allege sufficient facts to plead scienter with respect to each asserted false statement. *See Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32 (2d Cir. 2012), *In re Sibanye Gold Ltd. Sec. Litig,* 2020 WL 6582326 (E.D.N.Y. Nov. 10, 2020), *In re Alcatel Sec. Litig*., 382 F. Supp. 2d 513 (S.D.N.Y. 2005), and *In re ITT Educ. Svcs., Inc., Sec. Litig.,* 859 F. Supp. 2d 572 (S.D.N.Y. 2012).

---

[5] See Li-Cycle Holdings Corp (LICY) Historical Price data (available at: https://finance.yahoo.com/quote/LICY?p=LICY&.tsrc=fin-srch.)

Plaintiffs in this case do not even need to plead scienter, as none of its claims sound in fraud. Here, the Amended Complaint sets forth the statements alleged to be materially false or misleading, and specifically describes "how" and "why" those statements are actionable. ¶¶133-143. Defendants' accusation of "puzzle pleading" is particularly misplaced given that the allegations here all focus on the narrow issues of reporting of revenue and receivables under IFRS, in specifically identified and dated financial statements. See *In re NTL, Inc. Sec. Litig.*, 347 F. Supp. 2d 15, 22 (S.D.N.Y. 2004) (rejecting "puzzle pleading" argument because plaintiffs identified the date, source, speaker, and reasons why statements were misleading); *In re Winstar Commc'ns*, 2006 WL 473885, at *8 fn.8 (S.D.N.Y. Feb. 27, 2006) (rejecting puzzle-pleading argument because the "allegations are sufficiently particularized to provide the defendants with fair notice of the claims").

## C.    Defendants' Material Misrepresentations and Omissions Rendered the Registration Statement Misleading Under §11 of the Securities Act

"Section 11 places a relatively minimal burden on the plaintiff." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). Section 11 imposed "virtually absolute" liability for material misstatements, and "even for innocent misstatements." *Herman & MacLean*, 459 U.S. at 381-82. To state a claim under §11, the plaintiff must allege that: (1) she purchased a registered security, either directly from the issuer or in the aftermarket following the offering; (2) the defendant participated in the offering in a manner sufficient to give rise to liability under section 11; and (3) the registration statement contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'" *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010) (*quoting* 15 U.S.C. § 77k(a)).

12

Material facts include facts "which may affect the desire of investors to buy, sell, or hold the company's securities." *Kronfeld v. Trans World Airlines, Inc.*, 832 F.2d 726, 732 (2d Cir. 1987). "A Section 11 violation is established when 'material facts have been omitted or presented in such a way as to obscure or distort their significance.'" *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 595 (S.D.N.Y. 2007) (internal quotation omitted). In contrast to securities fraud claims under Section 10(b) of the Securities Exchange Act of 1934, "plaintiffs alleging violations of Sections 11 and 12(a)(2) [do] not need [to] plead scienter, reliance, or loss causation." *Id.* Section 11 has no scienter requirement, such that "[l]iability against the issuer of a security is *virtually absolute*, even for innocent misstatements." *Herman & MacLean*, 459 U.S. at 382. Section 15 of the Securities Act extends joint and several liability to controlling persons. 15 U.S.C. § 77o.

Courts in the Second Circuit have uniformly held that misstatements or omissions contained in documents which are incorporated by reference into a registration statement are, effectively, misstatements and omissions in the registration statement, and supporting liability under §11. *See In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444 (S.D.N.Y. 2018) (Shareholders alleged corporation's quarterly filings that were incorporated in offering statements were materially misleading, supporting claims under Section 11 and 12).

