**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

<table>
<tr><td>

THE LANIGAN GROUP, INC., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

PLAINTIFF,

v.

LI-CYCLE HOLDINGS CORP. F/K/A PERIDOT ACQUISITION CORP., AJAY KOCHHAR, TIM JOHNSTON, BRUCE MACINNIS, SCOTT PROCHAZKA, ALAN LEVANDE, MARKUS SPECKS, PRESTON POWELL, JONATHAN SILVER, AND JUNE YEARWOOD,

DEFENDANTS.

</td><td>

Case No. 1:22-cv-02222-HG-RML

</td></tr>
</table>

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**
**<u>FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS</u>**

Mary Eaton
Peter J. Linken
Adam Rosenfeld
Freshfields Bruckhaus Deringer US LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 277-4000
Mary.Eaton@freshfields.com
Peter.Linken@freshfields.com
Adam.Rosenfeld@freshfields.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF ABBREVIATIONS ..................................................................................................... *ii*

TABLE OF AUTHORITIES ......................................................................................................*iv*

PRELIMINARY STATEMENT ....................................................................................................1

    I.    The Complaint is Impermissibly Puzzle-Pled ...................................................................2

    II.    The Complaint Sounds in Fraud........................................................................................2

    III.    The Complaint Fails to State a Section 14(a) Claim.........................................................3

        A.    The Complaint Does Not Plead an Actionable Misstatement or Omission .............3

            1.    The Revenue and Receivables Statements Were Not False or Misleading ......3

            2.    The Internal Control Statements Were Not False or Misleading......................6

        B.    The Complaint Does Not Plead Loss Causation .......................................................9

    IV.    The Complaint Fails to State a Claim Under Section 11................................................10

    V.    Leave to Amend Should Be Denied................................................................................10

CONCLUSION..............................................................................................................................10

## TABLE OF ABBREVIATIONS

| Term | Definition |
| --- | --- |
| ¶ | Paragraph of the Complaint |
| Blue Orca | Blue Orca Capital |
| BMO Capital Markets | BMO Financial Group, a subsidiary of the Bank of Montreal |
| Business Combination | August 10, 2021, amalgamation of Peridot Acquisition Corp. and Li-Cycle Holdings Corp. as described in the Registration Statement and the Proxy |
| Challenged Statements | The statements, collectively, which Plaintiff alleges are false and/or materially misleading at Paragraphs 48-75 of the Complaint |
| Deloitte | Deloitte LLP, an independent registered public accounting firm |
| Company | Li-Cycle Holdings Corp. |
| Complaint | Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF 36) |
| Ex. | Exhibits to the Declaration of Peter J. Linken, dated December 19, 2022 (ECF 39), and the Second Declaration of Peter J. Linken, dated April 18, 2023, filed contemporaneously herewith |
| Exchange Act | Securities Exchange Act of 1934, as amended |
| F-4/A | Amendment No. 4 to the Registration Statement on Form F-4 of Li-Cycle Holdings Corp., filed with the SEC on July 6, 2021 |
| Glencore | Glencore plc |
| LICY | Li-Cycle Holdings Corp. |
| Li-Cycle | Li-Cycle Holdings Corp. |
| GAAP | Generally Accepted Accounting Principles |
| IFRS | International Financial Reporting Standards |

| **Term** | **Definition** |
|---|---|
| NYSE | New York Stock Exchange |
| Offering Documents | Collectively, the F-4/A, and Proxy |
| Old Li-Cycle | Li-Cycle Corp. |
| PCAOB | Public Company Accounting Oversight Board |
| Peridot | Peridot Acquisition Corp. |
| PIPE Financing | Li-Cycle's $315,000,000 Private Investment in Public Equity transaction |
| Plaintiff | The Lanigan Group, Inc. |
| Proxy | Proxy Statement and Prospectus of Peridot Acquisition Corp., filed with the SEC on July 15, 2021 |
| PSLRA | Private Securities Litigation Reform Act of 1995 |
| Registration Statement | The F-4/A |
| Report | Blue Orca Capital, *Li-Cycle Holdings Corp.*, published on March 24, 2022 |
| Rule 8 | Fed. R. Civ. P. 8 |
| Rule 9(b) | Fed. R. Civ. P. 9(b) |
| SEC | Securities and Exchange Commission |
| Securities Act | Securities Act of 1933, as amended |
| Traxys | Traxys North America LLC |
| Traxys Contract | The Black Mass—Marketing, Logistics and Working Capital Agreement, dated September 24, 2020, between Traxys North America LLC and Li-Cycle Corp., attached to the F-4/A as Exhibit 10.12 |

