# EXHIBIT H

**IFRS 9**

# Financial Instruments

In April 2001 the International Accounting Standards Board (Board) adopted IAS 39 *Financial Instruments: Recognition and Measurement*, which had originally been issued by the International Accounting Standards Committee in March 1999.

The Board had always intended that IFRS 9 *Financial Instruments* would replace IAS 39 in its entirety. However, in response to requests from interested parties that the accounting for financial instruments should be improved quickly, the Board divided its project to replace IAS 39 into three main phases. As the Board completed each phase, it issued chapters in IFRS 9 that replaced the corresponding requirements in IAS 39.

In November 2009 the Board issued the chapters of IFRS 9 relating to the classification and measurement of financial assets. In October 2010 the Board added the requirements related to the classification and measurement of financial liabilities to IFRS 9. This includes requirements on embedded derivatives and how to account for changes in own credit risk on financial liabilities designated under the fair value option.

In October 2010 the Board also decided to carry forward unchanged from IAS 39 the requirements related to the derecognition of financial assets and financial liabilities. Because of these changes, in October 2010 the Board restructured IFRS 9 and its Basis for Conclusions. In December 2011 the Board deferred the mandatory effective date of IFRS 9.

In November 2013 the Board added a Hedge Accounting chapter. IFRS 9 permits an entity to choose as its accounting policy either to apply the hedge accounting requirements of IFRS 9 or to continue to apply the hedge accounting requirements in IAS 39. Consequently, although IFRS 9 is effective (with limited exceptions for entities that issue insurance contracts and entities applying the *IFRS for SMEs* Standard), IAS 39, which now contains only its requirements for hedge accounting, also remains effective.

In July 2014 the Board issued the completed version of IFRS 9. The Board made limited amendments to the classification and measurement requirements for financial assets by addressing a narrow range of application questions and by introducing a 'fair value through other comprehensive income' measurement category for particular simple debt instruments. The Board also added the impairment requirements relating to the accounting for an entity's expected credit losses on its financial assets and commitments to extend credit. A new mandatory effective date was also set.

In May 2017 when IFRS 17 *Insurance Contracts* was issued, it amended the derecognition requirements in IFRS 9 by permitting an exemption for when an entity repurchases its financial liability in specific circumstances.

In October 2017 IFRS 9 was amended by *Prepayment Features with Negative Compensation* (Amendments to IFRS 9). The amendments specify that particular financial assets with prepayment features that may result in reasonable negative compensation for the early termination of such contracts are eligible to be measured at amortised cost or at fair value through other comprehensive income.

IFRS 9

4.3.7   If an entity is unable to measure reliably the fair value of an embedded derivative on the basis of its terms and conditions, the fair value of the embedded derivative is the difference between the fair value of the hybrid contract and the fair value of the host. If the entity is unable to measure the fair value of the embedded derivative using this method, paragraph 4.3.6 applies and the hybrid contract is designated as at fair value through profit or loss.

## 4.4 Reclassification

4.4.1   **When, and only when, an entity changes its business model for managing financial assets it shall reclassify all affected financial assets in accordance with paragraphs 4.1.1–4.1.4. See paragraphs 5.6.1–5.6.7, B4.4.1–B4.4.3 and B5.6.1–B5.6.2 for additional guidance on reclassifying financial assets.**

4.4.2   **An entity shall not reclassify any financial liability.**

4.4.3   The following changes in circumstances are not reclassifications for the purposes of paragraphs 4.4.1–4.4.2:

   (a)   an item that was previously a designated and effective hedging instrument in a cash flow hedge or net investment hedge no longer qualifies as such;

   (b)   an item becomes a designated and effective hedging instrument in a cash flow hedge or net investment hedge; and

   (c)   changes in measurement in accordance with Section 6.7.

## Chapter 5 Measurement

## 5.1 Initial measurement

5.1.1   **Except for trade receivables within the scope of paragraph 5.1.3, at initial recognition, an entity shall measure a financial asset or financial liability at its fair value plus or minus, in the case of a financial asset or financial liability not at fair value through profit or loss, *transaction costs* that are directly attributable to the acquisition or issue of the financial asset or financial liability.**

5.1.1A  **However, if the fair value of the financial asset or financial liability at initial recognition differs from the transaction price, an entity shall apply paragraph B5.1.2A.**

5.1.2   When an entity uses settlement date accounting for an asset that is subsequently measured at amortised cost, the asset is recognised initially at its fair value on the trade date (see paragraphs B3.1.3–B3.1.6).

