UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THE LANIGAN GROUP, INC., *individually and
on behalf of all others similarly situated*,

                Plaintiff,

     v.

LI-CYCLE HOLDINGS CORP. F/K/A PERIDOT
ACQUISITION CORP., *et al*.,

                Defendants.

**MEMORANDUM & ORDER**
22-CV-02222 (HG) (RML)

**HECTOR GONZALEZ**, United States District Judge:

      Lead Plaintiff, The Lanigan Group, Inc., asserts claims under the Securities Act of 1933

(the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") in this

putative class action against Li-Cycle Holdings Corp. ("Li-Cycle"), formerly known as Peridot

Acquisition Corp. ("Peridot"), its Chief Executive Officer, its Chief Financial Officer, its

Executive Chairman, the Chair of its Audit Committee, and one of its directors (collectively, the

"Li-Cycle Defendants").  *See generally* ECF No. 36 (Amended Complaint).  Plaintiff also asserts

claims against former officers and directors of Peridot, including its Chairman and Chief

Executive Officer, its Chief Financial Officer, and three of its directors (collectively, the "Peridot

Individual Defendants").  *Id.*

      Presently before the Court is Defendants' motion to dismiss the Amended Complaint

pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure and the Private

Securities Litigation Reform Act of 1995 ("PSLRA").  For the reasons set forth below, the motion

is granted.

## FACTUAL BACKGROUND

Peridot was formed as a special purpose acquisition company ("SPAC").  ECF No. 36 ¶ 42.  A SPAC does not operate a business and is formed solely for the purpose of merging with another company, thereby making the acquired company a publicly-traded company.  *Id*.  Peridot was formed in July 2020 and became a publicly-traded company through an initial public offering ("IPO") in September 2020.  *Id.* ¶¶ 43–44.

Li-Cycle is a company headquartered in Toronto, Canada, which describes itself "as an industry leader in lithium-ion resource recovery and the leading lithium-ion battery recycler in North America."  *Id.* ¶ 40.  Li-Cycle processes battery scrap and end-of-life batteries to produce "black mass," a powder-like substance, which it processes again to "produce end products" that are then "sold back into the battery supply chain and used in the manufacturing of new lithium-ion batteries."  *Id.*  This recycling process is allegedly "more environmentally-friendly than traditional methods, which typically involve extracting black mass by volatizing or burning the waste batteries at high temperatures" generating harmful emissions.  *Id.*  Prior to August 2021, Li-Cycle's operations were conducted through its predecessor entity Li-Cycle Corp. ("Li-Cycle Corp."), a privately-held company formed in 2016 in Kingston, Canada.  *Id.* ¶¶ 21, 41.

Through a combination between Li-Cycle Corp. and Peridot that was announced on February 16, 2021 (the "Business Combination"), Li-Cycle became a publicly traded company, and its shares began to trade on the New York Stock Exchange ("NYSE") on August 10, 2021.  *Id.* ¶¶ 47, 62.  In connection with the Business Combination and in order to solicit investors, Li-Cycle and Peridot filed a number of public statements including Peridot's proxy statement and prospectus (the "Proxy"), filed with the SEC on July 15, 2021, and Li-Cycle's registration

2

statement filed with the SEC on Form-4, initially on March 29, 2021, as subsequently amended (the "Registration Statement") (together, the "Offering Documents").  *Id.* ¶¶ 3, 49, 54.

According to the Amended Complaint, the Offering Documents contain "false and materially misleading" statements about Li-Cycle's accounting practices, revenues and accounts receivable.  *Id.* ¶¶ 6, 76.  The putative class in the instant case consists of all persons and entities who:  (1) held common stock of Peridot and were eligible to vote at Peridot's general meeting on August 5, 2021, and (2) purchased or otherwise acquired Li-Cycle ordinary shares pursuant or traceable to Li-Cycle's Registration Statement and/or the Proxy filed in connection with the August 10, 2021, Business Combination.  *Id.* ¶ 162.  Plaintiff, however, never purchased any Li-Cycle shares.  *Id.* ¶ 20.  Instead, Plaintiff purchased Peridot shares over the course of several transactions between February 19 and 25, 2021, after Peridot and Li-Cycle had announced their planned merger but before Li-Cycle had published its Registration Statement.  *Id.* ¶¶ 2–3, 20.

On March 24, 2022, Blue Orca Capital, a short-seller activist investment firm, published a report ("Blue Orca Report") about Li-Cycle alleging that its revenues were:

> based on "an Enron-like mark-to-model accounting gimmick" because "Li-Cycle's largest customer . . . Traxys North America LLC ("Traxys") . . . is not really a customer, but merely a broker providing working capital financing to the Company while Traxys attempts to sell Li-Cycle's product to end customers.  Traxys is not the end customer, it bears no commodity price risk, and charges Li-Cycle interest on any cash advanced to the Company prior to final sale to the end buyer.  Yet Li-Cycle somehow recognizes revenue immediately upon delivery to its brokers, potentially months before any sale has occurred.

*Id.* ¶¶ 77–81.  The Blue Orca Report goes on to state that "45% of Li-Cycle's reported revenues . . . were derived from simply marking up receivables on products that had not been sold."  *Id.* ¶ 77.

On April 19, 2022, the Rosen Law firm ("Rosen Law") filed a complaint on behalf of Alexandra Barnish.  ECF No. 1.  On July 22, 2022, the Court appointed The Lanigan Group, Inc., as Lead Plaintiff and Rosen Law as Lead Counsel.  *See* Text Order dated July 22, 2022.  On

October 11, 2022, Plaintiff filed the Amended Complaint.  ECF No. 36.  On December 19, 2022,

Defendants filed a motion to dismiss.  ECF No. 37.  On March 7, 2023, Plaintiff filed an

opposition, and Defendants filed a reply shortly thereafter.  ECF Nos. 41, 42.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to

state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).[1]  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Matson v.*

*Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Although all allegations contained in a complaint are assumed to be true, this tenet is "inapplicable

to legal conclusions."  *Iqbal*, 556 U.S. at 678.