### 1.    Materially Overstated Net Revenues and Accounts Receivable

Revenue and accounts receivable are "the exact type of information that would be important to a reasonable investor." *Sec. & Exch. Comm'n v. MiMedx Grp., Inc.*, 2022 WL 902784, at *9 (S.D.N.Y. Mar. 28, 2022). Defendants repeatedly touted Li-Cycle's reported revenue and receivables in connection with the Business Combination. ¶¶ 48-49, 53, 65-66, 74-75. *See also In re Moody's Corp. Sec. Litig.*, 2013 WL 4516788, at *7 (S.D.N.Y. Aug. 23, 2013) (finding materiality, noting that "[i]n light of the great lengths to which Moody's has gone to tout its

13

independence and integrity, it is inconsistent for Moody's to simultaneously argue that a reasonable investor would not find such statements to be material.").[6]

The alleged misstatements are all the more material in that they concern the single largest and most significant segment of Li-Cycle's business—its sales of Black Mass, which accounted for the vast majority of its reported revenue. ¶¶49, 55, 64, 68, 73, 77-82, 124-132. *See Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 720 (2d Cir. 2011) (overturning district court's immateriality conclusion, noting that "a misstatement['s] … significance to a particularly important segment of a registrant's business tends to show its materiality."); *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 737–38 (S.D.N.Y. 2015) (finding the misstatements concerning 4.7% of defendant's quarterly revenue material because the misstatements concerned a particularly noteworthy segment of defendant's overall business.)[7]

### 2.    Omitted Material Internal Control Weaknesses

As pled in the Amended Complaint, only after the Business Combination closed—in Li-Cycle's FY21 Annual Report—did Defendants disclose the material weaknesses in its internal controls and financial reporting regarding "revenue recognition, inventory, related-party arrangements, [and] financing transactions…" ¶70-71. (hereinafter "Omitted Material Weakness.") By this admission, Li-Cycle effectively concedes the existence of the Omitted Material Weakness at the time of the Business Combination and its materiality.

---

[6] *See also S.E.C. v. DCI Telecommunications, Inc.*, 122 F. Supp. 2d 495, 499 (S.D.N.Y. 2000) (defendants' emphasis on revenues shows that they "not obviously unimportant to the investing public.").

[7] *See also City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 416–17 (S.D.N.Y. 2020) (rejecting defendants' immateriality argument on the misstatements concerning 0.37% of total revenue and $20,000 net income, noting that the misstatements concerned "a particularly noteworthy segment of" the company's overall business.)

The Omitted Material Weakness serves as an additional, independent basis for §11 liability. "'Once a company speaks on an issue or topic, there is a duty to tell the whole truth,' '[e]ven when there is no existing independent duty to disclose information' on the issue or topic.'" *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016) (quoting *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014)). Once a party chooses to speak, it has a "duty to be both accurate and complete." *Caiola v. Citibank, N.A.*, 295 F.3d 312, 331 (2d Cir. 2002). The Second Circuit has also held that the "veracity of a statement or omission is measured not by its literal truth, but by its ability to accurately inform rather than mislead prospective buyers." *Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92 (2d Cir. 2010).

The warnings in the Offering Documents, ¶¶ 60-61, were also materially misleading for omitting that the Omitted Material Weakness "had already materialized as of the IPO." *Litwin*, at 715-16 (An issuer is liable under §11 if the offering documents omitted material information "that is necessary to prevent existing disclosures from being misleading."); *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250–51 (2d Cir. 2014) ("[O]nce a company speaks on an issue or topic, there is a duty to tell the whole truth."); *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 770 (2d Cir. 2010) ("[R]isk factor" describing conditions that "might" occur actionable where adverse events already occurred).

*Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245 (2d Cir. 2014), a §11 case, is directly on-point. There, the Second Circuit held that based on a June 2010 report submitted by JinkoSolar to a Chinese regulator about certain "existing problems" with environmental regulations, a trier of fact could infer that the problems "were both present and material at the time of the May 13, 2010, offering." *Id.* at 251. The Second Circuit did not require plaintiffs to show defendants' knowledge at the time of JinkoSolar's IPO.