## TABLE OF AUTHORITIES

**Cases**                                                                                               **Page(s)**

*In re AmTrust Fin. Svcs., Inc. Sec. Litig.*,
   2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019).................................................................5

*In re Arcimoto Inc., Sec. Litig.*,
   2022 WL 17851834 (E.D.N.Y. Dec. 22, 2022) .........................................................9

*Asay v. Pinduoduo Inc.*,
   2021 WL 3871269 (2d Cir. Aug. 31, 2021)...............................................................8

*In re Bank of Am. Sec. Litig.*,
   757 F. Supp. 2d 260 (S.D.N.Y. 2010)......................................................................3

*Berdeaux v. OneCoin Ltd.*,
   561 F. Supp. 3d 379 (S.D.N.Y. 2021).......................................................................3

*In re Bristol Myers Squibb Co. Sec. Litig.*,
   586 F. Supp. 2d 148 (S.D.N.Y. 2008).......................................................................9

*In re Chembio Diagnostics Inc. Sec. Litig.*,
   2022 WL 2872671 (E.D.N.Y. July 21, 2022).............................................................3

*In re Cinar Corp. Sec. Litig.*,
   186 F. Supp. 2d 279 (E.D.N.Y. 2002) ......................................................................3

*In re Countrywide Fin. Corp. Derivative Litig.*,
   554 F. Supp. 2d 1044 (C.D. Cal. 2008) ....................................................................4

*Fed. Hous. Fin. Agency v. JP Morgan Chase & Co.*,
   902 F. Supp. 2d 476 (S.D.N.Y. 2012).......................................................................3

*Fila v. Pingtan Marine Enter. Ltd.*,
   195 F. Supp. 3d 489 (S.D.N.Y. 2016)......................................................................10

*Freeman Grp. v. Royal Bank of Scotland Grp. PLC*,
   540 F. App'x 33 (2d Cir. 2013) ..............................................................................10

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
   2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008)..........................................................2

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015).....................................................................................10

*In re Magnum Hunter Resources Corp. Sec. Litig.*,
   26 F. Supp. 3d 278 (S.D.N.Y. 2014).....................................................................8, 9

*Medina v. Tremor Video, Inc.*,
    2015 WL 1000011 (S.D.N.Y. Mar. 5, 2015) ................................................................8, 9

*Meyer v. JinkoSolar Hldgs. Co., Ltd.*,
    761 F.3d 245 (2d Cir. 2014) ...........................................................................................8

*In re NTL, Inc. Sec. Litig.*,
    347 F. Supp. 2d 15 (S.D.N.Y. 2004) ...............................................................................2

*In re OSC Sec. Litig.*,
    971 F. Supp. 2d 387 (S.D.N.Y. 2013) .............................................................................3

*In re Refco, Inc. Sec. Litig.*,
    503 F. Supp. 2d 611(S.D.N.Y. 2007) ..............................................................................3

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) ...........................................................................................3

*In re UBS AG Sec. Litig.*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac
    Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014) .........................3

*In re Wachovia Equity Sec. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011) .............................................................................3

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
    282 F. Supp. 3d 1074 (N.D. Cal. 2017) ..........................................................................5

*In re WorldCom, Inc. Sec. Litig.*,
    2004 WL 1435356 (S.D.N.Y. June 28, 2004) .................................................................3

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998) ...........................................................................................6

*In re XP Inc. Sec. Litig.*,
    524 F. Supp. 3d 23 (E.D.N.Y. 2021) ...............................................................................5

*Yaroni v. Pintec Tech. Hldgs. Ltd.*,
    600 F. Supp. 3d 385 (S.D.N.Y. 2022) ..........................................................................8, 9

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................................................................................... *passim*

## PRELIMINARY STATEMENT

The Opposition only confirms that the Complaint fails to state a claim under either Section 14(a) or Section 11 and should be dismissed.