5.1.3   Despite the requirement in paragraph 5.1.1, at initial recognition, an entity shall measure trade receivables at their transaction price (as defined in IFRS 15) if the trade receivables do not contain a significant financing component in accordance with IFRS 15 (or when the entity applies the practical expedient in accordance with paragraph 63 of IFRS 15).

              © IFRS Foundation

Case 1:22-cv-02222-HG-RML   Document 43-3   Filed 04/18/23   Page 4 of 9 PageID #: 728

**IFRS 15**

# Revenue from Contracts with Customers

In April 2001 the International Accounting Standards Board (Board) adopted IAS 11 *Construction Contracts* and IAS 18 *Revenue*, both of which had originally been issued by the International Accounting Standards Committee (IASC) in December 1993. IAS 18 replaced a previous version: *Revenue Recognition* (issued in December 1982). IAS 11 replaced parts of IAS 11 *Accounting for Construction Contracts* (issued in March 1979).

In December 2001 the Board issued SIC-31 *Revenue—Barter Transactions Involving Advertising Services*. The Interpretation was originally developed by the Standards Interpretations Committee of the IASC to determine the circumstances in which a seller of advertising services can reliably measure revenue at the fair value of advertising services provided in a barter transaction.

In June 2007 the Board issued IFRIC 13 *Customer Loyalty Programmes*. The Interpretation was developed by the IFRS Interpretations Committee (the 'Interpretations Committee') to address the accounting by the entity that grants award credits to its customers.

In July 2008 the Board issued IFRIC 15 *Agreements for the Construction of Real Estate*. The Interpretation was developed by the Interpretations Committee to apply to the accounting for revenue and associated expenses by entities that undertake the construction of real estate directly or through subcontractors.

In January 2009 the Board issued IFRIC 18 *Transfers of Assets from Customers*. The Interpretation was developed by the Interpretations Committee to apply to the accounting for transfers of items of property, plant and equipment by entities that receive such transfers from their customers.

In May 2014 the Board issued IFRS 15 *Revenue from Contracts with Customers*, together with the introduction of Topic 606 into the Financial Accounting Standards Board's *Accounting Standards Codification*®. IFRS 15 replaces IAS 11, IAS 18, IFRIC 13, IFRIC 15, IFRIC 18 and SIC-31. IFRS 15 provides a comprehensive framework for recognising revenue from contracts with customers.

In September 2015 the Board issued *Effective Date of IFRS 15* which deferred the mandatory effective date of IFRS 15 to 1 January 2018.

In April 2016 the Board issued *Clarifications to IFRS 15* Revenue from Contracts with Customers clarifying the Board's intentions when developing some of the requirements in IFRS 15. These amendments do not change the underlying principles of IFRS 15 but clarify how those principles should be applied and provide additional transitional relief.

In May 2017, the Board issued IFRS 17 *Insurance Contracts* which permits an entity to choose whether to apply IFRS 17 or IFRS 15 to specified fixed-fee service contracts that meet the definition of an insurance contract.

Other Standards have made minor consequential amendments to IFRS 15, including IFRS 16 *Leases* (issued January 2016) and *Amendments to References to the Conceptual Framework in IFRS Standards* (issued March 2018).

IFRS 15

> (d)   non-monetary exchanges between entities in the same line of business to facilitate sales to customers or potential customers. For example, this Standard would not apply to a contract between two oil companies that agree to an exchange of oil to fulfil demand from their customers in different specified locations on a timely basis.

6   An entity shall apply this Standard to a contract (other than a contract listed in paragraph 5) only if the counterparty to the contract is a customer. A customer is a party that has contracted with an entity to obtain goods or services that are an output of the entity's ordinary activities in exchange for consideration. A counterparty to the contract would not be a customer if, for example, the counterparty has contracted with the entity to participate in an activity or process in which the parties to the contract share in the risks and benefits that result from the activity or process (such as developing an asset in a collaboration arrangement) rather than to obtain the output of the entity's ordinary activities.

7   A contract with a customer may be partially within the scope of this Standard and partially within the scope of other Standards listed in paragraph 5.