"[A]t the motion to dismiss stage, courts may consider any written instrument attached to

the complaint, statements or documents incorporated into the complaint by reference, legally

required public disclosure documents, and documents possessed by or known to the plaintiff and

upon which it relied in bringing the suit."  *In re Synchrony Fin. Secs. Litig.*, 988 F.3d 157, 171 (2d

Cir. 2021).  The Court may also take judicial notice of publicly-available documents such as news

articles or reports by investment analysts, so long as the Court only "take[s] judicial notice of the

fact that press coverage, prior lawsuits, or regulatory filings contained certain information, without

regard to the truth of their contents."  *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28

F.4th 343, 352 (2d Cir. 2022).

---

[1]     Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

## DISCUSSION

### I.      Applicable Pleading Standards

As an initial matter, the Court must resolve the parties' dispute as to whether the

heightened pleading standards required by the PSLRA and Rule 9(b) of the Federal Rules of Civil

Procedure apply to the instant action.  Defendants argue that the Section 14(a) claim is subject to

the PSLRA, and because "plaintiff alleges a violation of the securities laws that is grounded in

fraud . . . , the heightened pleading requirements of Rule 9(b) apply even if [Plaintiff] disclaim[s]

reliance on a fraud theory."  ECF No. 38 at 19.  Plaintiff contends that its claims do not "sound in

fraud" and Defendants "cannot force a heightened pleading standard for a [Section] 14 claim."

ECF No. 41 at 26.

#### A.  The PSLRA's Heightened Pleading Standard

Under the PSLRA, which applies to class actions brought pursuant to Section 14(a),

allegations of material misstatements must "specify each statement alleged to have been

misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding

the statement or omission is made on information and belief, the complaint shall state with

particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1)(B).  Plaintiff "must

do more than say that the statements . . . were false and misleading; [it] must demonstrate with

specificity why and how that is so."  *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004).  The

PSLRA's heightened pleading standards apply even if Plaintiff has not brought a Section 14(a)

claim "sounding in fraud."  *See Furlong Fund LLC v. VBI Vaccines, Inc.*, No. 14-cv-9435, 2016

WL 1181710, at *3 (S.D.N.Y. Mar. 25, 2016) ("The PSLRA's pleading requirements as to

misleading statements and omissions apply to Section 14(a) claims sounding in negligence[.]"); *In*

*re JP Morgan Chase Secs. Litig.*, 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005) ("Even if plaintiffs

had not brought a Section 14(a) claim sounding in fraud, pursuant to the PSLRA, . . . they would

still have had to plead facts indicating why the alleged misrepresentations were misleading.").

The PSLRA also "requires plaintiffs to state with particularity both the facts constituting

the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention to deceive,

manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

However, scienter is not a *required* element of a Section 14(a) claim.  *See Wilson v. Great Am.*

*Indus., Inc.*, 855 F.2d 987, 995 (2d Cir. 1988) ("Under Rule 14a-9, plaintiffs need not demonstrate

that the omissions and misrepresentations resulted from knowing conduct undertaken by the

director defendants with an intent to deceive.").  Accordingly, the PSLRA's scienter requirement

is inapplicable to the instant action.  *See Bricklayers & Masons Local Union No. 5 Ohio Pension*

*Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 240 (S.D.N.Y. 2012) (holding that "Section 78u–

4(b)(2) is limited to instances where the defendant's particular state of mind is a necessary element

of the claim" and finding that it is inapplicable to Section 14(a) claims); *Enzo Biochem, Inc. v.*

*Harbert Discovery Fund, LP*, No. 20-cv-9992, 2021 WL 4443258, at *7–8 (S.D.N.Y. Sept. 27,

2021) (citing *Bricklayers* and finding the same).

### B.  Rule 9(b)'s Heightened Pleading Standard

Rule 9(b) "calls for a heightened pleading standard for allegations that sound in fraud."

*Enzo Biochem*, 2021 WL 4443258, at *8.; Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a

party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent,

knowledge, and other conditions of a person's mind may be alleged generally.").  "Although . . .

liability under Section 14(a) can be premised on mere negligence as opposed to fraud, whether

Rule 9(b)'s heightened pleading standard applies to a particular case turns on the nature of the

plaintiff's allegations, not the elements of the legal cause of action, for which the lawsuit is

brought." *Enzo Biochem*, 2021 WL 4443258, at *8; *see also Bricklayers*, 866 F. Supp. 2d at 239

("When a plaintiff's factual assertions in a Section 14(a) claim are premised on fraudulent

conduct, they are subject to heightened pleading requirements, even if they disclaim reliance on a

fraud theory."). Plaintiff alleges that Li-Cycle "aggressive[ly] mark[ed] up" accounts receivable,

"juice[d] its revenues," "obfuscate[d] its income statement," and "hid[] negative gross margins."

ECF No. 36 ¶¶ 77, 79–81, 128. The Court finds that "[t]he 'wording' and 'imputations' of

[Plaintiff's] allegations are those 'classically associated with fraud'" and, therefore, Rule 9(b)'s

heightened pleading standard applies. *Enzo Biochem*, 2021 WL 4443258, at *9 (citing *Rombach*,

355 F.3d at 172).

*    *    *

In sum, Plaintiff's Section 14(a) claim is subject to the heightened pleading standards of

the PSLRA and Rule 9(b), except as to scienter under the PSLRA, since scienter is not an element

of Plaintiff's claim. Although these pleading standards are high, the Second Circuit has

emphasized that courts "must be careful not to mistake heightened pleading standards for

impossible ones." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co. Ltd.*, 19 F.4th 145, 150 (2d Cir.