15

Neither does Plaintiff need to plead knowledge. Defendants' risk disclosures in the Offering Documents failed to adequately apprise investors of the then-present Omitted Material Weakness in the Company's financial reporting for revenue and receivables. The existence of the Omitted Material Weakness at the time of the Business Combination and its apparent materiality are sufficient. *Herman & MacLean*, 459 U.S. at 381-82 (Section 11 imposed "virtually absolute" liability for material misstatements, "even for innocent misstatements."). *See Meyer*, 761 F.3d at 251 ("failure to disclose then-ongoing [issues] would cause a reasonable investor to make an overly optimistic assessment of the risk. A generic warning of a risk will not suffice when undisclosed facts […] would substantially affect a reasonable investor's calculation of probability.").[8]

### D.    Plaintiff Pleads §14 Claims Against the Peridot Defendants

§14(a) makes it unlawful to "solicit proxies in contravention of [SEC] rules, and SEC Rule 14a-9 prohibits solicitations 'containing any statement which . . . is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . .'" *Mills v. Elec. Auto-Lite Company*, 396 U.S. 375, 383 (1970) (citation omitted).  An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. *Seinfeld v. Gray*, 404 F.3d 645, 650 (2d Cir. 2005); *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 536 F. Supp. 2d 313, 320-21 (S.D.N.Y. 2007). To make a claim pursuant to §14(a), Plaintiff must show that the Proxy Statement "contained a material misrepresentation or omission" that caused injury and that

---

[8] *See also Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 422 F. Supp. 3d 821, 842 (S.D.N.Y. 2019) ("generic warnings about regional or country-specific business cycles" were insufficient to warn about quarterly performance); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK), 2020 WL 1950783, at *10 (E.D.N.Y. Apr. 22, 2020) (warning that shipping delays are possible when they are already happening).

the proxy solicitation "was an essential link in the accomplishment" of the transaction that caused the injury. *Id.* The Complaint adequately satisfies these elements.

"There is no requirement in the Second Circuit that plaintiffs allege fraud in order to state a cause of action pursuant to §14(a)." *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005). The statute requires only negligence, not knowledge or conscious disregard. In *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1298-1301 (2d Cir. 1973), the Second Circuit held that with respect to a corporate defendant, plaintiffs who "represent the very class who were asked to approve a merger on the basis of a misleading proxy statement and are seeking compensation from the beneficiary who is responsible for the preparation of the statement ... are not required to establish any evil motive or even reckless disregard of the facts." *Id.,* 478 F.2d at 1300. Numerous other courts have held that the negligence standard also applies to §14(a) claims against individual defendants. *See, e.g., In re Trump Hotels S'holder Derivative Litig.*, 2000 WL 1371317, at *12 (S.D.N.Y. Sept. 21, 2000); *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 511 (D. Del. 2001) ( "In enforcing that standard, courts should apply the standard of due diligence rather than the standard of actual knowledge or gross negligence."); *Katz v. Pels*, 774 F. Supp. 121, 126 (S.D.N.Y. 1991) ("In order to establish liability under the proxy laws, it is sufficient to show that the corporate officers and directors who authorized the proxy statement negligently failed to adhere to the rules requiring full disclosure.").

Plaintiff alleges that the Proxy was false and misleading. "[W]hether a statement is 'misleading' depends on the perspective of a reasonable investor: The inquiry (like that into materiality) is objective." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015). The Proxy failed to disclose that revenue and income were

17

artificially inflated due to the Defendants' premature recognition of revenue upon delivery to off-takers and upon adjustments to the value of receivables and inventory.