*First*, the Complaint does not adequately plead that any Challenged Statement was false and misleading when made.  As Defendants showed, and Plaintiff nowhere disputes, all pertinent details regarding the Company's revenue recognition policies were fully disclosed, Li-Cycle's independent auditors confirmed that those policies conform with IFRS, and no restatement was made or required.  Plaintiff's contention that investors were somehow "mislead" about Li-Cycle's revenue recognition policies and practices thus fails as a matter of law.  Plaintiff's new theory that Li-Cycle did not adequately disclose the deficiencies with its internal controls over financial reporting fares no better because (i) Plaintiff did not advance that theory in the Complaint, (ii) the Company's material weakness disclosures did not "imply" there could be no further deficiencies, and (iii) investors were expressly warned that further deficiencies might surface.

*Second*, the Complaint pleads no facts to suggest that any Defendant acted with *scienter*, which it must since the Complaint's allegations plainly sound in fraud.  Indeed, even if Rule 9(b) did not apply here, Plaintiff must at least plead that Defendants were negligent, which it nowhere does.

*Third*, the Complaint fails on loss causation grounds because the concededly biased short-seller report by Blue Orca on which Plaintiff relies is merely an opinion piece based entirely on public information, which cannot constitute a corrective disclosure under settled Second Circuit law.

For these reasons and more, the Complaint should be dismissed without leave to amend.

-1-

## I.   The Complaint Is Impermissibly Puzzle-Pled

A Complaint "must do more" than identify statements and then provide a bullet-point list as to why each was false and misleading when made.  (Br. at 11-12.)  That, however, is all the Complaint does here.  (*Id.* (citing ¶¶ 48-76).)  Because the Complaint nowhere "recites detailed reasons after each alleged misstatement" as Plaintiff's own cases require (Opp'n at 12 (quoting *In re NTL, Inc. Sec. Litig.*, 347 F. Supp. 2d 15, 22 (S.D.N.Y. 2004)), it fails at the threshold.[1]

## II.   The Complaint Sounds in Fraud

In the Opposition, Plaintiff makes no effort to distinguish the many authorities Defendants cited (Br. at 10-11, 12-13) establishing that Rule 9(b) applies here (*see* Opp'n at 18-20.)  Instead, Plaintiff denies that Rule 9(b) governs because the Complaint simply tracks the statutory standard, alleging that the Challenged Statements were "materially false and misleading."  (Opp'n at 19-20.)  Were it otherwise, says Plaintiff, any claim "quoting the underlying rule" would sound in fraud, which cannot be the case.  (*Id.* at 19.)[2]

That argument ignores the multiple allegations in the Complaint that are "classically associated with fraud" (Br. at 13), including allegations that Li-Cycle engaged in "highly aggressive" accounting practices (¶ 77), "juice[d] its revenues" (¶ 80), "obfuscated its income statement" (¶ 81), "hid[] negative gross margins" (¶ 81), and "aggressive[ly]" marked up its

---

[1]   Plaintiff has no answer to any of this except to say that (Opp'n at 11-12):  (i) Defendants' authorities are inapposite since they involved Section 10(b), which is not true (Br. at 11-12); (ii) the issues presented are "narrow" (Opp'n at 12), which is irrelevant; and (iii) Defendants supposedly figured out for themselves what was alleged to be false and why, which is wrong as well (*infra* Point II.B).

[2]   The Opposition argues that Rule 9(b) does not apply to Plaintiff's Section 14(a) claim (*see* Opp'n at 18 III.D.1), but contains no similar section regarding Plaintiff's Section 11 claim. Plaintiff's contention that a Section 11 claim may never be subject to Rule 9(b) absent an accompanying claim of fraud (Opp'n at 18 n.9) is plainly wrong.  *See, e.g., Ladmen Partners, Inc. v. Globalstar, Inc.*, 2008 WL 4449280, at *11 (S.D.N.Y. Sept. 30, 2008) ("[A] complaint may sound in fraud even where, as here, no fraud claims under the Exchange Act are asserted.").

receivables (¶ 128).[3]  As such, Plaintiff was required to "state with particularity the circumstances constituting [the] fraud," Fed. R. Civ. P. 9(b), and to "allege facts that give rise to a strong inference of fraudulent intent," *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 411 (S.D.N.Y. 2021).  *See also In re Chembio Diagnostics Inc. Sec. Litig.*, 2022 WL 2872671, at *7 (E.D.N.Y. July 21, 2022) ("courts in this circuit have consistently applied *Rombach* to dismiss Securities Act claims that sound in fraud but fail to plead scienter").  Because the Complaint nowhere alleges such facts, it fails to meet Rule 9(b)'s heightened pleading requirements and should be dismissed on this basis alone.  (Br. at 12-13, 15, 19-21.)[4]