> (a)   If the other Standards specify how to separate and/or initially measure one or more parts of the contract, then an entity shall first apply the separation and/or measurement requirements in those Standards. An entity shall exclude from the *transaction price* the amount of the part (or parts) of the contract that are initially measured in accordance with other Standards and shall apply paragraphs 73–86 to allocate the amount of the transaction price that remains (if any) to each performance obligation within the scope of this Standard and to any other parts of the contract identified by paragraph 7(b).

> (b)   If the other Standards do not specify how to separate and/or initially measure one or more parts of the contract, then the entity shall apply this Standard to separate and/or initially measure the part (or parts) of the contract.

8   This Standard specifies the accounting for the incremental costs of obtaining a contract with a customer and for the costs incurred to fulfil a contract with a customer if those costs are not within the scope of another Standard (see paragraphs 91–104). An entity shall apply those paragraphs only to the costs incurred that relate to a contract with a customer (or part of that contract) that is within the scope of this Standard.

## Recognition

### Identifying the contract

9   **An entity shall account for a contract with a customer that is within the scope of this Standard only when all of the following criteria are met:**

> **(a)   the parties to the contract have approved the contract (in writing, orally or in accordance with other customary business practices) and are committed to perform their respective obligations;**

A760                                    © IFRS Foundation

(b) the entity can identify each party's rights regarding the goods or services to be transferred;

(c) the entity can identify the payment terms for the goods or services to be transferred;

(d) the contract has commercial substance (ie the risk, timing or amount of the entity's future cash flows is expected to change as a result of the contract); and

(e) it is probable that the entity will collect the consideration to which it will be entitled in exchange for the goods or services that will be transferred to the customer. In evaluating whether collectability of an amount of consideration is probable, an entity shall consider only the customer's ability and intention to pay that amount of consideration when it is due. The amount of consideration to which the entity will be entitled may be less than the price stated in the contract if the consideration is variable because the entity may offer the customer a price concession (see paragraph 52).

10 A contract is an agreement between two or more parties that creates enforceable rights and obligations. Enforceability of the rights and obligations in a contract is a matter of law. Contracts can be written, oral or implied by an entity's customary business practices. The practices and processes for establishing contracts with customers vary across legal jurisdictions, industries and entities. In addition, they may vary within an entity (for example, they may depend on the class of customer or the nature of the promised goods or services). An entity shall consider those practices and processes in determining whether and when an agreement with a customer creates enforceable rights and obligations.

11 Some contracts with customers may have no fixed duration and can be terminated or modified by either party at any time. Other contracts may automatically renew on a periodic basis that is specified in the contract. An entity shall apply this Standard to the duration of the contract (ie the contractual period) in which the parties to the contract have present enforceable rights and obligations.

12 For the purpose of applying this Standard, a contract does not exist if each party to the contract has the unilateral enforceable right to terminate a wholly unperformed contract without compensating the other party (or parties). A contract is wholly unperformed if both of the following criteria are met:

(a) the entity has not yet transferred any promised goods or services to the customer; and

(b) the entity has not yet received, and is not yet entitled to receive, any consideration in exchange for promised goods or services.

© IFRS Foundation

IFRS 15

**The existence of a significant financing component in the contract**

60    In determining the transaction price, an entity shall adjust the promised amount of consideration for the effects of the time value of money if the timing of payments agreed to by the parties to the contract (either explicitly or implicitly) provides the customer or the entity with a significant benefit of financing the transfer of goods or services to the customer. In those circumstances, the contract contains a significant financing component. A significant financing component may exist regardless of whether the promise of financing is explicitly stated in the contract or implied by the payment terms agreed to by the parties to the contract.

61    The objective when adjusting the promised amount of consideration for a significant financing component is for an entity to recognise revenue at an amount that reflects the price that a customer would have paid for the promised goods or services if the customer had paid cash for those goods or services when (or as) they transfer to the customer (ie the cash selling price). An entity shall consider all relevant facts and circumstances in assessing whether a contract contains a financing component and whether that financing component is significant to the contract, including both of the following:

(a)    the difference, if any, between the amount of promised consideration and the cash selling price of the promised goods or services; and

(b)    the combined effect of both of the following:

(i)    the expected length of time between when the entity transfers the promised goods or services to the customer and when the customer pays for those goods or services; and

(ii)    the prevailing interest rates in the relevant market.

62    Notwithstanding the assessment in paragraph 61, a contract with a customer would not have a significant financing component if any of the following factors exist:

(a)    the customer paid for the goods or services in advance and the timing of the transfer of those goods or services is at the discretion of the customer.