2021). As with any other pleadings-based motion, the Court "must accept all factual allegations in

the complaint as true and must consider the complaint in its entirety" and "draw all reasonable

inferences in favor of the plaintiff." *Id.*

## II.     Plaintiff's Complaint Does Not Comply with the PSLRA's Particularity Threshold

Defendants argue that Plaintiff engages in "impermissible puzzle pleading" because it fails

to identify with particularity the allegedly misleading statements in the Offering Documents. ECF

No. 38 at 20. Plaintiff responds that Defendants were easily able to identify "what Plaintiffs

allege to be false or misleading and why" and the "allegations here all focus on the narrow issues

7

of reporting of revenue and receivables under [International Financial Reporting Standards], in specifically identified and dated financial statements." ECF No. 41 at 20. The Court disagrees with Plaintiff.

Frankly, the Court had difficulty identifying with particularity what statements in the Offering Documents Plaintiff found misleading. Plaintiff states in conclusory fashion that the "statements referenced in ¶¶ 48–76 [of its complaint] were false and materially misleading." ECF No. 36 ¶ 76 (Amended Complaint). While paragraphs 48 through 76 include multiple lengthy excerpts of various documents including, among other things, the Offering Documents, Li-Cycle's Form 8-K dated February 15, 2021, and consolidated financial statements for the years ended October 31, 2020, and 2019, Plaintiff never identifies with any specificity what portions of those documents or excerpts it takes issue with. Instead, Plaintiff "in boilerplate fashion, [impermissibly] . . . identifies statements throughout the class period, [and] italicizes them with long block quotes." *In re AstraZeneca plc Secs. Litig.*, No. 21-cv-722, 2022 WL 4133258, at *6 (S.D.N.Y. Sept. 12, 2022) (finding that plaintiff's complaint "must be dismissed under the PSLRA because it falls short of the PSLRA's particularity threshold"). It is impossible to discern from the Amended Complaint what alleged material misrepresentations or omissions apply to each of Plaintiff's asserted claims.

As discussed previously, *see supra* Section I, under the PSLRA, Plaintiff has an obligation to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(B)(1)(B). Although Plaintiff has failed to comply with its obligations under the PSLRA and its case could be dismissed for this reason alone, the Court will nevertheless

address the merits of Plaintiff's claims and attempt to identify the allegedly material

misrepresentations or omissions.  *See Boca Raton Firefighters & Police Pension Fund v. Bahash*,

506 F. App'x 32, 35 (2d Cir. 2012) (summary order) (affirming district court's decision to dismiss

complaint that fell short of the PSLRA "particularity threshold" and failed to identify misleading

statements).

### III.    Plaintiff's Amended Complaint Fails to State a Claim

Plaintiff has asserted claims under:  (i) Section 14(a) of the Exchange Act against Li-Cycle

and the Peridot Individual Defendants; (ii) Section 11 of the Securities Act against the Li-Cycle

Defendants; and (iii) a claim pursuant to Section 15 of the Securities Act against the Li-Cycle

Individual Defendants.  ECF No. 36 ¶¶ 144–161.  The Court addresses each claim in turn.

#### A.   The Section 14(a) Claim Is Dismissed

Defendants argue that Plaintiff's Section 14(a) claim should be dismissed because:  (i) the

Proxy does not contain any actionable misstatements or omission of material fact; (ii) Plaintiff

fails to allege negligence; and (iii) Plaintiff fails to allege loss causation.  ECF No. 38 at 21–34.

Plaintiff responds that the Amended Complaint identifies false and misleading representations in

the Proxy "specifically[] regarding Old Li-Cycle's policies regarding revenue recognition and

reporting of accounts receivable" and that it has sufficiently pled that the "price of Li-Cycle's

stock declined" in response to the Blue Orca Report.  ECF No. 41 at 28–33.  Plaintiff identifies

four alleged material misrepresentations or omissions in the Proxy:  (i) "Li-Cycle's largest

customer, Traxys, is not actually a customer, but merely a broker providing working capital

financing to [Li-Cycle] while Traxys tries to sell Li-Cycle's product to end customers"; (ii) "a

significant portion of [Li-Cycle's] reported revenues were derived from simply marking up

receivables on products that had not yet been sold"; (iii)  "[Li-Cycle's] mark-to-model accounting

is vulnerable to abuse and gave a false impression of growth"; and (iv) Li-Cycle's financial statements and related disclosures violated International Financial Reporting Standards ("IFRS").[2] ECF No. 36 ¶¶ 76, 114.

Section 14(a) of the Exchange Act makes it "unlawful for any person . . . in contravention of such rules and regulations as the Commission may prescribe as necessary . . . to solicit . . . any proxy or consent or authorization in respect of any security[.]" 15 U.S.C. § 78n(a)(1). Rule 14a-9, which is promulgated pursuant to Section 14(a), states, in relevant part, that "[n]o solicitation . . . shall be made by means of any proxy statement . . . which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a–9.