### 1.   Plaintiff's Claims under Section 14(a) Do Not "Sound in Fraud"

There is no support for Defendants' argument that Plaintiff's claims "sound in fraud," MTD at 12-13, and that the Complaint must therefore meet the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). But Defendants cannot force a heightened pleading standard for a §14 claim simply because it contains similar statements to a Section 10(b) claim. "A Section 11 claim does not sound in fraud simply because it is based on acts that also support a claim for securities fraud under Section 10(b)." *In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 308 (E.D.N.Y. 2002). Even if the same "false statements . . . provide the basis for both [] Section 10(b) claims and the Section 11 claims," the §11 claims do not necessarily sound in fraud. *Id.* Thus, the heightened pleading standards under Rule 9(b) do not apply. [9]

A similar argument was disposed of in *In re Bank of America Sec. Litig.,* 757 F. Supp. 2d 260, 321-322 (S.D.N.Y. 2010). In that case, as here, the defendants contended that, "the PSLRA and Rule 9(b) apply   to   the   plaintiffs' Section 14(a) claims,   and   that   because   the plaintiffs' Section 14(a) claims sound in fraud, they are required to allege scienter under the PSLRA and Rule 9(b)." *Id.* at 321. However, the *Bank of America* court noted that the Second Circuit had previously held, in *Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987 (2d Cir. 1988), that negligence is sufficient to establish liability under §14(a) and Rule 14a-9. "Liability can be imposed for negligently drafting a proxy statement." *Wilson*, 855 F.2d at 995. It concluded that a

---

[9] "[U]nless a plaintiff specifically pleads a claim of fraud, a claim under Section 11 of the Securities Act is not subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 397 (S.D.N.Y. 2013).

18

proxy statement containing "materially false or misleading statements" was, "[a]s a matter of law," sufficient to establish liability under Rule 14a–9. *Id.* The S.D.N.Y. also looked to the Seventh Circuit's opinion in *Beck*, 559 F.3d 680 (Posner, J.), which held that plaintiff need only establish that a misleading statement was a consequence of "at worst negligence by the issuer." *Id.* at 682. "[A] proxy solicitation that contains a misleading misrepresentation or omission violates the section even if the issuer believed in perfect good faith that there was nothing misleading in the proxy materials." *Id.*[10]

Nor do §14 claims sound in fraud simply because the pleading contains phrases such as "materially false or misleading" or "untrue statements of material fact" since such phrases "merely track[] the language" of §14. This case is nothing like *Rombach v. Chang*, 355 F.3d 164, 171-72 (2d Cir. 2004)), in which the plaintiffs' Section 11 claims incorporated by reference the allegations supporting their Section 10(b) fraud claims and "[did] not assert any claim of negligence on the part of the Individual Defendants, nor [did] they specify any basis for such a claim." *Rombach v. Chang*, 2002 WL 1396986, at *4 (E.D.N.Y. June 7, 2002).[11] "The defendants' proposed application of *Rombach* would treat any Rule 14a–9 claim quoting the underlying rule as one sounding in fraud. Such a reading is inconsistent with *Wilson,* as well as the persuasive reasoning of *Beck.*" *Id.*

---

[10] *Accord, Katz*, 774 F. Supp. at 126.

[11] "It is clear that the Second Circuit did not intend *Rombach* as an instruction that all § 11 pleadings should be subjected to the Rule 9(b) standard." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007) (citing *Rombach*, 355 F.3d at 178 (finding that § 11 claims against certain defendants sounded in negligence, not fraud)). Under *Rombach*, Rule 9(b) only applies to Section 11 claims on a case-by-case basis where they are "premised on allegations of fraud," and "the wording and imputations of the complaint are classically associated with fraud." *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 405 (S.D.N.Y. 2013) (quoting *Rombach*, 355 F.3d at 171-72, and finding that "phrases like 'materially false and misleading' simply track the language of the [Section 11] statute and do not necessarily sound in fraud"). *See also Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476, 484 n.10 (S.D.N.Y. 2012) (Cote, J.) (applying Rule 8 standard to Section 11 claims); *In re WorldCom, Inc. Sec. Litig.*, 2004 WL 1435356, at *3 (S.D.N.Y. June 28, 2004) (Cote, J.) (same).