## III. The Complaint Fails to State a Section 14(a) Claim

### A. The Complaint Does Not Plead an Actionable Misstatement or Omission[5]

1. The Revenue and Receivables Statements Were Not False or Misleading.

As previously demonstrated, the Offering Documents detail how Li-Cycle accounted for revenue and receivables for the sale of its products in accordance IFRS, the applicable accounting

---

[3]    *In re Cinar Corp. Sec. Litig.*, 186 F. Supp. 2d 279 (E.D.N.Y. 2002) (Opp'n at 18) pre-dates *Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004), and is not good law on this point.  Plaintiff's other authorities (Opp'n at 18-20) are distinguishable because none involved similar fraud-based allegations.  *See, e.g., In re Bank of Am. Sec. Litig.*, 757 F. Supp. 2d 260, 321-22 (S.D.N.Y. 2010); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 375 (S.D.N.Y. 2011); *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007); *In re OSC Sec. Litig.*, 971 F. Supp. 2d 387, 405 (S.D.N.Y. 2013); *Fed. Hous. Fin. Agency v. JP Morgan Chase & Co.*, 902 F. Supp. 2d 476, 484 n.10 (S.D.N.Y. 2012); *In re WorldCom, Inc. Sec. Litig.*, 2004 WL 1435356, at *3 (S.D.N.Y. June 28, 2004).

[4]    Even if Rule 9(b) were inapplicable to Plaintiff's Section 14(a) claim—and it is not—the Complaint must still plead negligence, as Plaintiff itself concedes.  (Opp'n at 17-18.)  As Defendants have already shown (Br. at 20-21), the Complaint pleads no facts supporting a negligence claim against the Peridot Defendants and Plaintiff does not contend otherwise.  Any argument that Plaintiff has adequately pled negligence has therefore been waived.  *See, e.g., In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).

[5]    Plaintiff's falsity allegations underlying its Section 14(a) claim must satisfy the PSLRA's heightened pleading requirements regardless of whether the claim sounds in fraud.  (Br. at 10.)

standard. (Br. at 5, 16-18.) The Offering Documents clearly explain that Li-Cycle (i) recognizes revenue and receivables when the "goods are delivered to the customer," (ii) "estimates all amounts of consideration to which it expects to be entitled and updates those estimates at the end [of] each reporting period based on market prices," (iii) typically determines the "final settlement amount" for the sale of its products "several months after delivery and customer processing of the products," and (iv) "adjust[s]" as necessary "the previously recognized revenue based on commodity prices on the final settlement date." (F-4/A (Ex. F) at 209-210; Proxy (Ex. B) at 210.) Li-Cycle also disclosed its five-step process for recognizing revenue (F-4/A (Ex. F) at F-57-58), which is consistent with IFRS 15.9 and 9.5.1. Plaintiff claims that these disclosures misled investors because Li-Cycle allegedly "premature[ly]" recognized estimated revenue and receivables "upon transferring the goods" to Traxys, which was allegedly "its marketing partner," not a "customer." (Opp'n at 1-2.) Those arguments are meritless.

The Offering Documents specifically identify Traxys as a "customer" and explain Li-Cycle's arrangements with Traxys under its "Customer Agreements." (Proxy (Ex. B) at 197-98.)[6] Traxys was required to serve as the "off-taker" and to "pay and take title" to the material "as principal," to "sell to third party final buyers as principal," and to assume all risks regarding "payment collections and credit." (Ex. G) §§ 3.1, 13; ¶¶ 85, 97). Traxys was responsible for payment to Li-Cycle if the material was not sold. (Ex. G § 6.) It was therefore crystal clear that Li-Cycle recognized revenues upon transferring its products to Traxys (and adjusted them as necessary thereafter), *not* upon final sale to an ultimate end-customer.

---

[6]    Plaintiff's reliance upon two out-of-Circuit cases do not help its cause, (Opp'n at 20), as both involved *undisclosed* business practices. *See In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1075 (C.D. Cal. 2008) (investments in riskier products to boost short term performance); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 282 F. Supp. 3d 1074, 1103 (N.D. Cal. 2017) (fraudulent "account-creation scheme").