(b)    a substantial amount of the consideration promised by the customer is variable and the amount or timing of that consideration varies on the basis of the occurrence or non-occurrence of a future event that is not substantially within the control of the customer or the entity (for example, if the consideration is a sales-based royalty).

(c)    the difference between the promised consideration and the cash selling price of the good or service (as described in paragraph 61) arises for reasons other than the provision of finance to either the customer or the entity, and the difference between those amounts is proportional to the reason for the difference. For example, the payment terms might provide the entity or the customer with protection from the

A774    © IFRS Foundation

other party failing to adequately complete some or all of its obligations under the contract.

63    As a practical expedient, an entity need not adjust the promised amount of consideration for the effects of a significant financing component if the entity expects, at contract inception, that the period between when the entity transfers a promised good or service to a customer and when the customer pays for that good or service will be one year or less.

64    To meet the objective in paragraph 61 when adjusting the promised amount of consideration for a significant financing component, an entity shall use the discount rate that would be reflected in a separate financing transaction between the entity and its customer at contract inception. That rate would reflect the credit characteristics of the party receiving financing in the contract, as well as any collateral or security provided by the customer or the entity, including assets transferred in the contract. An entity may be able to determine that rate by identifying the rate that discounts the nominal amount of the promised consideration to the price that the customer would pay in cash for the goods or services when (or as) they transfer to the customer. After contract inception, an entity shall not update the discount rate for changes in interest rates or other circumstances (such as a change in the assessment of the customer's credit risk).

65    An entity shall present the effects of financing (interest revenue or interest expense) separately from revenue from contracts with customers in the statement of comprehensive income. Interest revenue or interest expense is recognised only to the extent that a *contract asset* (or receivable) or a contract liability is recognised in accounting for a contract with a customer.

### Non-cash consideration

66    To determine the transaction price for contracts in which a customer promises consideration in a form other than cash, an entity shall measure the non-cash consideration (or promise of non-cash consideration) at fair value.

67    If an entity cannot reasonably estimate the fair value of the non-cash consideration, the entity shall measure the consideration indirectly by reference to the stand-alone selling price of the goods or services promised to the customer (or class of customer) in exchange for the consideration.

68    The fair value of the non-cash consideration may vary because of the form of the consideration (for example, a change in the price of a share to which an entity is entitled to receive from a customer). If the fair value of the non-cash consideration promised by a customer varies for reasons other than only the form of the consideration (for example, the fair value could vary because of the entity's performance), an entity shall apply the requirements in paragraphs 56–58.

69    If a customer contributes goods or services (for example, materials, equipment or labour) to facilitate an entity's fulfilment of the contract, the entity shall assess whether it obtains control of those contributed goods or services. If so, the entity shall account for the contributed goods or services as non-cash consideration received from the customer.

IFRS 15

## Appendix A
## Defined terms

*This appendix is an integral part of the Standard.*

| | |
|---|---|
| **contract** | An agreement between two or more parties that creates enforceable rights and obligations. |
| **contract asset** | An entity's right to consideration in exchange for goods or services that the entity has transferred to a **customer** when that right is conditioned on something other than the passage of time (for example, the entity's future performance). |
| **contract liability** | An entity's obligation to transfer goods or services to a **customer** for which the entity has received consideration (or the amount is due) from the customer. |
| **customer** | A party that has contracted with an entity to obtain goods or services that are an output of the entity's ordinary activities in exchange for consideration. |
| **income** | Increases in economic benefits during the accounting period in the form of inflows or enhancements of assets or decreases of liabilities that result in an increase in equity, other than those relating to contributions from equity participants. |
| **performance obligation** | A promise in a **contract** with a **customer** to transfer to the customer either: |
| | (a) a good or service (or a bundle of goods or services) that is distinct; or |
| | (b) a series of distinct goods or services that are substantially the same and that have the same pattern of transfer to the customer. |
| **revenue** | **Income** arising in the course of an entity's ordinary activities. |
| **stand-alone selling price** (of a good or service) | The price at which an entity would sell a promised good or service separately to a **customer**. |
| **transaction price** (for a contract with a customer) | The amount of consideration to which an entity expects to be entitled in exchange for transferring promised goods or services to a **customer**, excluding amounts collected on behalf of third parties. |

© IFRS Foundation                    A789