In order to succeed on a Section 14(a) and Rule 14a-9 claim, "a plaintiff must plausibly allege that: (1) a proxy statement contained a material misrepresentation or omission, which (2) caused plaintiffs' injury, and (3) the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *In re Liberty Tax, Inc. Secs. Litig.*, 435 F. Supp. 3d 457, 465 (E.D.N.Y. 2020) (citing *Bond Opportunity Fund v. Unilab Corp.*, 87 F. App'x 772, 773 (2d Cir. 2004) (summary order)).

i.   <u>Plaintiff's Allegation that the Proxy Includes False or Misleading<br>Statements About the Nature of Li-Cycle's Relationship with Traxys</u>

Plaintiff cites to the Blue Orca Report to support its allegation that the Proxy misled investors about (or failed to disclose) the true nature of Li-Cycle's relationship with Traxys

---

[2]     The Amended Complaint is 167 paragraphs long. In paragraph 76, it appears that Plaintiff attempts to list the alleged reasons why Defendants' statements were misleading, but as discussed previously, *see supra* Section I, it is not clear whether this is an all-encompassing list of reasons, and Plaintiff has failed to identify which statements in the Offering Documents were allegedly misleading because of these reasons.

because "Traxys is not really a customer, but merely a broker providing working capital financing to [Li-Cycle]" and "Traxys is not the end customer, it bears no commodity risk, and charges Li-Cycle interest on any cash advanced to [Li-Cycle] prior to final sale to the end buyer." ECF No. 36 ¶ 77; ECF No. 39-3 at 4 (Blue Orca Report). The Court finds that the nature of Li-Cycle's relationship with Traxys was made clear in the Proxy, and therefore Plaintiff has not plausibly alleged that the Proxy was false or misleading.

The Proxy describes the relationship between Li-Cycle and Traxys as follows: (i) "Li-Cycle has entered into a *strategic* global *marketing* relationship with Traxys, a company that provides *financial and logistics solutions* to the metals, mining and energy industries"; (ii) "Traxys may *earn marketing fees* under these agreements, based on the final sales price of *products sold by Traxys to its third-party customers, as well as interest on provisional payments made from Traxys to Li-Cycle*"; and (iii) "[s]ales of Li-Cycle products *through* Traxys are expected to represent the significant majority of Li-Cycle's revenues." ECF No. 39-2 at 10 (Proxy) (emphasis added). "The point of a proxy statement should be to inform, not to challenge the reader's critical wits, but nitpicking should not become the name of the game, and fair accuracy, not perfection, is the appropriate standard." *In re GTx, Inc. S'holders Litig.*, No. 19-cv-3239, 2020 WL 3439356, at *3 (S.D.N.Y. June 23, 2020). The Proxy makes it clear that Traxys is not the end customer, and that it may charge Li-Cycle marketing fees as well as interest on payments advanced to Li-Cycle. *See Silberstein v. Aetna, Inc.*, No. 13-cv-8759, 2015 WL 1424058, at *12 (S.D.N.Y. Mar. 26, 2015) ("Even taking Plaintiff's factual allegations as true and applying the materiality standard that governs at the motion to dismiss stage . . . Plaintiff's allegations are facially insufficient to state a claim because. . . the [alleged material representation or omission] was disclosed on the face of the [] Proxy.").

11

Accordingly, Plaintiff has not adequately alleged a material misrepresentation or omission with respect to the nature of Li-Cycle's relationship with Traxys because it was disclosed in the Proxy.

      ii.    <u>Plaintiff's Allegation that the Proxy Contained False or Misleading Statements About Li-Cycle's Estimated Revenue Calculations</u>

Plaintiff alleges that the Proxy contained false or misleading statements about Li-Cycle's recognition of revenue as it relates to the value attributed to goods sold.  ECF No. 36 ¶ 76.  In particular, Plaintiff alleges that Li-Cycle recognized revenue based on the estimated value of its products, rather than the actual sale price of those products.  Plaintiff relies on the Blue Orca Report to allege that "revenue recognized by Li-Cycle is merely Li-Cycle's initial estimate of the price of the product it expects to receive from the end customer once the final deal is complete." *Id.* ¶ 78; ECF No. 39-3 at 4 (Blue Orca Report) ("Li-Cycle's revenues are based on its own provisional estimate of the value of its unsold recycled product.").

In fact, the Proxy, which incorporates audited financial statements, discloses the very practice that Plaintiff complains of:

> [T]he Company *estimates* the amount of consideration to which it expects to be entitled to under provisional pricing arrangements.  The amount of consideration for products is based on market prices at the date of settlement, weight and assay, subject to customer confirmation.  Revenue and the related accounts receivable are measures at fair value at initial recognition and are *re-estimated* by reference to current market prices at each reporting period end and changes in fair value are recognized as an adjustment to profit and loss and the related accounts receivable.

ECF No. 36 ¶ 57 (emphasis added).  The Proxy clearly states that Li-Cycle recognizes revenue based on the estimated "amount of consideration" it expects to receive.  Accordingly, Plaintiff's allegation that the Proxy suffers from this material omission—that Li-Cycle recognizes revenue based on the estimated value of its products—is belied by the existence of the allegedly omitted information in the Proxy itself.

> Li-Cycle estimates all amounts of consideration to which it expects to be entitled and updates those estimates at the end [of] each reporting period based on market prices. The final settlement amount for the sale of products is typically determined several months after delivery and customer processing of the products, and may result in an adjustment to the previously recognized revenue based on commodity prices on the final settlement date.

ECF No. 39-2 at 12 (Proxy).  Plaintiff cannot plausibly allege that that the Proxy omits information concerning the fact that Li-Cycle recognizes revenue based on estimates when it is plainly written in the Proxy.  *Cf. Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978) (finding that there "is no duty to disclose information to one who reasonably should already be aware of it."); *St. Clair-Hibbard v. Am. Fin. Tr., Inc.*, 812 F. App'x 36, 38–39 (2d Cir. 2020) ("[Defendant] had no duty to disclose information that its shareholders (and the general market) already knew.").