*See also, In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 375 (S.D.N.Y. 2011) (analyzing similar argument vis-à-vis §11 claims) ("…mere use of the statutory language is itself insufficient to render a complaint one that sounds in fraud."); *In re CitiGroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 586 (S.D.N.Y. 2010) (same).

### 2. The Peridot Defendants' Statements Were False and Misleading

Defendants argue that "the Complaint does not point to a single fact that was withheld or hidden from investors." MTD, 13-14. Yet, the Amended Complaint clearly identifies numerous false and misleading statements in the annual and quarterly financial statements which were incorporated into the Offering Documents—specifically, regarding Old Li-Cycle's policies regarding revenue recognition and reporting of accounts receivable ¶¶ 54-61, 144-147. This is a viable theory of liability under Section 14(a). *See, e.g., In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1075 (C.D. Cal. 2008) (finding viable theory of liability where "[t]he essence of Plaintiff's proxy-related allegation is the failure to disclose the true operational and financial state of [MGP] to shareholders"); *see also In re Wells Fargo & Co. S'holder Derivative Litig.*, 282 F. Supp. 3d 1074, 1103 (N.D. Cal. 2017) (denying Rule 12(b)(6) motion as to proxy claim alleging that director defendants "failed to disclose a fraudulent business practice that put the company at material risk"). The false and misleading representations in the Proxy relate to fundamentals—revenue and receivables generated from Li-Cycle's core business.

The Amended Complaint also alleges materiality. Each of the Peridot misstatements and omissions individually, let alone collectively, satisfies the materiality standard laid out by the Supreme Court in *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976): "[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.". The U.S. District Court for the Southern District of New York has held that misstatements in merger agreements *are* actionable in this context: "[The Ninth

20

Circuit's] *Glazer* reasoning is persuasive and consistent with the Second Circuit's approach to disclosure obligations under Section 14(a) and Rule 14a–9." *In re Bank of America*, 757 F. Supp. 2d 260, 298-99 (S.D.N.Y. 2010) (citing cases). Thus, the Amended Complaint pleads detailed allegations demonstrating the material and misleading nature of Defendants' misstatements.

### 3. The Peridot Defendants' Statements Were Not Opinions

Contrary to Defendants' suggestion, MTD at 18-19, the Peridot Defendants' incorporated financial statements and related discussion regarding Old Li-Cycle's business, as reflected in the Proxy, are representations of fact, not mere opinions. The cases Defendants cite for this proposition all concern statements about conformity with applicable accounting standards (*e.g.* GAAP or IFRS). It certainly doesn't follow that every fact reported in a financial statement is opinion. Courts in this Circuit have rejected this species of argument. *See, e.g., In re: Petrobras Sec. Litig.,* 2016 WL 1533553 (S.D.N.Y., Feb. 16, 2016) ("PwC also argues that the plaintiffs' §11 claim fails … because the financial statements themselves are statements of opinion. … But a fact-based estimate is different from a subjective opinion. Issuers… are required to submit financial statements under the Securities Act, and the Act does not call for an issuer to submit its opinion on what it thinks an asset might be worth. … Instead, it requires issuers to make factual statements about their financial health and imposes strict liability with respect to errors and omissions in such statements…").

Even if Defendants' incorporation of Old Li-Cycle's financial statements tacitly endorses their compliance with IFRS, a statement of compliance with applicable standards *implies* that the statement is based on reasonable inquiry and information, and is actionable where the speaker lacks rational basis to support it. *See Omnicare,* 575. U.S. at 188-190 ("Consider an unadorned statement of opinion about legal compliance: 'We believe our conduct is lawful.' If the issuer makes that statement without having consulted a lawyer, it could be misleadingly incomplete.")