-4-

Accordingly, Plaintiff's real gripe is not that Li-Cycle's revenue recognition disclosures were inadequate, but rather that Li-Cycle's revenue recognition policies did not comply with IFRS. (Opp'n at 12 ("the allegations here all focus on the narrow issues of reporting of revenue and receivables under IFRS").) That does not state a cognizable claim because, as shown, Plaintiff misstates and misapplies the IFRS accounting principles applicable here. (Br. at 17-18.)[7] Any argument otherwise has been waived because Plaintiff offers no response.

Waiver aside, statements regarding compliance with applicable accounting standards are inactionable opinions in any event. (Br. at 18-19.) The law is well-settled that, where "the relevant accounting guidance called for the exercise of judgment," as here, "then the resulting data would be a statement of opinion." *In re AmTrust Fin. Svcs., Inc. Sec. Litig.*, 2019 WL 4257110, at *13 (S.D.N.Y. Sept. 9, 2019); *see also In re XP Inc. Sec. Litig.*, 524 F. Supp. 3d 23, 32 (E.D.N.Y. 2021)).

Plaintiff does not even refer to these cases, much less distinguish them, but instead responds that (a) not every fact reported in a financial statement is an opinion and (b) even if opinions, the Challenged Statements are actionable anyway because they falsely "imply" that the Peridot Defendants conducted a reasonable inquiry. (Opp'n at 21.) As to the first point, the Complaint challenges the Company's compliance with applicable accounting guidelines, not any "fact" reported in Li-Cycle's financial statements. (*See, e.g.*, Opp'n at 6-7.) As to the second, the Complaint says nothing about Defendants' inquiry, let alone that it was deficient. In any case, Plaintiff's arguments cannot be reconciled with the fact that Deloitte issued a clean audit opinion

---

[7]     For example, the IFRS standards make clear that a "customer" is simply a "party that has contracted with an entity to obtain goods or services that are an output of the entity's ordinary activities in exchange for consideration." (IFRS (Ex. H) at App'x A (Defined Terms).) Traxys was thus clearly a "customer" under applicable IFRS rules. (*See also* Br. at 14, 17-18.)

regarding the financial statements in the Offering Documents (Br. at 18), which Plaintiff does not contest. Plaintiff's challenge to the IFRS compliance statements thus fails as a matter of law.[8]

Plaintiff's challenge to Li-Cycle's representation that its relationship with Traxys had "no significant financing components" (Opp'n at 2, 3) similarly fails. The Traxys Contract is appended to the Registration Statement (*e.g.*, ¶ 84), and the relevant terms are disclosed in the Offering Documents. (Br. at 14.) It was no secret that the Traxys Contract is called "Marketing, Logistics and Working Capital Agreement" or that Traxys earns interest on provisional payments to Li-Cycle under its terms. (*See* Br. at 14; Opp'n at 3.) Whether those interest payments were "significant" is a judgment called for by the text of IFRS. (IFRS (Ex. H) § 9.5.3.1 ("an entity shall measure trade receivables at their transaction price . . . if the trade receivables do not contain a significant financing component"); *id*. § 15.60-15.65). Li-Cycle's accounting judgment—blessed by its auditor—is an inactionable opinion.

2.    The Internal Control Statements Were Not False or Misleading.

Plaintiff's Opposition also advances a theory of liability not alleged in the Complaint—namely, that the Offering Documents did not disclose certain material internal control weaknesses over financial reporting that were later revealed in the Company's 2021 Annual Report. (Opp'n at 14-16.) Leaving aside the impropriety of introducing a new theory of liability in the Opposition, *e.g.*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998), Plaintiff's material weakness claim is meritless and cannot survive dismissal.