Accordingly, Plaintiff has not adequately alleged a material misrepresentation or omission with respect to Li-Cycle's practice of estimating revenue because it was adequately disclosed in the Proxy.

       iii.   <u>Plaintiff's Allegation that the Proxy Contained False or Misleading Statements Regarding Li-Cycle's Alleged Practice of Pulling Forward Revenue</u>

Plaintiff alleges that the Proxy contained false or misleading statements with respect to when Li-Cycle recognized revenue.  Specifically, Plaintiff cites to statements in Li-Cycle's audited financial statements, which are incorporated into the Proxy, that describe the company's recognition of revenue "at the time goods are delivered to the customer[.]"  ECF No. 36 ¶ 67

("[R]evenue is recognized when control of the goods has transferred, being when the goods have been shipped to the customer's location (delivery)."); ECF No. 39-2 at 12 (Proxy) (same).

As alleged in the Amended Complaint, the Blue Orca Report describes Li-Cycle's revenue recognition practices as follows,

> Li-Cycle . . . recognizes revenue immediately upon delivery to its brokers [like Traxys], potentially months before any sale has occurred. . . .  Li-Cycle in effect uses mark-to-model accounting, pulling sales forward from future periods and recognizing revenues based on its own self-serving estimates.  But that is not all, as this mark-to-model accounting framework allows the Company to juice its revenues with non-cash gains on previously recognized revenues.  We calculate that 45% of Li-Cycle's reported revenues in the last quarter were derived from simply marking up receivables on products that had not been sold.

ECF No. 36 ¶ 77; ECF No. 39-3 at 4 (Blue Orca Report).  As discussed previously, the Proxy provides that "revenue is recognized when control of the goods has transferred, meaning when the goods have been shipped to the customer's location (delivery)."  ECF No. 39-2 at 12, 14 ("The Company recognizes revenue when it transfers control of a product or service to a customer.").

"The materiality standard under Section 14(a) and Rule 14a–9 of the Exchange Act pertaining to proxy statements hinges on whether a reasonable shareholder would consider it important in deciding how to vote. . . .  [A]t the pleading stage, the plaintiff satisfies the materiality requirement by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions."  *Fisher v. Kanas*, 467 F. Supp. 2d 275, 281 (E.D.N.Y. 2006); *see also In re Liberty Tax*, 435 F. Supp. 3d at 465 ("A misrepresentation is material when there is a substantial likelihood that a reasonable investor would find the misrepresentation important in making an investment decision.").  However, Section 14(a) does not absolve an investor from reading the Proxy and contextualizing statements in light of the "total mix" of information available to it.  *See United Paperworks Int'l Union v. Int'l Paper Co.*, 985

F.2d 1190, 1198 (2d Cir. 1993) ("[I]n considering a claim of material omission in violation of Rule 14a-9, [] the court ordinarily should not consider the proxy statement alone . . . the total mix of information may include data sent to shareholders by a company in addition to its proxy materials . . . [and] proxy statements need not duplicate . . . information reasonably available to the shareholders.").

The Proxy states that "Li-Cycle's revenues . . . are derived significantly from a *single customer* [Traxys] and the loss of that customer could have a material impact on its results of operations."  ECF No. 39-2 at 3 (Proxy) (emphasis added).  The Proxy further provides that, "[i]f [the contracts with Traxys] were breached or terminated . . . Li-Cycle could experience a decline in revenues that could have material adverse impact on its results of operations."  *Id.*  If, as disclosed in the Proxy, Traxys is Li-Cycle's only or most significant "customer," and the nature of the relationship between Traxys and Li-Cycle is evident from the face of the Proxy, *see supra* Section III.A.i., it is not a material misrepresentation or omission to state that Li-Cycle "recognizes revenue when it transfers *control* of a product or service to a customer."  ECF No. 39-2 at 14 (emphasis added).  The Court finds that the Proxy alerts potential investors to the fact that revenue is being recognized at the point Li-Cycle transfers or sells its product to Traxys.

Whether Li-Cycle's revenue recognition practices complied with accepted accounting standards is a separate question addressed in the next section.  The relevant inquiry, for purposes of Plaintiff's assertion that Defendants violated Section 14(a) by failing to disclose Li-Cycle's revenue recognition practices, is whether the Proxy put Plaintiff and other investors on notice of those practices.  The Court finds that it did.  *Cf. Seibert*, 586 F.2d at 952 ("[W]here information is equally available to both parties, a defendant should not be held liable to the plaintiff under the securities laws for failure to disclose.").  Accordingly, Plaintiff has not adequately alleged a

material misrepresentation or omission with respect to Li-Cycle's practice of recognizing revenue at the point of sale or transfer of goods to Traxys.

        iv.     <u>Plaintiff's Allegation that the Proxy Contained False or Misleading Statements Regarding Li-Cycle's Financial Statements' Conformity with IFRS</u>

Plaintiff alleges that Li-Cycle represents that it prepared its financial statements "in conformity with [IFRS]" in its Proxy and that this statement is materially misleading because Li-Cycle's timing and method of recognizing revenue violates IFRS.  ECF No. 36 ¶ 114; *see also* ECF No. 39-2 at 15 (Audited Financial Statement).  Defendants contend that any statements about compliance with accounting standards like IFRS are "inactionable" statements of opinion and that Plaintiff has "not adequately alleged the falsity of the statement" that Li-Cycle's financial statements were prepared in accordance with IFRS.  ECF No. 38 at 26–27.