21

### E.      The Amended Complaint Alleges Loss Causation under §14(a)

Defendants argue that Plaintiff "does not allege a plausible theory of loss causation." MTD, at 2. Loss causation is not a necessary element of a claim under §11 of the Securities Act, and by extension, is not necessary to state a claim for control-person liability arising out of the same conduct under §15. However, §14(a) does require the pleading of loss causation—albeit to the much less demanding "notice pleading" standard of Fed. R. Civ. P. 8. "A claim [under §14(a)] is sustained if Plaintiff alleges facts that (1) the Proxy contained a material misrepresentation or omission, which (2) caused his injury, and (3) that the Proxy itself, rather than the particular defect in the solicitation materials, was an essential link in accomplishing the merger." *Gray v. Wesco Aircraft Holdings, Inc.,* 454 F. Supp.3d 366, 384 (S.D.N.Y 2020) (citing *Bond Opportunity Fund v. Unilab Corp.*, 2003 WL 21058251, at *3 (S.D.N.Y. May 9, 2003) *aff'd*, 87 F. App'x 772 (2d Cir. 2004)).

Here, Plaintiff has pled that the price of Li-Cycle's stock declined in response to a single corrective disclosure—the release of the Blue Orca Report. That is all that is required at this stage of the litigation. Defendants three arguments to the contrary are unavailing.

*First,* Defendants' characterization of the Blue Orca Report as "biased", "opinion", and "not statements of fact" is meritless. Courts in this Circuit routinely sustain securities class-action complaints based on short-seller reports. See *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 124 (S.D.N.Y. 2013) (denying motion to dismiss complaint that relied, in part, on short-seller report); *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 564 (S.D.N.Y. 2012) (same); *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2014 WL 285103, at *3-4 (S.D.N.Y. Jan. 27, 2014) (same); and *Lewy v. SkyPeople Fruit Juice, Inc.*, 2012 WL 3957916, at *14 (S.D.N.Y. Sept. 10, 2012) (same). Where courts have deemed such reports insufficient, it has generally been on grounds that the report revealed no new information, or the source of information

22

identified in the short-seller report were not identified with sufficient specificity to satisfy the demanding requirements for pleading fraud under Fed. R. Civ. P. 9(b)[12]— which, as addressed thoroughly above, does not apply to the claims in this case.

*Second,* Defendants' similar argument that Blue Orca "disclaimed 'the accuracy, timeliness, and completeness' of its opinions and analysis" proves too much. The inclusion of boilerplate disclaimers does nothing to undermine the effect of the disclosure upon the market.[13]

*Third,* Defendants' suggestion that the Blue Orca Report "did not 'reveal' anything new to the market" is belied by the immediate and significant impact on the price of Li-Cycle's stock. "A plaintiff may 'successfully allege loss causation by ... alleging that the market reacted negatively to a 'corrective disclosure,' which revealed an alleged misstatement's falsity or disclosed that allegedly material information had been omitted." *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 164 (S.D.N.Y. 2008) (quoting *In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 2008 WL 2324111, at *5 (S.D.N.Y. June 4, 2008)). "There is no requirement "that [a corrective] disclosure take a particular form or be of a particular quality.... It is the exposure of the fraudulent representation that is the critical component of loss causation." *Id.* (quoting *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221 (S.D.N.Y. 2006)). Other courts have held that such a report may operate as a corrective disclosure, even if it is based on information already

---

[12] *See, e.g., Long Miao v. Fanhua, Inc.*, 442 F. Supp.3d 774, 801-804 (S.D.N.Y. 2020) (finding short-seller report insufficient where based on, "general statements credited to anonymous interviewees in secondhand short-seller report.")

[13] Note that similar disclaimers are typically included in all analyst reports, including the BMO Capital Mkts. Rpt., attached as Exhibit D to Defendants MTD. ("…BMO Capital Markets makes no representation or warranty, express or implied, in respect thereof, takes no responsibility for any errors and omissions contained herein and accepts no liability whatsoever for any loss arising from any use of, or reliance on, this report or its contents.") But see discussion in Footnote 1, *supra*, concerning the consideration of this report for its content in the context of this Motion.