The Offering Documents disclose that "Li-Cycle did not design or maintain effective controls over the financial statement close and reporting process in order to ensure the accurate

---

[8]    Plaintiff spills much ink discussing the materiality of revenues. (Opp'n at 13-14.) That is beside the point because the Complaint nowhere identifies a revenue figure that was misstated within the Offering Documents.

and timely preparation of financial statements in accordance with IFRS," and that it "did not have in place an effective control environment with formal processes and procedures or an adequate number of accounting personnel with the appropriate technical training in, and experience with, IFRS to allow for a detailed review of complex accounting transactions that would identify errors" in a timely manner, "*including*" errors with respect to inventory costing and business combinations. (F-4/A (Ex. F) at 216 (emphasis added).)  Li-Cycle warned that there was a "reasonable possibility that a material misstatement of the company's annual or interim consolidated financial statements may not be prevented or detected on a timely basis" (*id*.), advised investors that it expected to "engage external advisors" to "provide assistance" with respect to its "internal controls over financial reporting" and to "evaluate" their "effectiveness" (*id.* at 54), and expressly cautioned investors that it could give "no assurance" that "additional material weaknesses or significant deficiencies in its internal control over financial reporting will not be identified in the future" (*id*.). On January 31, 2022—more than five months after the Business Combination closed—Li-Cycle issued its 2021 Annual Report, disclosing that several additional material weaknesses had been identified, "including" with respect to revenue recognition.  (Ex. I at 12, 62.)

The Complaint does not allege that any of these statements were false and misleading when made.  According to the Opposition, however, they are actionable nevertheless because the 2021 Annual Report constituted an "admission" that material weaknesses as to revenue recognition existed at the Business Combination but were not disclosed to investors in the Offering Documents. (Opp'n at 14-15.)  That simply does not follow.  For one thing, the identification of certain material weaknesses in the Offering Documents did not "impl[y]" that no other weaknesses existed (Opp'n at 3), and indeed, investors were expressly warned that further material weaknesses could surface. For another, Plaintiff does not plead any facts demonstrating that the earlier disclosure was false

when made or that Defendants knew or should have known it.  *See, e.g.*, *Yaroni v. Pintec Tech. Hldgs. Ltd.*, 600 F. Supp. 3d 385, 396-98 (S.D.N.Y. 2022) (dismissing Section 11 claim where defendant "had already identified a material weakness" in its offering documents); *Medina v. Tremor Video, Inc.*, 2015 WL 1000011, at \*3 (S.D.N.Y. Mar. 5, 2015) ("knowledge on day-120 does not mean Defendants' 'knew' or 'must have known' on day-1"); *In re Magnum Hunter Resources Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 295 (S.D.N.Y. 2014) ("The fact that defendants recognized problems, announced that they were implementing effective controls and procedures, and then recognized more problems does not indicate that their statements were false at the time that they were made.").  Plaintiff's hindsight-based attack on the Offering Documents thus fails as a matter of law.

Plaintiff relies heavily on *Meyer v. JinkoSolar Hldgs. Co., Ltd.*, 761 F.3d 245 (2d Cir. 2014) (Opp'n at 15-16), but it does not compel a different result.  There, less than a month after its security offering, the issuer submitted a report to regulators disclosing significant "existing problems" with environmental compliance not identified in its registration statement.  *Id.* at 251. That was enough to plead falsity, held the Court, because the compliance problems described in the report were such that one could reasonably infer they existed at the time of the offering.  *Id.* Here, by contrast, "the materialized risks were disclosed in the Offering Documents."  *Asay v. Pinduoduo Inc.*, 2021 WL 3871269, at \*3 (2d Cir. Aug. 31, 2021).  Those statements "suggest[] caution (rather than confidence) regarding the extent of [Li-Cycle's] compliance."  *Id.*  And unlike in *JinkoSolar*, Plaintiff does not point to any reports, internal documents, or other materials contradicting the statements in the Offering Documents.  No inference can be drawn that the later-identified control issues existed at the time of the offering and that Defendants knew or recklessly

disregarded it.  *See e.g.*, *Yaroni*, 600 F. Supp. 3d at 398; *Medina*, 2015 WL 1000011, at \*3; *In re Magnum Hunter Resources Corp. Sec. Litig.*, 26 F. Supp. 3d at 295.

### B.  The Complaint Does Not Plead Loss Causation

As shown, the Blue Orca Report was not a corrective disclosure because it was merely a short-seller "opinion" piece reflecting Blue Orca's admittedly "biased" views based on information that was already public and did not reveal any new information.  (Br. at 22-23.)  None of Plaintiff's arguments demonstrates otherwise.[9]

- Plaintiff insists that Li-Cycle's stock price decline following the Blue Orca Report is "all that is required" to plead loss causation.  (Opp'n at 22.)  Plaintiff's own cases belie this contention.  *See In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 163 (S.D.N.Y. 2008) ("that the value of a stock declined following the public announcement of 'bad news' does not, by itself, demonstrate loss causation").