 "It is true that violations of accounting standards can support a claim under the Securities Act.  And whether a violation occurred is often a question of fact, not properly resolved on a motion to dismiss.  But a plaintiff cannot rely on the bare allegation that the defendant violated accounting standards.  The plaintiff must identify in what manner those provisions were violated." *In re XP Inc. Secs. Litig.*, 524 F. Supp. 3d 23, 31–32 (E.D.N.Y. 2021).  As the court in *In re XP Inc. Secs. Litig.* noted, identifying specifically what provisions were violated "becomes quite difficult when the standards at issue tolerate a range of reasonable treatments." *Id.* at 32 (citing cases).  Accordingly, "[w]hen standards are subject to interpretation" and "allow reasonable accountants to reach different conclusions," courts are loath to "intervene in a business and accounting judgment." *Id.*  In such a scenario, "courts require allegations pointing to objective facts that the defendants' accounting methods violated the applicable accounting standard." *Id.*

Plaintiff broadly alleges that "Li-Cycle's financial reporting was materially noncompliant" with the applicable IFRS standards with respect to revenue recognition and "recognition and adjustment of accounts receivable." ECF No. 36 at 41. Plaintiff further alleges that Li-Cycle "prematurely" recognized revenue and receivables in violation of IFRS 9 and 15 and "improperly" recognized gains on accounts receivable in violation of IFRS 5 and 15, but does not specify how Li-Cycle did so. *See, e.g.*, ECF No. 36 at 42 (stating that IFRS 15.9 provides that "an entity may recognize revenue from a contract with a customer only when it is probable that the entity will collect the consideration to which it will be entitled," but does not explain how Li-Cycle fails to do so); ECF No. 36 at 43 (stating that IFRS 9.5.5.8 provides that "[a]n entity shall recognize, as an *impairment gain or loss*, the amount of expected credit losses (or reversal) that is required to adjust the loss allowance at the reporting date to the amount that is required to be recognized in accordance with the standard," but does not explain how Li-Cycle fails to do so). Accordingly, the Court finds that Plaintiff has not adequately alleged how Li-Cycle's financial statements failed to comply with the IFRS. *See In re XP Inc.*, 524 F. Supp. 3d at 33 ("With such broad language, I cannot conclude that [International Accounting Standards ("IAS")] 1 or IAS 34 required [defendant] to take the specific steps that plaintiffs claim."); *Gray v. Alpha & Omega Semiconductor Ltd.*, No. 20-cv-2414, 2021 WL 4429499, at *8 (S.D.N.Y. Sept. 27, 2021) ("When a securities fraud claim is premised on the defendant's predicate violations of law or accounting standards, the facts of that underlying violation must be pled with *particularity*.") (emphasis in original) (citing *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 99 (2d Cir. 2021)).

v.   Plaintiff Fails to Allege Loss Causation

Although the Court need not address loss causation because it finds that Plaintiff has failed plausibly to allege a material misrepresentation or omission, *see supra* Sections III.A.i-iv, a second, independent reason to dismiss Plaintiff's Section 14(a) claim is that it fails plausibly to allege loss causation.  Defendants argue that Plaintiff fails "to allege a plausible theory of loss causation, an essential element of the [Section 14(a)] claim."  ECF No. 38 at 30.  Plaintiff responds that it has pled "that the price of Li-Cycle's stock declined in response to a single corrective disclosure—the release of the Blue Orca Report.  That is all that is required at this stage of the litigation."  ECF No. 41 at 30.

In addition to demonstrating the materiality of an alleged misrepresentation or omission, a plaintiff must also plead loss causation to state a claim under Section 14(a).  "A plaintiff may plead loss causation by alleging either that the market reacted negatively to a corrective disclosure of the [misrepresentation or omission] or that their loss was caused by the materialization of a risk concealed by the [misrepresentation or omission]."  *In re Liberty Tax*, 435 F. Supp. 3d at 471.  However, "allegations of a drop in stock price following the announcement of bad news" do not suffice.  *Id.*  "[T]o establish loss causation, plaintiffs must show that a misstatement or omission concealed *something* from the market that, *when disclosed*, negatively affected the value of the security."  *In re Vivendi, S.A. Secs. Litig.*, 838 F.3d 223, 261–62 (2d Cir. 2016) (emphasis in original).

The Court finds that even assuming the materiality of the alleged misrepresentations or omissions, Plaintiff fails adequately to plead loss resulting from a misrepresentation or omission in the Proxy.  Plaintiff fails to allege that the Blue Orca Report reveals any "new [factual] information regarding [Li-Cycle's] alleged [negligence]."  *In re Arcimoto Inc., Secs. Litig.*, No.

21-cv-2143, 2022 WL 17851834, at *7 (E.D.N.Y. Dec. 22, 2022) (finding that plaintiff fails to plead loss causation when it relied on "a sensationalized portrayal of already-public information"); *In re Omnicom Grp., Inc. Secs. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010) (finding that a corrective disclosure must "reveal some then-undisclosed fact with regard to the specific misrepresentations alleged in the complaint"); ECF No. 39-3 at 5 (Blue Orca Report) ("To the best of our ability and belief all information contained herein is accurate and reliable, and has been obtained *from public sources* we believe to be accurate and reliable, and who are not insiders or connected persons of the stock covered herein or who may otherwise owe any fiduciary duty or duty of confidentiality to the issuer.") (emphasis added).  Although a short seller report "can constitute a corrective disclosure if the report reveals accurate information about a company that *exposes actual misstatements by the company*," Plaintiff's failure to identify any undisclosed information revealed as a result of the Blue Orca Report is fatal to its claim.  *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 173 n.30 (S.D.N.Y. 2015) (emphasis added) (finding that the complaint failed to allege that short seller's report was a corrective disclosure); *Zhong Zheng v. Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 178 (E.D.N.Y. 2019) (finding that plaintiff failed to plead loss causation because short-seller report "did not reveal any undisclosed information" and "relied on public information" to form an opinion about the value of the shares).