23

publicly available from other sources, where "the market failed to appreciate [the] significance or the intensity and credibility of the information previously disclosed." *Garcia v. Hetong Guo,* 2016 WL 102213 (C.D. Cal., Jan. 7, 2016) (internal quotations and citations omitted).

Finally, Defendants suggest that Plaintiff fails to plead that the decline in the price of Li-Cycle's stock contemporaneous with the release of the Blue Orca Report was not due to "other factors"—in other words, that Plaintiff has failed to disaggregate some confounding factor(s) which Defendants speculate may partially or completely explain the price decline. Similar arguments were raised and rejected in *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223 (S.D.N.Y. 2012)("Transocean"). In that case, the defendants argued that plaintiffs had failed to plead loss causation because they did not "plausibly distinguish between the price declines causes by alleged disclosures of the allegedly deficient Transocean practices and declines cause by the 'tangle of [other] factors' that negatively affected Transocean's stock price."

The Transocean court rejected defendants' argument, noting that pleading loss causation does not require a plaintiff to disaggregate each and every alternative causative theory the defendants might assert. "Loss causation may be adequately pleaded by alleging either a corrective disclosure of a previously undisclosed truth that causes a decline in the stock price or the materialization of a concealed risk that causes a stock price decline." *Id.* (quoting *In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 534 (S.D.N.Y. 2010)). With respect to the latter, "where some or all of the risk is concealed by the defendant's misrepresentation or omission, courts have found loss causation sufficiently pled." *Nathel v. Siegal*, 592 F. Supp. 2d 452, 467 (S.D.N.Y. 2008). A complaint need only provide the defendant with "some indication of the loss and the causal connection that the plaintiff has in mind." *Id.* (quoting *Dura Pharms., Inc. v.*

24

*Broudo*, 544 U.S. 336, 347, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)). Plaintiff is not "required to allege the precise loss attributable to [the fraud or misrepresentation/omission]." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), Whether a loss "was caused by an intervening event ... is a matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss." *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003).

### F.    The Complaint Adequately Alleges Control Person Liability

"To establish § 15 liability, a plaintiff must show a primary violation of § 11 and control of the primary violator by defendants." *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011). "In the Second Circuit, the 'control person' provisions are broadly construed as they were meant to expand the scope of liability under the securities laws." *CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 829 (S.D.N.Y. 2006). The Complaint satisfies both requirements for pleading Section 15 claims.

The "primary violation" element of Section 15 is satisfied because Plaintiff has adequately alleged Defendants' (including the Company's) violation of Section 11, as detailed above. *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 234 (S.D.N.Y. 2004). Defendants do not assert that the Complaint fails to allege control, thus conceding the second requirement for Section 15 liability.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss the Complaint in its entirety.[14]

---

[14] Alternatively, if the Court grants any part of the Motion, Plaintiff respectfully requests leave to amend. *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) (holding that courts should be especially liberal in granting leaves to amend in cases of dismissed securities fraud claims).

Dated: March 7, 2023                                **THE ROSEN LAW FIRM, P.A.**

                                                     By: */s/Brent J. LaPointe*
                                                     Laurence M. Rosen
                                                     Phillip Kim
                                                     Brent J. LaPointe
                                                     275 Madison Avenue, 40th Floor
                                                     New York, NY 10016
                                                     Telephone: (212) 686-1060
                                                     Fax: (212) 202-3827
                                                     Email: lrosen@rosenlegal.com
                                                             pkim@rosenlegal.com
                                                             blapointe@rosenlegal.com

                                                     *Lead Counsel for Plaintiff and the Class*

26

**CERTIFICATE OF SERVICE**

I hereby certify that on this on March 7, 2023, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Brent J. LaPointe