- Plaintiff maintains that courts "routinely" sustain securities class action complaints based on short-seller reports.[10]  As Plaintiff admits, however, that is not the case where "the report revealed no new information" (Opp'n at 22), which is exactly the situation here.  *See In re Arcimoto Inc., Sec. Litig.*, 2022 WL 17851834, at \*6-7 (E.D.N.Y. Dec. 22, 2022) (granting motion to dismiss; no loss causation based upon "a sensationalized portrayal of already-public information" by a short-seller).

- Plaintiff suggests Blue Orca's disclaimer as to its accuracy or completeness is meaningless because analyst reports contain disclaimers too.  (Opp'n at 23.)  Plaintiff is simply wrong about the impact of disclaimers under the decided cases, which Plaintiff makes no effort to distinguish.  (Br. at 22-23.)[11]

- Plaintiff argues that the Blue Orca Report must have revealed something new to the market because Li-Cycle's stock price fell after its publication.  (Opp'n at 23.)  But Plaintiff points to no such new information.  (*Id.*)  That is fatal because loss causation

---

[9]    For the same reasons, Defendants have shown negative causation under Section 11.  That claim should be dismissed as well.  (*See* Br. at 25 n.22.)

[10]    The four cases Plaintiff cites on this point (Opp'n at 22) are inapposite because, *inter alia*, the short-seller reports in those cases were based on non-public (or new) information.

[11]    Plaintiff argues that the Court should not consider the BMO Capital Mkts. Rpt. (Ex. D; Br. at n.20) because it was published after the alleged corrective disclosure (Opp'n at 4 n.1).  Plaintiff cites no case supporting that proposition, nor are we aware of any.  Regardless, Defendants' loss causation arguments carry the day even without the BMO Capital analyst report, and the Court need not consider it to resolve the pending motion.

is not established unless a prior falsehood is corrected, which did not happen here. (Br. at 23.)[12] *See also Fila v. Pingtan Marine Enter. Ltd.*, 195 F. Supp. 3d 489, 498 (S.D.N.Y. 2016) (loss causation not established where article did not "correct[] a prior falsehood").

### IV.     The Complaint Fails to State a Claim Under Section 11

Plaintiff's Section 11 claim should be dismissed because, as explained above, the Complaint does not allege an actionable false statement or omission or that, if it did, Defendants acted with *scienter*. (*See also* Br. at 25.)[13]

### V.     Leave to Amend Should Be Denied

In a footnote, Plaintiff requests leave to amend but does not explain how it can cure the Complaint's deficiencies. (Opp'n at 25 n.14.) Because Plaintiff's request "gives no clue as to how the complaint's defects would be cured," leave to amend should be denied. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015); *see also Freeman Grp. v. Royal Bank of Scotland Grp. PLC*, 540 F. App'x 33, 38 (2d Cir. 2013) (affirming denial of leave to amend where one-sentence request made informally in opposition to a motion to dismiss).

### <u>CONCLUSION</u>

For the reasons stated the Opening Brief and above, each of Plaintiff's claims should be dismissed with prejudice.

---

[12]     Plaintiff does not address any of the cases requiring disaggregation of the various factors that may have contributed to its loss. (*Compare* Br. at 24-25, *with* Opp'n 24-25.) That is fatal too. *See Fila*, 195 F. Supp. 3d 489, 498 ("Plaintiffs have not alleged any facts to support an inference that Defendants' alleged fraud caused the drop in stock prices, rather than … the other problems discussed in the Sacerdote article.").

[13]     Because there is no primary violation, Plaintiff's Section 15 claim fails as well. (*See id.*)

Dated:    April 18, 2023                          Respectfully submitted
          New York, New York

                                                  **Freshfields Bruckhaus Deringer US LLP**

                                                  /s/ Mary Eaton
                                                  Mary Eaton
                                                  Peter J. Linken
                                                  Adam Rosenfeld
                                                  601 Lexington Avenue
                                                  New York, NY 10022
                                                  Telephone: (212) 277-4000
                                                  Mary.Eaton@freshfields.com
                                                  Peter.Linken@freshfields.com
                                                  Adam.Rosenfeld@freshfields.com

                                                  *Attorneys for Defendants*