### B.  The Section 11 Claim Is Dismissed

Defendants argue that Plaintiff's Section 11 claim should be dismissed "for lack of an alleged false statement or omission of material fact."  ECF No. 38 at 34; ECF No. 42 at 16 (Defendants' Reply).  Plaintiff responds that "Section 11 places a relatively minimal burden" and

that it has sufficiently alleged material misrepresentations and omissions in the Registration Statement.  ECF No. 41 at 20–24.

But even a "minimal burden" is still a burden, and Plaintiff has failed to meet that burden here.  Section 11 "prohibits materially misleading statements or omissions in registration statements filed with the SEC. . . .  To state a claim under section 11, the plaintiff must allege that: (1) she purchased a registered security, either directly from the issuer or in the aftermarket following the offering; (2) the defendant participated in the offering in a manner sufficient to give rise to liability under section 11; and (3) the registration statement contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  *In re Morgan Stanley Info. Fund Secs. Litig.*, 592 F.3d 347, 358–59 (2d Cir. 2010).  "[C]laims brought pursuant to section[] 11 . . . must plead [the] materiality of the alleged misrepresentation or omission[.]"  *In re Fuwei Films Secs. Litig.*, 634 F. Supp. 2d 419, 434 (S.D.N.Y. 2009).

As with Plaintiff's claim based on Section 14(a) of the Exchange Act, Plaintiff's claim under Section 11 of the Securities Act must comply with "the heightened pleading standard of Federal Rule 9(b)" if the "claims are premised on fraud."  *Synchrony Fin.*, 988 F.3d at 173.  However, "the PSLRA's heightened standard applies only to claims brought under the Exchange Act," so the pleading requirements of 15 U.S.C. § 78u–4(b) do not apply to Plaintiff's Securities Act claims.  *In re Meta Materials Inc. Secs. Litig.*, No. 21-cv-7203, 2023 WL 6385563, at *8 n.8 (E.D.N.Y. Sept. 29, 2023).  To comply with Rule 9(b) in this context, "a plaintiff must:  (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Synchrony Fin.*, 988 F.3d at 167.

The Amended Complaint does not specifically distinguish or identify the material misrepresentations and omissions unique to Plaintiff's Section 11 claim.  *See supra* Section I.  The Court therefore assumes that Plaintiff alleges that the Registration Statement contains the same material misrepresentations and omissions as the Proxy.  For the same reasons discussed previously, *see supra* Sections III.A.i-iv, even when applying only the Rule 9(b) pleading standard without the separate pleading requirements of the PSLRA, the Court finds that Plaintiff has failed sufficiently to plead the materiality of the alleged misrepresentations or omissions.  Accordingly, Plaintiff's Section 11 claim is dismissed.

Moreover, Plaintiff alleges that it purchased shares of only Peridot and made all of its purchases in February 2021.  ECF No. 36 ¶ 20.  Plaintiff neither purchased additional Peridot shares after Li-Cycle issued its Registration Statement in March 2021 nor purchased Li-Cycle shares after they began trading publicly after the merger.  ECF No. 36 ¶¶ 20, 49.  As stated above, Section 11 imposes liability solely for misstatements in a registration statement and requires Plaintiff to allege that it purchased securities "following the offering" of shares registered by the Registration Statement.  *Morgan Stanley Info. Fund Secs. Litig.*, 592 F.3d at 358–59.  Since Plaintiff never purchased Li-Cycle shares and purchased all of its Peridot shares before Li-Cycle even published its Registration Statement, Plaintiff does not have the statutory standing to assert a Section 11 claim.  *See In re CarLotz, Inc. Secs. Litig.*, No. 21-cv-5906, 2023 WL 2744064, at *7– 8 (S.D.N.Y. Mar. 31, 2023) (holding that plaintiff had not purchased securities traceable to registration statement, as necessary to assert Section 11 claim, because he purchased shares in pre- merger SPAC entity before target company issued registration statement in preparation for merger with SPAC entity); *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 339 (S.D.N.Y. 2012) (dismissing Section 11 claims

"because Plaintiff purchased shares *before* the challenged offerings" and, therefore, could not

"possibly trace its stock purchases to an offering or registration statement").

Finally, the Court notes that in the portion of its opposition brief devoted to its Securities

Act claims, Plaintiff alleges that Li-Cycle's failure "to disclose the material weaknesses in its

internal controls and financial reporting regarding revenue recognition, inventory, related-party

arrangements, [and] financing transactions" constitute material omissions.  ECF No. 41 at 22

(citing to paragraphs 70–71 of the complaint).[3]  Defendants' disclosures about Li-Cycle's internal

controls changed over time.  Li-Cycle's Registration Statement disclosed that it "ha[d] identified

material weaknesses in its internal controls over financial reporting," but the material weaknesses

that Li-Cycle disclosed did not include any weaknesses related to revenue recognition.[4]  Although

Li-Cycle explained that it planned to take measures to address its internal control weaknesses, it

warned that it could "give no assurance that such measures will remediate any of the deficiencies

in its internal control over financial reporting *or that additional material weaknesses or significant*

*deficiencies in its internal control over financial reporting will not be identified in the future*."  *Id.*

(emphasis added).  Peridot included in its Proxy a substantially similar description of the material

weaknesses in Li-Cycle's internal controls, which did not mention weaknesses related to revenue

recognition, and gave an identical warning that Li-Cycle might identify additional material

---

[3]      The portion of Plaintiff's opposition brief that addresses Plaintiff's claims based on
Section 14(a) of the Exchange Act does not similarly address these alleged internal control
weaknesses, *see* ECF No. 41 at 28–29, so the alleged internal control deficiencies represent the
only apparent alleged misstatement that is unique to the Section 11 claim and, therefore, was not
addressed above in Section III.A, which concerned the Section 14(a) claim.

[4]      Form F-4 at 51 (Mar. 21, 2021),
https://www.sec.gov/Archives/edgar/data/1828811/000119312521098780/d317379df4.htm.

weaknesses in the future.[5]  On January 31, 2022, in the first annual report that Li-Cycle filed with the SEC after becoming a public company, Li-Cycle disclosed that it had identified additional material weaknesses in its internal controls related to "areas such as revenue recognition."[6]

As an initial matter, although Plaintiff raised for the first time in its opposition brief the theory that Defendants made misleading statements about Li-Cycle's internal controls, that theory is not self-evident from the Amended Complaint.  In fact, the Amended Complaint does not even use the word "omission" in describing the alleged weaknesses in Li-Cycle's internal controls and financial reporting.  *See* ECF No. 36 ¶¶ 70–71.  The Court is inclined not to consider new allegations raised for the first time in Plaintiff's opposition and can dismiss Plaintiff's purported claim regarding internal controls on this basis alone.  *See Zhou v. NextCure Inc.*, No. 20-cv-7772, 2023 WL 4493541, at *9 (S.D.N.Y. July 12, 2023) ("Plaintiffs cannot use their opposition to the motion to dismiss to raise new claims or arguments."); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (finding that a party is not entitled to correct a complaint through statements made in motion papers).

In any event, considering Plaintiff's claim on the merits, the Court finds that its arguments about Li-Cycle's internal controls fail as a matter of law.  As explained above, both Li-Cycle and Peridot tempered their descriptions of Li-Cycle's internal controls by warning that Li-Cycle might, in the future, identify new weaknesses in those controls.[7]  When Li-Cycle disclosed revenue

---

[5]     Proxy Statement at 54 (July 15, 2021), https://www.sec.gov/Archives/edgar/data/1821317/000119312521216507/d189319ddefm14a.htm.

[6]     Form 20-F at 12 (Jan. 31, 2022), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001828811/000162828022001515/licy-20211031_d2.htm.

[7]     Form F-4 at 51 (Mar. 21, 2021), https://www.sec.gov/Archives/edgar/data/1828811/000119312521098780/d317379df4.htm; Proxy

recognition as a material weakness in its annual report, more than ten months had elapsed since Li-Cycle had published its Registration Statement, and more than six months had elapsed since Peridot had disseminated its Proxy. *See* ECF No. 36 ¶¶ 49, 54, 66. Li-Cycle said that it identified new material weaknesses, including the weakness related to revenue recognition, "[i]n the course of preparing for the Business Combination with Peridot Acquisition Corp, Li-Cycle." However, Li-Cycle's annual report was silent about whether it conducted this review before or after the Registration Statement or Proxy were disseminated, *see id.*, and Plaintiff's Amended Complaint makes no allegation, even on information and belief, about when Li-Cycle allegedly identified revenue recognition as a new material weakness, *see* ECF No. 36.

Accordingly, Plaintiff has failed adequately to allege that Li-Cycle had identified revenue recognition as a material weakness in its internal controls at the time Defendants made the statements that Plaintiff asserts were misleading, and Plaintiff has therefore failed to allege that the statements were misleading at the time they were made. The fact that Defendants' statements about Li-Cycle's internal controls may have become outdated with the passage of time is insufficient for Plaintiff to state a claim under Section 11 of the Securities Act or Section 14 of the Exchange Act. *See Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385, 397 (S.D.N.Y. 2022) (dismissing Section 11 claims based on alleged omission of internal controls weaknesses in registration statement filed by defendant in advance of IPO because "[p]laintiff allege[d] no facts suggesting that [defendant] knew or should have known about the internal control weaknesses at the time of the IPO"); *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 402–03 (S.D.N.Y. 2020) (dismissing Section 14 claims because announcement made four months after

---

Statement at 54 (July 15, 2021),
https://www.sec.gov/Archives/edgar/data/1821317/000119312521216507/d189319ddefm14a.htm.

proxy was disseminated that executive would stay on as CEO of merged company did not render misleading statement in the proxy that no decision had been made about whether to retain CEO).

### C. *The Section 15 Claim Is Dismissed*

Having found that Plaintiff failed to state a claim under Section 11, the Court dismisses Plaintiff's control person liability claims against the Li-Cycle Individual Defendants pursuant to Section 15 of the Securities Act. *See S.E.C. v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996) (finding that "[i]n order to establish a prima facie case of controlling-person liability, a plaintiff must show a primary violation by the controlled person and control of the primary violator by the targeted defendant").

## **CONCLUSION**

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss. Plaintiff requests that if the Court grants any part of the motion to dismiss, it be granted leave to amend. *See* ECF No. 41 at 33 n.14. Plaintiff may file a motion seeking leave to file an amended complaint by October 23, 2023. Any such motion should include the proposed amended complaint as an exhibit and explain why leave to amend should be granted, including a discussion of how the proposed amended complaint cures the deficiencies identified herein. If Plaintiff does not seek leave to amend by October 23, 2023, judgment shall be entered, and the case closed. Defendants may file an opposition by November 6, 2023. Unless otherwise requested by the Court, there will be no replies.

SO ORDERED.

 */s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
     October 6, 2023